UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PROASSURANCE INDEMNITY<br>COMPANY, INC.,<br>    The Plaintiff, | ) ) ) ) | |
| vs. | ) ) | |
| DONALD J. WAGONER, M.D.,<br>MARILYN L. WAGONER, M.D.,<br>WAGONER MEDICAL CENTER, LLC,<br>WAGONER MEDICAL CENTER, P.C.<br>D. J. & M. L. WAGONER, INC.,<br>ROBERT A. BREWER, M.D.,<br>WILLIAM G. TERPSTRA, M.D.,<br>GARY M. HARTMAN, P.A.,<br>THOMAS K. HEWITT, P.A.,<br>JOHN M. THOMAS, P.A.,<br>LINDA S. RICHARDS, L.P.N., and<br>STEPHEN ROBERTSON, as the<br>ADMINISTRATOR of the INDIANA PATIENT'S<br>COMPENSATION FUND,<br>    The Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, ProAssurance Indemnity Company, Inc., ("ProAssurance"), by its attorneys,

Eichhorn & Eichhorn, LLP, and pursuant to FED.R.CIV.P. 57 and 28 U.S.C. §§ 2201, *et seq.*, states

the following for its Complaint For Declaratory Judgment:

## THE PARTIES

1.      ProAssurance is an insurance company which is incorporated in the State of Alabama

and at all times relevant to this action has been authorized to do business in the State of Indiana.

ProAssurance's principal place of business is the City of Birmingham in the State of Alabama.

ProAssurance also is the corporate successor to The Medical Assurance Company, Inc., ("Medical

Assurance"). Medical Assurance also was at all times relevant to this action authorized to do business in the State of Indiana, including to issue certain insurance policies in the State of Indiana.

2. Donald J. Wagoner, M.D., ("DJW"), and Marilyn L. Wagoner, ("MLW"), are natural persons who are husband and wife, (jointly, "the Wagoners"). The Wagoners reside within the State of Indiana and they further reside within Indiana counties which are part of this District Court. The Wagoners have been joined in this action because ProAssurance seeks declaratory relief as to contractual issues which affect them directly.

3. Wagoner Medical Center, LLC, ("WMC, LLC"), is an Indiana limited liability company. Wagoner Medical Center, P.C., ("WMC, PC"), and D.J. & M.L. Wagoner, Inc., ("DJMLW, Inc."), are both Indiana corporations. WMC, LLC and WMC, PC are jointly referred to in this Complaint as "WMC." Each of these three (3) entities, (jointly, "the Wagoner Entities"), have principal places of business within the State of Indiana. The principal place of business of each of the Wagoner Entities also are located within Indiana counties which are part of this District Court. The Wagoner Entities also were solely or primarily owned by DJW and/or MLW. Each of the Wagoner Entities have been joined in this action because ProAssurance seeks declaratory relief as to contractual issues which affect them directly.

4. Robert A. Brewer, M.D., ("Brewer"), William G. Terpstra, M.D., ("Terpstra"), Gary M. Hartman, P.A., ("Hartman"), Thomas K. Hewitt, P.A., ("Hewitt"), John M. Thomas, P.A., ("Thomas"), and Linda S. Richard, L.P.N., ("Richards"), are all natural persons who reside within the State of Indiana and further reside within Indiana counties which are part of this District Court. Each of these Defendants has been joined in this action because ProAssurance seeks declaratory relief as to contractual issues which affect them directly.

5.  Stephen Robertson, ("the Insurance Commissioner"), is the administrator of the Indiana Patient's Compensation Fund pursuant to the provisions of the Indiana Medical Malpractice Act, Ind.Code §§34-18-1-1, *et seq.* The Insurance Commissioner is an employee and public official of the State of Indiana, and he has a principal place of business which is located within the State of Indiana. The Insurance Commissioner's principal place of business also is located within an Indiana county which is part of this District Court. The Insurance Commissioner has been joined in this action because he may claim an interest in the declaratory relief as to contractual issues which ProAssurance seeks in this action.

## JURISDICTION AND VENUE

6.  This District Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. §1332(a) because: a) the State of Citizenship of the Plaintiff, the State of Alabama, is diverse from the State of Citizenship of the Defendants, the State of Indiana; and b) the amount in controversy involved in the declaratory relief requested in this action exceeds the sum of $75,000.00, exclusive of interest and costs.

7.  Venue in this District Court also is proper pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claims occurred within this District Court, and the Defendants are subject to personal jurisdiction in this District Court.

## THE POLICIES AND POLICY APPLICATIONS

8.  At various times relevant to this action, the Wagoners, the Wagoner Entities and the individual Defendants identified above in ¶4 other than Brewer and Richards, were named as insureds with regard to certain professional liability insurance policies issued by Medical Assurance, specifically, Policy Nos. MP31497, MP49652 and MP68766, (jointly "the Wagoner Policies").

3

Copies of the same are attached as Group Exhibit A, Parts 1 - 4, and are incorporated by this reference. Richards also was an additional insured by the terms of one or more of the Wagoner Policies as an employee of one or more of the Wagoner Entities. The Wagoners, the Wagoner Entities and the individual Defendants identified above in ¶4 other than Brewer are hereinafter referred to in this Complaint jointly as "the Wagoner Defendants."

9.      The term of Wagoner Policy No. MP31497 began on March 1, 2001, and upon application, was renewed annually until March 1, 2004. The term of Wagoner Policy No. MP49652 began on March 1, 2004, and upon application, was renewed annually until March 1, 2009. The term of Wagoner Policy No. MP68766 began on March 1, 2009, and upon application, was renewed annually until May 26, 2013. A reporting endorsement also was later issued for Wagoner Policy No. MP68766, effective May 26, 2013.

10.  At various times relevant to this action, Brewer was named as an insured with regard to certain professional liability insurance policies issued by Medical Assurance, specifically, Policy Nos. MP32855 and MP44956, (jointly "the Brewer Policies"). Copies of the same are attached as Group Exhibit A, Part 5, and are incorporated by this reference.

11.      The term of Brewer Policy No. MP32855 began on August 1, 2001, and upon application, was renewed annually until August 1, 2003. The term of Brewer Policy No. MP44956 began on August 1, 2003, and upon application, continued until August 1, 2004. A reporting endorsement also was later issued for Brewer Policy No. MP44956, effective August 1, 2004.

12.      Each of the respective applications for insurance and renewal of the Wagoner and Brewer Policies required, as a condition precedent, that the applicant or applicants make representations regarding the continued practice of medicine within legally-recognized standards and in

compliance with all licensing requirements and standards. Each of the respective applications for renewal of the Wagoner and Brewer Policies further required and admonished, as a condition precedent, that the applicant or applicants make truthful representations and to refrain from any material omission regarding the intended insureds' practice of medicine within legally-recognized standards and in compliance with all licensing requirements and standards.

### POLICY PROVISIONS AT ISSUE IN THE
### CLAIM FOR DECLARATORY RELIEF

13.   Wagoner Policy No. MP31497, Wagoner Policy No. MP49652 for the policy periods from March 1, 2004 to March 1, 2006 and Brewer Policy Nos. MP32855 and 44956 contain the following  relevant Policy language:

### DEFINITIONS

. . . .

**Medical incident** means:

>   A. a single act or omission or a series of related acts or omissions arising out of the rendering of, or failure to render, **professional services** to any one person by an **insured** or any person for whose acts or omissions an **insured** is legally responsible, which results, or is likely to result, in **damages**; . . .

**Professional services** means the provision of medical services, including medical treatment, making medical diagnoses and rendering medical opinions or medical advice.

. . . .

### GENERAL CONDITIONS

. . . .

5

IV.    **INSUREDS' DUTIES IN THE EVENT OF AN INCIDENT, CLAIM OR SUIT**

A.    When an **insured** becomes aware of any claim or suit to which this insurance applies, or any incident which is likely to result in a claim of suit, such **insured** or his representative must report such incident, claim or suit to **us** as soon as practicable.

B.    Each **insured** shall cooperate with **us** and, upon **our** request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to such **insured** because of injury with respect to which insurance is afforded under the **policy**, and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. No **insured** shall make any payment, assume any obligation, accept responsibility or provide information concerning the incident except to **us** or such **insured's** legal counsel.

C.    If claim is made or suit is brought against any **insured**, such **insured** shall immediately forward to **us** every demand, notice, summons or other process received by him or his representative.

D.    No insured shall alter patient records or otherwise misrepresent or conceal facts pertinent to any incident, claim or suit.

If any **insured** fails to comply with his obligations under the **policy**, our obligation to such **insured** under the **policy** shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

V.    **CLAIMS AGAINST US**

No claim shall lie against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of the **policy**, . . . .

XII.    **FRAUD AND MISREPRESENTATIONS**

By acceptance of the **policy**, all **insureds** agree that the statements . . . in their respective applications or renewal applications for insurance are their agreements and representations, that the **policy** is issued in reliance upon the truth of such representations, . . . . In the event of any fraud, material misrepresentation or omission by any **insured** in his application or renewal application for insurance the **policy** is void as to the party committing such fraud, material misrepresentation or omission, and no coverage is afforded to

such party hereby. (or ", and such party shall have no right to purchase a **Reporting Endorsement**.")

. . . .

## PROFESSIONAL LIABILITY COVERAGE PART

I.    **INSURING AGREEMENT**

**We** agree to pay on behalf of each **insured** all sums which such **insured** shall become legally obligated to pay as **damages** because of any **medical incident** which occurs during the **policy** period; . . . . This insurance applies only to **medical incidents** arising out of **professional services** . . . rendered, or which should have been rendered, within the United States of America.

. . . .

III.   **EXCLUSIONS**

**We** will not pay damages because of any of the following, and **we** will not provide a defense for any suit alleging any of the following:

. . . .

D.    Liability arising out of any willful, wanton, fraudulent, criminal or malicious act or omission;

. . . .

H.    Liability arising out of any act or omission of an **insured** (1) for which such **insured** does not hold any required license to perform, (2) which occurs during any time such **insured's** license to practice his profession has been suspended, or (3) which constitutes a violation of any restriction imposed upon such license;

J., (or K.
or L.)  Liability for punitive or exemplary damages (including any multiple of compensatory damages, such as double or treble damages) awarded against an **insured**.

7

14.  Wagoner Policy No. MP49652, for the policy periods from March 1, 2006 to March 1, 2009, and Wagoner Policy No. MP68766, for the policy periods from March 1, 2009 to March 1, 2012, contain the following relevant Policy language:

**DEFINITIONS**

. . . .

**Professional incident** means:

> A.      a single act or omission, or a series of related acts or omissions during a continuing course of **professional services**, arising out of the rendering of, or failure to render, **professional services** to any one person by an **insured** or any person for whose acts or omissions an **insured** is legally responsible, which results, or is likely to result, in **damages**; . . .

**Professional services** means the provision of medical or dental services, including treatment, making diagnoses and rendering opinions or advice.

. . . .

**PROFESSIONAL LIABILITY COVERAGE PART**

**I.     INSURING AGREEMENT**

> Subject to the applicable limit of liability, **we** agree to pay on behalf of each **insured** all sums (in excess of any applicable deductible) that the **insured** shall become legally obligated to pay as **damages** because of any **professional incident** that (1) occurs on or after the **retroactive date** applicable to **the insured** and (2) is first **reported** during the **policy period**; provided, however, that **insured paramedical employees** and **other covered employees** are covered only for **professional incidents** that occur while such persons are employed by an **insured organization** or **insured professional** and acting within the scope of their employment and while engaged in the performance of **professional services** that they hold any required license to perform. . . .

8

III.   **EXCLUSIONS**

**We** will not pay **damages** because of any of the following, and **we** have no obligation to provide a defense for any claim or suit alleging any of the following:

> . . . .

D.   Liability arising out of any (1) willful, wanton, fraudulent (whether intentional or unintentional), dishonest, criminal, reckless, malicious, or oppressive act or omission; or (2) conduct that is outrageous, demonstrates conscious indifference to consequences or evidences intentional, reckless or careless disregard for the rights of others;

> . . . .

H.   Liability arising out of any act or omission of an **insured** (1) for which the **insured,** or any person for whom an **insured** is vicariously liable, does not hold any required license to perform, (2) which occurs during any time the **insured's** license to practice his or her profession has been suspended, revoked or voluntarily surrendered, or (3) which constitutes a violation of any restriction imposed upon the **insured's** license;

> . . . .

O.   Liability for punitive or exemplary damages (including any multiple of compensatory damages, such as double or treble damages) awarded against an **insured**;

> . . . .

**GENERAL CONDITIONS**

> . . . .

IV.   **INSUREDS' DUTIES**

A.   If an **insured** wishes to **report** a **professional incident** that is not the subject of an **assertion of liability**, the **insured** must **report** the **professional incident** to us within 30 days of the date on which the **professional incident** occurs. **We** will not provide coverage for any **professional incident reported** more than 30 days after the **profes-**

9

**sional incident** occurs unless the **insured** receives an **assertion of liability** with respect to the **professional incident** and provides a description of an oral **assertion of liability** or a copy of a written **assertion of liability** to **us** within the **policy period** or any applicable extended reporting period, in which case the **professional incident** will be deemed **reported** as of the date on which **our** Claims Department receives the oral description or written copy of the **assertion of liability**.

B.   If any **insured** receives an **assertion of liability**, the **insured** shall immediately (1) **report** the **professional incident** that is the subject of the **assertion of liability** and (2) forward to **us** a copy of any written **assertion of liability**, including any demand, notice, summons or other process received by the **insured** or any representative of the **insured**.

C.   Each **insured** shall cooperate with **us** and with legal counsel retained by **us** to defend any insured claim and shall, upon **our** request, assist in the conduct of suits, in the settlement of suits and claims, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **insured** because of injury with respect to which insurance is afforded under this **policy**, and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. No **insured** shall make any payment, assume any obligation, accept responsibility or provide information concerning the incident except to **us** or legal counsel retained by **us** for the **insured**.

D.   No **insured** shall alter, make any improper amendment to, destroy or dispose of patient records or misrepresent or conceal facts pertinent to any incident, claim or suit.

E.   Each **insured** shall notify **us** in writing, within thirty (30) days after the occurrence of any one or more of the following:

1.   The **insured** undergoes treatment, or is advised by a physician, peer review committee, hospital credentialing committee or licensing agency to undergo treatment related to alcohol, drug or other substance abuse, sexual misconduct, or for psychiatric illness;

2.   The **insured** suffers an illness or physical defect which impairs, or is likely to impair, the **insured's** ability to practice for a period of thirty (30) days or more;

3.   The **insured** is convicted of, or pleads guilty or no contest to, any felony or misdemeanor other than minor traffic offenses;

4.   The **insured's** license to practice medicine or dentistry, or to dispense medicine, or otherwise to deliver health care services of any type, is revoked, suspended, surrendered or limited in any respect, or the **insured** is called to appear before any licensing agency, peer review committee, professional standards review committee or credentialing committee in a proceeding seeking to terminate, revoke or limit the **insured's** employment or privilege to practice; or

5.   The **insured's** privilege to practice is terminated, revoked or limited by the **policyholder,** any hospital or other employer, whether by reason of termination of employment or otherwise.

If any **insured** fails to comply with any duties or obligations described in this Section IV, or otherwise breaches any other term or condition of the **policy**, **our** obligation to such **insured** under the **policy** shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## V.   CLAIMS AGAINST US

No claim shall lie against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of the **policy**, . . . .

## XII.   FRAUD AND MISREPRESENTATIONS

By acceptance of the **policy**, the **policy holder** and all **insureds** agree that the statements . . . in their respective applications or renewal applications for insurance, and in any other material submitted to **us** in order to seek insurance coverage, are their agreements and representations, that this **policy** is issued in reliance upon the truth of such representations, . . . . In the event of any fraud, material misrepresentation or omission by any **insured** in his application, renewal application of other material submitted to **us** to obtain this insurance, this **policy** is void as to that **insured**, no coverage is afforded to that **insured**, and that **insured** shall have no right to purchase a **Reporting Endorsement**.

11

15.  Wagoner Policy No. MP68766, for the policy periods from March 1, 2012 to May 26, 2013, contain the following  relevant Policy language:

**DEFINITIONS**

. . . .

**Professional incident** means:

> A.   a single act or omission, or a series of related acts or omissions during a continuing course of **professional services**, arising out of the rendering of, or failure to render, **professional services** to any one person by an **insured** or any person for whose acts or omissions an **insured** is legally responsible, which results, or is likely to result, in **damages**;

> . . .

**Professional services** means the provision of medical or dental services, including treatment, making diagnoses and rendering opinions or advice, in accordance with any and all licences for the provision of such service.

. . . .

**PROFESSIONAL LIABILITY COVERAGE PART**

**I.    INSURING AGREEMENT**

Subject to the applicable limit of liability, **we** agree to pay on behalf of each **insured** all sums (in excess of any applicable deductible) that the **insured** shall become legally obligated to pay as **damages** because of any **professional incident** that (1) occurs on or after the **retroactive date** applicable to **the insured** and (2) is first **reported** during the **policy period**; provided, however, that **insured paramedical employees** and **other covered employees** are covered only for **professional incidents** that occur while such persons are employed by an **insured organization** or **insured professional** and acting within the scope of their employment and while engaged in the performance of **professional services** that they hold any required license to perform. . . .

12

## III. EXCLUSIONS

**We** will not pay **damages** because of any of the following, and **we** have no obligation to provide a defense for any claim or suit alleging any of the following:

    . . . .

C.    Liability arising out of any fraudulent, criminal, malicious, or intentionally wrongful act or omission, including but not limited to liability arising in whole or in part out of sexual activity, or acts in furtherance of sexual activity, whether under the guise of **professional services** or not; provided, however, that **we** will defend (up to a maximum of $100,000 in costs, expenses, and attorney fees for all such claims first **reported** during the **policy period**) any claims alleging liability excluded by this paragraph until such time as the **insured** is adjudicated to have committed, or pleads guilty to, an act or omission described in this paragraph;

    . . . .

I.    Liability for punitive or exemplary damages (including any multiple of compensatory damages, such as double or treble damages) awarded against an **insured**.

    . . . .

## GENERAL CONDITIONS

    . . . .

## IV. INSUREDS' DUTIES

A.    If an **insured** wishes to **report** a **professional incident** that is not the subject of an **assertion of liability**, the **insured** must **report** the **professional incident** to us within 30 days of the date on which the **professional incident** occurs. **We** will not provide coverage for any **professional incident reported** more than 30 days after the **professional incident** occurs unless the **insured** receives an **assertion of liability** with respect to the **professional incident** and provides a description of an oral **assertion of liability** or a copy of a written **assertion of liability** to **us** within the **policy period** or any applicable extended reporting period, in which case the **professional incident**

will be deemed **reported** as of the date on which **our** Claims Department receives the oral description or written copy of the **assertion of liability**.

B.      If any **insured** receives an **assertion of liability**, the **insured** shall immediately (1) **report** the **professional incident** that is the subject of the **assertion of liability** and (2) forward to **us** a copy of any written **assertion of liability**, including any demand, notice, summons or other process received by the **insured** or any representative of the **insured**.

C.      Each **insured** shall cooperate with **us** and with legal counsel retained by **us** to defend any insured claim and shall, upon **our** request, assist in the conduct of suits, in the settlement of suits and claims, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **insured** because of injury with respect to which insurance is afforded under this **policy**, and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. No **insured** shall, without **our** prior approval, make any payment or assume any obligation with respect to a **professional incident**, except at the **insured's** own expense. Each **insured** shall be honest and truthful with patients, consistent with paragraph D below, but no **insured** shall admit liability for a **professional incident** prior to consulting with **us** or legal counsel retained by **us** to represent the **insured**.

D.      No **insured** shall alter, make any improper amendment to, destroy or dispose of patient records or misrepresent or conceal facts pertinent to any incident, claim or suit.

E.      Each **insured** shall notify **us** in writing, within thirty (30) days after the occurrence of any one or more of the following:

1.      The **insured** receives a reprimand or complaint or undergoes treatment, or is advised by a physician, peer review committee, hospital credentialing committee or licensing agency to undergo treatment related to alcohol, drug or other substance abuse, sexual misconduct, or for psychiatric illness;

2.      The **insured** suffers an illness or physical defect which impairs, or is likely to impair, the **insured's** ability to practice for a period of thirty (30) days or more;

14

3.  The **insured** is convicted of, or pleads guilty or no contest to, any felony or misdemeanor other than minor traffic offenses;

4.  The **insured's** license to practice medicine or dentistry, or to dispense medicine, or otherwise to deliver health care services of any type, is revoked, suspended, surrendered or limited in any respect, or the **insured** is called to appear before any licensing agency, peer review committee, professional standards review committee or credentialing committee in a proceeding seeking to terminate, revoke or limit the **insured's** employment or privilege to practice; or

5.  The **insured's** privilege to practice is terminated, revoked or limited by the **policyholder,** any hospital or other employer, whether by reason of termination of employment or otherwise.

If any **insured** fails to comply with any duties or obligations described in this Section IV, or otherwise breaches any other term or condition of the **policy**, **our** obligation to such **insured** under the **policy** shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## V.    CLAIMS AGAINST US

No claim shall lie against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of the **policy**, . . . .

## XII.    FRAUD AND MISREPRESENTATIONS

By acceptance of the **policy**, the **policyholder** and all **insureds** agree that the statements . . . in their respective applications or renewal applications for insurance, and in any other material submitted to **us** in order to seek insurance coverage, are their agreements and representations, that this **policy** is issued in reliance upon the truth of such representations, . . . . In the event of any fraud, material misrepresentation or omission by any **insured** in his application, renewal application of other material submitted to **us** to obtain this insurance, this **policy** is void as to that **insured**, no coverage is afforded to that **insured**, and that **insured** shall have no right to purchase a **Reporting Endorsement**.

15

## FACTUAL BACKGROUND

16.     At all relevant times the Wagoners, Brewer and Terpstra were licensed as medical doctors by the State of Indiana and were registered with the DEA as practitioners of drug schedules II through V. The Wagoners and Terpstra also at all relevant times were additionally registered with the DEA as Drug Abuse Treatment Act physicians who were authorized to dispense and administer FDA approved narcotic drugs for opioid maintenance or detoxification treatment. Being registered to treat opioid addiction, the Wagoners and Terpstra were aware of the consequences associated with the prescribing of narcotics.

17.     At all relevant times, Thomas, Hewitt and Hartman were licensed as physician assistants by the State of Indiana. DJW was the supervising physician for Thomas and Hartman and MLW was the supervising physician for Hewitt. Neither Thomas, Hewitt nor Hartman had state prescriptive authority at any relevant time nor did they have DEA registration privileges.

18.     In May of 2009, Diversion Investigators from the DEA Merrillville Resident Office were notified by Howard County law enforcement authorities that they had noticed a large number of controlled substance prescriptions being authorized by DJW, and that Howard County had a high number of deaths associated with prescription drugs.

19.     Diversion Investigators from the DEA Indianapolis District Office conducted multiple regulatory inspections with physicians around the state that were registered with the DEA to treat patients having opiate addictions. On four of these inspections, a significant number of addicted patients were identified to have been obtaining controlled substances from DJW and/or WMC. During one such inspection, Diversion Investigators were also informed that patients had claimed Hartman at WMC's Burlington office was issuing them controlled substances.

20.     Sergeant Tonda Cockrell of the Howard County Drug Task Force, ("HCDTF"), also was informed by the Howard County Coroner that he had a lengthy list of deaths from Howard County and that several of these deaths appeared to be patients of either DJW and/or associates of the WMC. The Coroner later informed Sergeant Cockerall that decedent family members commonly stated that the decedent was being over-medicated by practitioners at WMC. Per the coroner, family members claimed to allegedly inform the Wagoners of their concerns, but the Wagoners would not pay attention. According to the coroner, some patients appeared to have gone to both the Burlington and Kokomo offices of WMC.

21.     Criminal charges eventually were brought again the Wagoners, Brewer, Terpstra, Thomas, Hartman, Hewitt and Richards. True and accurate copies of said criminal complaints are attached as Group Exhibit B. DJW, Hartman, Hewitt and Richards have pled guilty to some of the criminal counts of said Complaints. True and accurate copies of said guilty pleas and sentencing orders are attached as Group Exhibit C.

22.     Complaints against the Wagoners, Brewer and Terpstra to revoke their Indiana medical licenses also were brought by the State of Indiana Medical Licensing Board. True and accurate copies of said complaints are attached as Group Exhibit D. The Wagoners have both admitted the allegations of drug trafficking and criminal, non-medical behavior alleged in those complaints and have agreed to the revocation of their respective medical licenses. True and accurate copies of the Wagoners' plea agreements and the resultant Licensing Board orders, and documents showing public notice of the revocation status of the physician's assistant licenses of Hartman, Hewitt and Thomas, are attached as Group Exhibit E.

## CLAIM FOR DECLARATORY RELIEF

## COUNT I - DECLARATION OF RESCISSION
## DUE TO MATERIAL MISREPRESENTATIONS

23.     ProAssurance incorporates by reference as though fully set forth herein paragraphs 1-22 above as paragraphs 1-22 of Count I.

24.     In seeking insurance and in submitting their renewal applications to Medical Assurance and ProAssurance, the Wagoner Defendants and Brewer failed to disclose any of the non-medical and criminal behavior which is the subject of attached Group Exhibits B-E. Furthermore, in seeking insurance and the renewal of insurance, the Wagoner Defendants and Brewer also misled Medical Assurance and ProAssurance by representing that the actions of the Wagoner Defendants and Brewer had been in the past, and would be in the future:  a) solely for the purpose of providing legitimate medical and professional services; and b) not for criminal, illegal or otherwise improper non-medical and non-professional purposes, including the illicit sale of narcotic drugs. Moreover, the Wagoner Defendants and Brewer further specifically failed to advise Medical Assurance and ProAssuance of such past criminal, illegal or otherwise improper non-medical and non-professional conduct and events which eventually resulted in actual claims and lawsuits, and other potential claims and lawsuits.

25.     These materially false and misleading representations and material omissions on the part of the Wagoner Defendants were contrary to the terms of the Wagoner Policies, the applications for the Wagoner Policies and Indiana common law and statute.

26.     These materially false and misleading representations and material omissions on the part of Brewer were contrary to the terms of the Brewer Policies, the applications for the Brewer Policies and Indiana common law and statute.

27.     Medical Assurance and ProAssurance reasonably relied upon these materially false and misleading statements and omissions/failures which were made by the Wagoner Defendants in order to obtain the Wagoner Policies. Medical Assurance and ProAssurance would not have renewed the Wagoner Policies had they known of the behavior, events and/or resulting actual claims and lawsuits and potential claims and suits which are the subject of Group Exhibits B-E.

28.     Medical Assurance and ProAssurance reasonably relied upon these materially false and misleading statements and omissions/failures which were made by Brewer in order to obtain the Brewer Policies. Medical Assurance and ProAssurance would not have renewed the Brewer Policies had they known of the behavior, events and/or resulting actual claims and suits and potential claims and lawsuits which are the subject of Group Exhibits B-E.

29.     Pursuant to the terms of the Wagoner Policies and Indiana law, as a result of the Wagoner Defendants' material omissions, failures to disclose and false statements, the Wagoner Policies are void *ab initio*.

30.     Pursuant to the terms of the Brewer Policies and Indiana law, as a result of Brewer's material omissions, failures to disclose and false statements, the Brewer Policies are void *ab initio*.

31.     ProAssurance stands ready to refund the premiums for its rescinded Wagoner and Brewer Policies by paying said premiums into Court upon the entry of an order of rescission.

WHEREFORE, Plaintiff, ProAssurance Indemnity Company, Inc., respectfully requests that this Court enter judgment in its favor and against the Wagoner Defendants and Brewer, ordering and declaring the following:

a.)      That all or some of the Wagoner Defendants have made material mis-representations and/or omissions in conjunction with application for and renewals of the Wagoner Policies;

b.)      That the Wagoner Policies are void *ab initio*;

c.)      That ProAssurance is under no obligation to defend the Wagoner Defendants with regard to any pending or future claims, Proposed Complaints filed with the Indiana Department of Insurance, civil law suits or any other matters arising or purporting to arise under any of the Wagoner Policies, ("Wagoner Claims");

d.)      That ProAssurance is under no obligation to pay any judgments, damages, costs or expenses which are associated with or arise out of any Wagoner Claims, or to indemnify the Wagoner Defendants for any such amounts;

e.)      That Brewer has made material misrepresentations and/or omissions in conjunction with application for and renewals of the Brewer Policies;

f.)      That the Brewer Policies are void *ab initio*;

g.)      That ProAssurance is under no obligation to defend Brewer with regard to any pending or future claims, Proposed Complaints filed with the Indiana Department of Insurance, civil law suits or any other matters arising or purporting to arise under any of the Brewer Policies, ("Brewer Claims");

h.)      That ProAssurance is under no obligation to pay any judgments, damages, costs or expenses which are associated with or arise out of any Brewer Claims, or to indemnify Brewer for any such amounts;

i.)      That ProAssurance is entitled to an award of costs of this action; and

j.)      That ProAssurance is entitled to a judgment which grants all other appropriate relief in its favor.

Respectfully submitted,

**EICHHORN & EICHHORN, LLP**


By: s/Robert J. Feldt
    One of the attorneys for the Plaintiff,
    ProAssurance Indemnity Company, Inc.

David C. Jensen, #4893-45
Robert J. Feldt, #16311-45
**EICHHORN & EICHHORN, LLP**
200 Russell Street, P.O. Box 6328
Hammond, IN 46325
Telephone: 219-931-0560
Facsimile: 219-931-5370