**GROUP EXHIBIT A, PART 2 OF 5 ATTACHED TO**
**<u>COMPLAINT FOR DECLARATORY JUDGMENT</u>**

**ProAssurance Companies**
965 Emerson Parkway, Suite H
Greenwood, IN 46143

800.282.6242
ProAssurance.com

*Send Non-Payment Mail to:*
ProAssurance Service Center
P.O. Box 150
Okemos, MI 48805-0150



PROASSURANCE.
Treated Fairly

April 6, 2015

This is to certify that the attached documents for policy MP49652 are true and exact copies of the Healthcare Professional Liability policy documents issued to Wagoner Medical Center, LLC, Wagoner Medical Center, P.C., D. J. & M. L. Wagoner, Inc., Don J. Wagoner, M.D., Marilyn L. Wagoner, M.D. Silvio J. Sanchez, M.D., Gary M. Hartman, PA, and John M. Thomas, PA for the policy period of March 1, 2004 to March 1, 2005.

Lois Wyrick
Regional Vice President, Underwriting
Authorized Representative

Personally appearing before me the above named Lois Wyrick personally known to me, who, being duly sworn, deposes and says that the above statement is true and correct to the best of her knowledge and belief.

Subscribed and sworn to before me this _6th_ day of _April_, 20_15_.

_____
Notary Public

My Commission Expires _6 / 2 /2017_

62

# MEDICAL PROFESSIONAL LIABILITY POLICY
## COVER PAGE



| THIS POLICY CONTAINS COVERAGES WRITTEN ON A "MODIFIED CLAIMS-MADE" BASIS. |
| --- |

In consideration of the payment of the premium, and in reliance upon the statements and representations in the applications for insurance and the **Coverage Summary**, **we** agree to provide the insurance contained in the **policy**.

**THE COMPANY:**   The Medical Assurance Company

**AGENT'S NAME AND ADDRESS:**
Medical Assurance of Indiana Agency
5975 Castle Creek Parkway
Suite 300
Indianapolis, IN  46250-4346

**POLICYHOLDER:**   Wagoner Medical Center, P.C.
601 St Road 22 East
P.O. Box 38
Burlington, IN  46915

**POLICY NUMBER:**   MP49652

The **policy** consists of this **Cover Page** and the following forms (together with any endorsements issued from time to time).

| Title | Form Number |
| --- | --- |
| Coverage Summary | MAI-MP-020 09 99 |
| Medical Professional Liability Policy | MAI-MP-030 01 02 |
| Professional Legal Defense Coverage - Extended Form | MAI-MP-071 08 01 |
| Renewal Endorsement | MAI-MP-500 09 99 |
| Indiana State Law Endorsement | MAI-MP-606 09 99.IN |
| Claims-Made Plus Endorsement | MAI-MP-611 07 03.IN |

If any provision of the **policy** changes, **we** will issue an endorsement stating the effective date of any changes. Terms appearing in the **policy** in **bold face print** are defined in the Definitions section.

IN WITNESS WHEREOF, **we** have caused the **Cover Page** to be signed by **our** President and Secretary. The **policy** is effective only if countersigned on the **Coverage Summary** by **our** duly authorized representative.

Kathryn A. Neville, JD, CPCU
Secretary

A. DERRILL CROWE, M.D.
President

# MEDICAL PROFESSIONAL LIABILITY POLICY
# COVERAGE SUMMARY

1. Policyholder's Name and Address:

   Wagoner Medical Center, P.C.
   601 St Road 22 East
   P.O. Box 38
   Burlington,IN 46915

2. Policy Number:  MP49652

3. Policy Period:  From 3/1/2004 to 3/1/2005 12:01 a.m. Standard Time at the address of the **policyholder** as stated above.

4. Total Premium:  $11,563.00   (Does not include  PCF Surcharge in the amount of $16,794.00)

5. Schedule of Insureds (Primary Coverage)
   The following are **Insureds** under the **policy**, with the following respective limits of liability:

Primary Limits of Liability

| Name | Retroactive Date | Each Medical Incident | Annual Aggregate | Deductible | Premium |
|------|------|------|------|------|------|
| INSURED ORGANIZATIONS | | | | | |
| D.J. & M. L. Wagoner, Inc. | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| Wagoner Medical Center, LLC | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| Wagoner Medical Center, P.C. | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| INSURED PHYSICIANS | | | | | |
| Marilyn L Wagoner, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $2,368 |
| Silvio J. Sanchez, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $1,599 |
| Marius-Julian Nefliu, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $1,599 |
| Don J Wagoner, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $3,219 |
| Elias Sharba, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $2,478 |
| INSURED PARAMEDICAL EMPLOYEES | | | | | |
| Gary M. Hartman, P.A. | 3/1/2004 | ** | ** | ** | |
| John M. Thomas, P.A. | 3/1/2004 | ** | ** | ** | |

6.  Professional Legal Defense Coverage Premium:     $2,500.00 included with Policyholder premium above.


Limits of Liability  NOTE:  These limits apply only to legal expenses incurred by covered insureds under the Professional Legal Defense Coverage Part, and not to defense costs incurred which are otherwise covered under the Professional Liability Coverage Part or other parts of the policy.

|  | Each Medical Incident |
|---|---|
| Each Covered Investigation | $25,000 |
| Each Covered Audit | $5,000 |
| Each Policy Period | $125,000 |


By: _____
Authorized Representative

# MEDICAL PROFESSIONAL LIABILITY POLICY

# DEFINITIONS

As used in the **policy**, the following terms shall have the following meanings:

**Continuous coverage effective date** means the effective date of the earliest **policy** issued by **us** to the **insured**, which **policy** is followed by a continuous and unbroken period in which **we** provided coverage to the **insured**.

**Cover Page** means the Medical Professional Liability Policy Cover Page, or any renewal or modification thereof.

**Coverage Summary** means the Medical Professional Liability Policy Coverage Summary, or any renewal or modification thereof.

**Damages** means all amounts of money which are payable because of injury, including death.

**Insured** means any **insured organization**, any **insured physician**, any **insured paramedical employee**, and any **other covered employee**.

**Insured organization** means any partnership, professional corporation, professional association, limited liability company, or other entity designated as an **Insured Organization** in the **Coverage Summary**.

**Insured paramedical employee** means any person designated as such in the **Coverage Summary**.

**Insured physician** means any person designated as such in the **Coverage Summary**.

**Medical incident** means:

A.    a single act or omission or a series of related acts or omissions arising out of the rendering of, or failure to render, **professional services** to any one person by an **insured** or any person for whose acts or omissions an **insured** is legally responsible, which results, or is likely to result, in **damages**; or

B.    a single act or omission or a series of related acts or omissions by an **insured physician**  during the performance of **peer review services** which results, or is likely to result, in **damages**.

For purposes of this definition, treatment of mother and fetus (or fetuses) from conception through postpartum care constitutes a single **medical incident**, and a continuing course of **professional services** relating to substantially the same medical condition constitutes a single **medical incident**.

**Other covered employee** means any person whose duties include the prevention, diagnosis and treatment of illness or injury, other than a person practicing as a physician, surgeon, dentist, psychologist, nurse midwife, nurse anesthetist, nurse practitioner, physician's assistant, surgeon's assistant, perfusionist, optometrist, cytotechnologist, emergency medical technician, or anesthesiologist assistant, or any person licensed, certified, or otherwise authorized to deliver advanced level health care in the absence of direct supervision by a licensed physician.

**Other insurance** means any valid and collectible insurance, self insurance, self-insured retention, self-insured trust, or risk transfer instrument of any kind, other than this **policy**, that provides defense or indemnity to any **insured** for any claim, loss, liability, or **damages** covered by this **policy**.

**Peer review services** means service by an **insured physician** while acting within the scope of his duties as a member of:

A.    a utilization and quality control peer review organization acting under contract with the U.S. Department of Health and Human Services to review the professional activities of health care providers;

B.    a duly constituted hospital, surgery center or long-term health care facility utilization review committee providing review of services furnished by the institution and members of its medical staff;

C.    a duly constituted hospital or surgery center staff committee, consisting solely of members of the medical staff of such hospital or surgery center, for the evaluation and improvement of quality of care;

D.    a duly constituted hospital peer review committee, consisting solely of members of the medical staff of such hospital, having responsibility for: (1) reviewing qualifications and credentials of persons seeking appointment or reappointment to a hospital medical staff, (2) evaluating the clinical or administrative competence of persons so appointed, (3) matters concerning limiting the scope of hospital privileges of persons on a hospital medical staff, or (4) matters concerning the dismissal or discharge of persons from a hospital medical staff; or

E.    any peer review program conducted by **us**.

**Policy** means the **Cover Page**, the forms listed thereon, and any endorsements issued from time to time. The **policy** terms in effect at the time a **medical incident** is first **reported** shall apply to that **medical incident**.

**Policyholder** means the person or entity designated as such in the **Coverage Summary**.

**Policy period** means the period specified as such in the **Coverage Summary**.

**Professional services** means the provision of medical services, including medical treatment, making medical diagnoses and rendering medical opinions or medical advice.

**Report, reported,** and **reporting** mean, when used with respect to a **medical incident**, the giving by an **insured** or his representative of notice of such **medical incident** either in writing or by telephone to **our** Claims Department specifying (1) the date, time, and place of the **medical incident,** (2) a description of the **medical incident,** (3) the name, address, and age of the patient or claimant, (4) the names of witnesses, including other treating physicians, and (5) the circumstances resulting in the **medical incident.**

**Reporting Endorsement** means an endorsement issued with respect to an **insured** under Section VI, VII or VIII of the Professional Liability Coverage Part to provide coverage for **medical incidents** first **reported** after the insurance provided by the **policy** terminates as to such **insured.**

**Retroactive date** means the **retroactive date** applicable to each **insured** as specified in the **Coverage Summary.**

**We, our** and **us** refer to the company issuing the **policy,** which is designated as "THE COMPANY" on the **Cover Page.**

# GENERAL CONDITIONS

I.   **PREMIUM**

All premiums shall be computed in accordance with **our** rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

II.   **RIGHTS AND DUTIES OF POLICYHOLDER**

Unless named as an **insured** in the **Coverage Summary**, the **policyholder** is not an **insured** and shall have no coverage under the **policy.** However, the **policyholder** shall pay all premiums and receive all notices and invoices under the **policy,** and all provisions in the General Conditions which are applicable to the **insureds** shall also apply to the **policyholder.**

III.   **INSPECTION**

**We** shall be permitted but not obligated to inspect any **insured**'s property and operations at any time. Neither **our** right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of any **insured** or others, to determine or warrant that such property or operations are safe, healthful, or in compliance with any law, rule or regulation.

IV.   **INSUREDS' DUTIES IN THE EVENT OF INCIDENT, CLAIM OR SUIT**

A.   When an **insured** becomes aware of any claim or suit to which this insurance applies, or any incident which is likely to result in such a claim or suit, such **insured** or his representative must **report** such incident, claim or suit as soon as practicable.

B.   Each **insured** shall cooperate with **us** and, upon **our** request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to such **insured** because of injury with respect to which insurance is afforded under the **policy,** and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. No **insured** shall make any payment, assume any obligation, accept responsibility or provide information concerning the incident except to **us** or such **insured**'s legal counsel.

C.   If claim is made or suit is brought against any **insured**, such **insured** shall immediately forward to **us** every demand, notice, summons or other process received by him or his representative.

D.   No **insured** shall alter patient records or otherwise misrepresent or conceal facts pertinent to any incident, claim or suit.

If any **insured** fails to comply with his obligations under the **policy, our** obligations to such **insured** under the **policy** shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

V.   **CLAIMS AGAINST US**

No claim shall lie against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of the **policy**, nor until the amount of any **insured**'s obligation to pay shall have been finally determined either by judgment against an **insured** after actual trial or by written agreement of such **insured**, the claimant, and **us**. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under the **policy** to the extent of the insurance afforded by the **policy**. No person or organization shall have any right under the **policy** to join **us** as a party to any action against an **insured** to determine the **insured**'s liability, nor shall **we** be impleaded by an **insured** or his legal representative.

Bankruptcy or insolvency of any **insured** or any **insured's** estate shall not relieve **us** of any of **our** obligations hereunder. Any claim against **us** shall be settled by arbitration as provided in Section XIII below.

VI.   **OTHER INSURANCE**

A.   With respect to loss arising from **peer review services** (other than **peer review services** performed on **our** behalf), the insurance provided by the **policy** is excess over any **other insurance**.

B.   Insurance provided to any **insured** by "Additional Limits of Liability," as specified in the **Coverage Summary**, shall apply only after exhaustion of the "Primary Limits of Liability" specified in the **Coverage Summary** for such **insured**. Insurance provided by Additional Limits of Liability shall be in excess of, and shall not contribute with, any **other insurance**. If Additional Limits of Liability are provided, **we** shall, after the Primary Limits of Liability have been exhausted, have no duty to defend any suit that any other insurer has a duty to defend.

C.   Except as provided in A or B, and any endorsement forming a part of the **policy**, this insurance is primary.

D.   When both this insurance and **other insurance** apply to loss on the same basis, whether primary, excess or contingent, **we** shall not be liable under the **policy** for a greater proportion of the loss than that stated in the applicable contribution provision below:

1.   If all of such **other insurance** provides for contribution by equal shares, **we** shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of loss is paid, and with respect to any amount of loss not so paid, the remaining insurers then continue to contribute in equal shares of the remaining amount of the loss until each insurer has paid its limit in full or the full amount of the loss is paid.

2.   If any such **other insurance** does not provide for contribution by equal shares, **we** shall not be liable for a greater proportion of such loss than the applicable limit of liability under the **policy** for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

VII.   **SUBROGATION**

In the event of any payment under the **policy**, **we** shall be subrogated to any **insured**'s rights of recovery therefor against any person or organization, and any such **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. No **insured** shall do anything to prejudice such rights.

VIII.   **ASSIGNMENT**

No **insured** may assign his interest in the **policy**. If, however, any **insured** shall die, such insurance as afforded by the **policy** shall apply to such **insured**'s legal representative, as an **insured**, but only while acting within the scope of his duties as such.

IX.   **CHANGES**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change in any part of the **policy** or estop **us** from asserting any right under the terms of the **policy**; nor shall the terms of the **policy** be waived or changed, except by endorsement issued to form a part of the **policy**.

X.   **CANCELLATION**

The **policy**, or coverage of any **insured** thereunder, may be canceled by the **policyholder** by mailing to **us** written notice stating when thereafter the cancellation shall be effective. The **policy**, or coverage of any **insured** thereunder, may be canceled by **us** by mailing to the **policyholder**, at the address shown in the **Coverage Summary**, written notice stating when such cancellation shall be effective. If the **policy**, or coverage of any **insured** thereunder, is canceled by **us** for failure of the **policyholder** to pay premiums, or when the **policy**, or coverage of any **insured** thereunder, has been in effect for less than 60 days, such notice of cancellation shall be given at least ten days prior to the date of cancellation. Otherwise, such notice of cancellation shall be given at least 45 days prior to the date of cancellation. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the **policy period** for each **insured** to which

such cancellation applies. Delivery of such written notice either by the **policyholder** or by **us** shall be equivalent to mailing. If the **policyholder** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If **we** cancel, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

## XI.    RENEWAL OF POLICY

Neither the **policyholder** nor **we** have any obligation to renew the **policy**. Any renewal will be on the policy forms and endorsements then in effect. If **we** elect not to renew the **policy**, or coverage of any **insured** thereunder, notice of nonrenewal shall be given at least 45 days prior to the end of the **policy period**.

## XII.    FRAUD AND MISREPRESENTATIONS

By acceptance of the **policy**, all **insureds** agree that the statements in the **Coverage Summary** and in their respective applications or renewal applications for insurance are their agreements and representations, that the **policy** is issued in reliance upon the truth of such representations, and that the **policy** embodies all agreements existing between themselves and **us** or any of **our** agents relating to this insurance. In the event of any fraud, material misrepresentation or omission by any **insured** in his application or renewal application for insurance, the **policy** is void as to the party committing such fraud, material misrepresentation or omission, no coverage is afforded to such party hereby, and such party shall have no right to purchase a **Reporting Endorsement**.

## XIII.    ARBITRATION

Both the **insureds** and **we** acknowledge that this agreement evidences a transaction involving interstate commerce. Any dispute, claim or controversy arising out of, relating to or in connection with the **policy**, its subject matter or its negotiation, as to the existence, validity, interpretation, performance, non-performance, enforcement, operation, breach of contract, breach of warranty, continuance or termination thereof or any claim alleging fraud, deceit, or suppression of any material fact or breach of fiduciary duty shall be submitted to binding arbitration in accordance with Title 9 U.S.C. § 1 et seq. (The United States Arbitration Act) and the Commercial Arbitration Rules of the American Arbitration Association. Such arbitration proceedings may be initiated by either party by notice in writing to the other and to the American Arbitration Association. Each party to arbitration shall bear its own arbitration costs and expenses. However, in the event any party is required to file a petition or commence any such other proceeding to compel arbitration, the arbitrator may award that party reasonable attorney's fees and costs incurred in having to bring such action. The arbitrator shall have the discretion to order a pre-hearing exchange of information by the parties, including, without limitation, production of requested documents, exchanging of summaries of testimony of proposed witnesses, and examination by deposition of parties. Notwithstanding contrary state law or regulation, the arbitrator shall have the authority to award any remedy or relief allowed under the provisions of the United States Arbitration Act, including, without limitation, specific performance of any obligation created under the **policy**, the awarding of punitive damages, the issuance of an injunction, or the imposition of sanctions for abuse or frustration of the arbitration process. Any arbitration award shall be in writing and shall specify the factual and legal bases of the award. Judgment on the award rendered by the arbitrator shall be final and may be entered in any court having jurisdiction thereof. The provisions hereof shall be a complete defense to any suit, action, or proceeding in any federal, state or local court or before any administrative tribunal with respect to any dispute, claim or controversy arising under the **policy**.

## XIV.    GOVERNING LAW

The **policy** shall be construed, and the legal relations between **us** and the **insureds** (and anyone claiming under the **insureds**) shall be determined, in accordance with the laws of the state in which the address of the **policyholder**, as specified in the **Coverage Summary**, is located, except that the Federal Arbitration Act (Title 9 of the United States Code) shall apply to the rights and obligations of the parties to submit any dispute, claim or controversy arising under the **policy** to arbitration, as provided in Section XIII above.

# PROFESSIONAL LIABILITY COVERAGE PART

## I.    INSURING AGREEMENT

**We** agree to pay on behalf of each **insured** all sums which such **insured** shall become legally obligated to pay as **damages** because of any **medical incident** which occurs after the **retroactive date** applicable to such **insured** and which is first **reported** during the **policy period**; provided, however, that **insured paramedical employees** and

other covered employees are covered only for **medical incidents** which occur while such persons are employed by an **insured organization** or **insured physician** and acting within the scope of such employment and while engaged in the performance of **professional services** which such persons hold any required license to perform. This insurance applies only to **medical incidents** arising out of **professional services** or **peer review services** rendered, or which should have been rendered, within the United States of America.

**II.   INVESTIGATION, DEFENSE AND SETTLEMENT**

**We** have the right to investigate any **medical incident** that **we** deem expedient. **We** have the right and duty to defend any suit against an **insured** seeking **damages** which, if awarded, would be covered by the **policy**, even if any of the allegations of the suit are groundless, false or fraudulent, and **we** have the right, but not the duty, to defend any claim against an **insured** seeking such **damages**. **We** have the right to select defense counsel in any such claim or suit defended by **us**.

**We** have the right to settle any claim or suit against an **insured** seeking **damages** which, if awarded, would be covered by the **policy**; provided that no such settlement will be made without the written consent of the **insured** against whom the claim or suit is brought unless:

A.   Such **insured** unreasonably withholds consent to the settlement; or

B.   The settlement is made after a verdict or judgment has been rendered against such **insured**.

**We** shall not be obligated to take an appeal from any judgment against an **insured**.

**We** shall not be obligated to pay damages or to defend any suit after the limit of liability applicable to an **insured** has been exhausted.

**III.   EXCLUSIONS**

**We** will not pay **damages** because of any of the following, and **we** will not provide a defense for any suit alleging any of the following:

A.   In the case of any **insured physician**, liability arising out of the rendering of, or failure to render, **professional services** by any person other than such **insured physician** for whose acts or omissions such **insured physician** is liable solely by reason of his status as a member, partner, officer, director or shareholder of any partnership, professional corporation, professional association, limited liability company, or other legal entity (other than an **insured organization**);

B.   Liability of an **insured** as an owner, superintendent, administrator, director, trustee, or officer of any hospital, sanitarium, clinic with bed and board facilities, nursing home, ambulatory surgery center, laboratory, health maintenance organization, preferred provider organization, exclusive provider organization or other similar health care entity, or other business enterprise;

C.   Liability assumed by an **insured** under any contract or agreement, whether oral, written or implied, except to the extent that coverage for such liability would be available to such **insured** in the absence of such contract or agreement;

D.   Liability arising out of any willful, wanton, fraudulent, criminal or malicious act or omission;

E.   Liability arising out of sexual activity, or acts in furtherance of sexual activity whether under the guise of **professional services** or not, on the part of an **insured**, or any person for whose acts or omissions such **insured** is legally responsible;

F.   Injury to any employee of an **insured** unless arising from the treatment of the employee as a patient of such **insured**;

G.   Any obligation for which an **insured** or any carrier as his insurer may be held liable under any worker's compensation, unemployment compensation, disability benefits, or any similar law;

H.   Liability arising out of any act or omission of an **insured** (1) for which such **insured** does not hold any required license to perform, (2) which occurs during any time such **insured's** license to practice his profession has been suspended, revoked or voluntarily surrendered, or (3) which constitutes a violation of any restriction imposed upon such license;

I.   Liability arising out of any antitrust violation (except for antitrust violations arising from **peer review services** for which coverage is otherwise afforded), unfair competition, discrimination, or any other act or omission which violates any statute, ordinance or regulation imposing any fine, penalty or other sanction;

J.   Any **medical incident** which has been **reported** to another insurance carrier prior to the **continuous coverage effective date**; any **medical incident** which occurred prior to the **continuous coverage effective date**, if on such date, the **insured** knew or believed, or had reason to know or believe, that such **medical incident** had occurred; or any **medical incident** that occurred during a period in which the **insured** was not covered under a policy of professional liability insurance;

Medical Professional Liability Policy
©2002 Medical Assurance

K.   Liability arising out of any claim or investigation instituted by a patient of any **insured** alleging errors or omissions by the **insured** in billing statements for **professional services** rendered to such patient; or

L.   Liability for punitive or exemplary damages (including any multiple of compensatory damages, such as double or treble damages) awarded against an **insured.**

## IV.   LIMITS OF LIABILITY AND DEDUCTIBLES

The limits of liability specified in the **Coverage Summary** as applicable to each **insured physician** shall apply to all claims or suits made or brought against such **insured physician** (except that claims or suits arising out of the rendering of, or failure to render, **professional services** by any person other than such **insured physician** for whose acts or omissions such **insured physician** may be held liable as a member, partner, officer, director or shareholder of an **insured organization** shall be charged against the limit of liability of the **insured organization**).

The limits of liability specified in the **Coverage Summary** as applicable to each **insured paramedical employee** shall apply to all claims or suits made or brought against such **insured paramedical employee.**

The limits of liability specified in the **Coverage Summary** as applicable to an **insured organization** shall apply to all claims or suits made or brought against (1) the **insured organization**; (2) any **other covered employee**; and (3) any **insured physician**, provided such liability arises out of the rendering of, or failure to render, **professional services** by any person other than such **insured physician** for whose acts or omissions such **insured physician** is liable solely by reason of his status as a member, partner, officer, director or shareholder of the **insured organization.**

The limit of liability specified in the **Coverage Summary** for each **insured** as "each medical incident" is the total of **our** liability to such **insured** resulting from any one **medical incident**. The limit of liability stated in the **Coverage Summary** for each **insured** as "annual aggregate" is the total limit of **our** liability to such **insured** resulting from **medical incidents** which are first **reported** during the **policy period.**

The limit of liability shall apply regardless of:

A.   the number of persons or entities claiming **damages** covered by the **policy**;

B.   the number of claims or suits brought on account of a **medical incident**;

C.   the number of **insureds** under the **policy**; or

D.   the inclusion of an additional insured.

If Additional Limits of Liability are shown in the **Coverage Summary** for any **insured**, such Additional Limits of Liability shall apply only to (1) **medical incidents** which occur after the Additional Coverage Retroactive Date shown for such **insured** in the **Coverage Summary** and (2) after exhaustion of the Primary Limits of Liability applicable to such **insured.**

**We** shall have the right to allocate **damages** or supplementary payments among claimants, **insureds**, and policies as **we** deem appropriate.

If a **Reporting Endorsement** is issued, **our** liability for all **medical incidents** first **reported** after the effective date of the **Reporting Endorsement** shall be as stated therein.

If a "Deductible" is shown for any **insured** in the **Coverage Summary** as applicable to this Coverage Part, such **insured** shall be liable for each **medical incident reported** in an amount equal to the Deductible shown in the **Coverage Summary,** and **our** limit of liability will be reduced by such amount. In the event **we** pay on behalf of an **insured** all or part of the deductible as **damages**, such **insured** shall reimburse **us** for the amount of any such payment. If any **insured** fails to make such reimbursement within thirty (30) days after written demand, the **policyholder** will pay **us** the amount due. Each **insured** and the **policyholder** agree to pay all costs incurred by **us**, including attorneys' fees and court costs, incurred by **us** in collecting any reimbursement.

## V.   SUPPLEMENTARY PAYMENTS

**We** will pay, in addition to the applicable limit of liability:

A.   all expenses incurred by **us**, all costs taxed against an **insured** in any suit defended by **us**, and all interest on the entire amount of any judgment therein which accrues after entry of judgment and before **we** have paid or tendered or deposited in court that part of the judgment which does not exceed the limit of **our** liability thereon;

B.   premiums on appeal bonds required in any suit defended by **us** and premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of the **policy**, but **we** shall have no obligation to apply for or furnish any such bond; and

---

C.    upon request, reasonable travel and lodging expenses incurred by any **insured physician,** previously approved by **us,** and up to $500 per day for loss of time for each day such **insured physician** is required to attend the trial of a civil suit pertaining to a **medical incident.**

## VI.    REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED ORGANIZATIONS

In the event of termination of the insurance afforded by the **policy,** either by nonrenewal or cancellation, any **insured organization** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the endorsement), to have issued a **Reporting Endorsement** providing coverage for **medical incidents** occurring prior to the termination date and otherwise covered by the **policy,** but which are first **reported** after such termination date. Such right must be exercised by such **insured organization** by providing written notice to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, if the insurance provided by the **policy** to any **insured organization** which shares limits with one or more **insured physicians** terminates by reason of the dissolution or other termination of activity by such **insured organization,** such **insured organization** shall continue to be covered for **medical incidents** which occur while such **insured organization** is active, even though any such **medical incident** may not be **reported** until after the **insured organization** ceases activity, as long as such **medical incident** is first **reported** within the **policy period** applicable to the **insured physicians** with whom the **insured organization** shares limits.

The **Reporting Endorsement** issued to an **insured organization** pursuant to this Section VI shall provide coverage only for such **insured organization** and its **other covered employees.** Such **Reporting Endorsement** shall not provide coverage to any **insured physician** or **insured paramedical employee. Insured physicians** and **insured paramedical employees** must obtain individual **Reporting Endorsements** as provided in Sections VII and VIII below.

## VII.    REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PHYSICIANS

If the insurance afforded by the **policy** to an **insured physician** terminates, either by nonrenewal or cancellation, such **insured physician** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the endorsement), to have issued a policy and a **Reporting Endorsement,** in the form then used by **us,** providing coverage for **medical incidents** occurring prior to the termination date and for which such **insured physician** is otherwise covered by the **policy,** but which are first **reported** after such termination date. Such right must be exercised by an **insured physician** by providing written notice to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, a **Reporting Endorsement** shall be issued to an **insured physician** automatically and without payment of any additional premium in case the termination of his insurance results from:

A.  the death of such **insured physician;**

B.  the permanent and total retirement by such **insured physician** from the practice of medicine, but only if such **insured physician** shall have been insured continuously by **us** for the preceding five years. The **insured physician** must submit an affidavit satisfactory to **us** in which the **insured physician** confirms his intention to permanently and totally retire from the practice of medicine and agrees to pay a premium for the **Reporting Endorsement** if such **insured physician** recommences the practice of medicine within five years after delivering such affidavit;

C.  the permanent and total disability of such **insured physician** resulting in the inability to continue the *professional activity or endeavor in which he was theretofore engaged,* but only if such permanent and total disability:

1.  shall have continued without significant interruption for a term of not less than six months prior to termination; and

2.  shall have required regular treatment by a legally qualified medical or surgical practitioner other than himself.

**VIII.  REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PARAMEDICAL EMPLOYEES**

If the insurance afforded by the **policy** to an **insured paramedical employee** terminates, either by nonrenewal or cancellation, such **insured paramedical employee** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the endorsement), to have issued a policy and a **Reporting Endorsement**, in the form then used by **us** for individual coverage, providing coverage for **medical incidents** occurring prior to the termination date and for which such **insured paramedical employee** is otherwise covered by the **policy**, but which are first **reported** after such termination date. Such right must be exercised by an **insured paramedical employee** by providing written notice to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, if the insurance provided by the **policy** to any **insured paramedical employee** who shares limits with one or more **insured physicians** terminates, such **insured paramedical employee** shall continue to be covered for **medical incidents** which occur while such **insured paramedical employee** is employed by the **insured physicians** with whom he or she shares limits of liability, even though any such **medical incident** may not be **reported** until after the **insured paramedical employee** is no longer so employed, as long as such **medical incident** is first **reported** within the **policy period** applicable to the **insured physicians** with whom the **insured paramedical employee** shares limits.

# MEDICAL PROFESSIONAL LIABILITY POLICY
## PROFESSIONAL LEGAL DEFENSE COVERAGE PART
## EXTENDED FORM

**I.   DEFINITIONS**

Terms appearing in **bold face print** shall have the meanings given in the Definitions section of the **policy**. In addition:

**Appointed counsel** means the attorney or firm of attorneys that, in **our** sole discretion, is either (1) appointed by **us** in writing, or (2) appointed by a **covered insured** with **our** prior written approval, to defend a **covered insured** in any **covered investigation.**

**Audit expenses** means fees and expenses of an accountant or other consultant engaged by a **covered insured** in connection with any **covered audit. Audit expenses** does not include any taxes, penalties or other expenses incurred by a **covered insured.**

**Covered audit** means any audit or review of billing or medical records undertaken by a **covered insured** in response to an investigation or proceeding commenced by any federal or state agency alleging violation by any **covered insured** of Medicare or Medicaid laws, rules or regulations relating to reimbursement for medical services.

**Covered insured** means any **insured physician** or **insured organization.**

**Covered investigation** means any one or more of the following:

A.   An investigation or proceeding commenced by the governmental or regulatory agency charged with determining whether the **covered insured** participated in the improper transfer of a patient ("dumping"), in violation of the Consolidated Omnibus Budget Reconciliation Act of 1986, as amended ("COBRA").

B.   An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance of laws regulating Medicare or Medicaid (or other federal or state health care program offered as an alternative to Medicare or Medicaid), to determine whether the **covered insured** provided **professional services** improperly to a patient covered by Medicare or Medicaid (or other federal or state health care program offered as an alternative to Medicare or Medicaid).

C.   An investigation or proceeding commenced by a **utilization and quality control peer review organization**, but only at the level of such investigation or proceeding in which sanctions may be imposed on the **covered insured.**

D.   An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with regulations pertaining to the Clinical Laboratory Improvement Amendments of 1988 ("CLIA"), whether or not the **covered insured** was in violation of such regulations.

E.   An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with regulations pertaining to the Omnibus Budget Reconciliation Act of 1990 ("OBRA '90"), whether or not the **covered insured** was in violation of such regulations.

F.   An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with the Occupational Safety and Health Administration ("OSHA") regulations pertaining to bloodborne pathogens, whether or not the **covered insured** was in violation of such regulations.

G.   A subpoena or request received by the **covered insured**, requiring the **covered insured** to testify in a trial or deposition, or to provide other discovery, other than as an expert witness, in connection with a legal proceeding (1) arising out of a **medical incident**, but (2) in which the **covered insured** is not a party.

H.   A claim or investigation instituted by a patient of the **covered insured** alleging sexual misconduct or harassment by the **covered insured** in the course of providing **professional services** to such patient.

I.   A claim or investigation instituted by a patient of the **covered insured** alleging errors or omissions by the **covered insured** in billing statements for **professional services** rendered to such patient.

J.   A disciplinary proceeding initiated by a licensure commission, board of ethics or similar professional body, which accuses a **covered insured** of, or investigates an accusation that a **covered insured** engaged in, improper or unprofessional conduct in the course of such **covered insured's** medical practice.

K.   An investigation or proceeding commenced by any federal or state agency alleging violation by any **covered insured** of Medicare or Medicaid laws, rules or regulations relating to reimbursement for medical services.

**Criminal prosecution** means any governmental action seeking enforcement of criminal laws, including offenses for which conviction could result in imprisonment.

**Legal expenses** means the normal, reasonable and customary charges of the **appointed counsel** in defending a **covered insured** in any **covered investigation**, including reasonable out-of-pocket charges incurred by such **appointed counsel**. **Legal expenses** does not include damages, fines, judgments or penalties which may be assessed in any **covered investigation** or paid in any settlement thereof or expenses incurred in the defense of any **criminal prosecution**.

**Utilization and quality control peer review organization** means a utilization and quality control peer review organization under contract with the U. S. Department of Health and Human Services to review the professional activities of physicians and other health care practitioners and providers under the federal Social Security Act, as amended, while acting within the scope of its duties under such contract.

**II.    INSURING AGREEMENT**

**We** will pay on behalf of any **covered insured** the **legal expenses** incurred by such **covered insured** in the course of a **covered investigation**, provided that:

A.    the **medical incident** giving rise to the **covered investigation** occurred after the **retroactive date** applicable to such **covered insured** and prior to the termination of the **policy**;

B.    the **covered insured** first receives written notice of the commencement of the **covered investigation** within the **policy period**; and

C.    the **covered investigation** is first **reported** during the **policy period**.

**We** will pay on behalf of any **covered insured** the **audit expenses** incurred by such **covered insured** in the course of a **covered audit**, provided that:

the acts or omissions of the **covered insured** giving rise to the **covered audit** occurred after the **retroactive date** applicable to such **covered insured** and prior to the termination of the **policy**;

A.    formal written notice of the investigation or proceeding to which the **covered audit** relates is first received by the **covered insured** during the **policy period**; and

B.    such investigation or proceeding is first **reported** during the **policy period**.

**We** will pay **legal expenses** contemplated herein (1) directly to **appointed counsel** if **we** elect to appoint such counsel or (2) to the **covered insured** upon presentation of **appointed counsel's** invoices and evidence of payment by the **covered insured** if **we** elect to reimburse costs of **appointed counsel** selected by the **covered insured**.

**III.   PERSONS INSURED**

Only **covered insureds** are insured under this Coverage Part.

**IV.   LIMIT OF LIABILITY**

The **limit** of liability specified in the **Coverage Summary** as "Each Covered Investigation" is the total of **our** liability to each **covered insured** for **legal expenses** resulting from any one **covered investigation**. The total limit of liability specified in the **Coverage Summary** as "Each Covered Audit" is the total of **our** liability to each **covered insured** for **audit expenses** resulting from any one **covered audit**. The limit of liability specified in the **Coverage Summary** as "Each Policy Period" is the total limit of **our** liability to all **covered insureds** for **audit expenses** and **legal expenses** resulting from all **covered investigations** which are first **reported** during the **policy period**.

**V.    REPORTING ENDORSEMENT PROVISIONS**

If a **Reporting Endorsement** is issued for a **covered insured**, the period for **reporting covered investigations** under this Coverage Part shall be automatically extended for the duration of the **Reporting Endorsement**, but only for the **reporting** of **covered investigations** which are otherwise covered hereunder. Termination or cancellation of the **Reporting Endorsement** shall automatically terminate the period for **reporting covered investigations** under this Coverage Part.

**VI.   DEDUCTIBLE**

Coverage for the **covered investigations** described in Items H through K of the definition of **covered investigation** is subject to a deductible of $1,000.  For each such **covered investigation**, each **covered insured** shall be required to pay **legal expenses** in an amount equal to such deductible before **our** obligation to pay **legal expenses** rises.  In addition, for each **covered audit**, each **covered insured** shall be required to pay **audit expenses** in an amount equal to such deductible before **our** obligation to pay **audit expenses** arises.

# MEDICAL PROFESSIONAL LIABILITY POLICY
# RENEWAL ENDORSEMENT

**POLICYHOLDER:** Wagoner Medical Center, P.C.

**POLICY NUMBER:** MP49652

**RENEWAL DATE:** 3/1/2004

This renewal of the **policy** is offered under certain conditions and in reliance upon the initial application and any subsequent applications each **insured** and the **policyholder** provided to **us**.

Further, as a condition to renewal of the **policy**, the **policyholder** and each **insured** represent and warrant that, except as otherwise disclosed to **us** in writing:

    A.    no **insured** has had any state medical license, hospital privileges or license to prescribe or dispense medicine denied, suspended, restricted or revoked, nor has any such **insured** voluntarily surrendered any such license or privileges for any reason;

    B.    no **insured** has (1) undergone psychiatric treatment, (2) been treated for alcohol or narcotics addiction, (3) had any chronic illness or physical defect, (4) been convicted of any misdemeanor or felony other than minor traffic violations, (5) appeared before any Professional Standards/Quality Assurance Review Committee or (6) appeared before any Board of Medical Examiners or Medical Licensure Commission; and

    C.    no **insured** has changed the scope of his or her medical practice from that previously disclosed to **us** in his or her applications for insurance.

If, at any time while the **policy** is in effect, any of the events described in paragraph A, B, or C occur, the **policyholder** agrees to notify **us** within thirty (30) days of its occurrence, and to provide such additional information as **we** may require.

The **policyholder** acknowledges that information concerning any of the events described above is material to **our** agreement to provide insurance under the **policy** on the basis, and for the premium, stated in the **Coverage Summary**.

# MEDICAL PROFESSIONAL LIABILITY POLICY
# INDIANA STATE LAW ENDORSEMENT

**POLICYHOLDER:** Wagoner Medical Center, P.C.           **ENDORSEMENT EFFECTIVE DATE:** 3/1/2004

**POLICY NUMBER:** MP49652

This Endorsement amends the Professional Liability Coverage Part of the **policy**.

Section II. of the Professional Liability Coverage Part (Investigation, Defense and Settlement) is hereby deleted and replaced by the following:

**II.   Investigation, Defense and Settlement**

**We** have the right to investigate any **medical incident** that **we** deem expedient. **We** have the right and duty to defend any suit against an **insured** seeking **damages** which, if awarded, would be covered by the **policy**, even if any of the allegations of the suit are groundless, false or fraudulent, and **we** have the right, but not the duty, to defend any claim against an **insured** seeking such **damages**. **We** have the right to select defense counsel in any such claim or suit defended by **us**.

**We** have the right to settle any claim or suit against an **insured** seeking **damages** which, if awarded, would be covered by the **policy**; provided that no such settlement will be made without the written consent of the **insured** against whom the claim or suit is brought unless:

    A.   Such **insured** unreasonably withholds consent to the settlement; or

    B.   The settlement is made after a verdict or judgment has been rendered against such **insured**.

**We** may, however, settle without the consent of the **insured** any claim or suit filed in accordance with the provisions of Indiana Code 27-1-13-7 for which a medical review panel as established by Indiana Code 34-18-10-1 has issued a unanimous opinion that the **insured** failed to comply with the appropriate standard of care as charged in the claim or suit.

**We** shall not be obligated to take an appeal from any judgment against an **insured**.

**We** shall not be obligated to pay damages or to defend any suit after the limit of liability applicable to an **insured** has been exhausted.

# MEDICAL PROFESSIONAL LIABILITY POLICY
# CLAIMS-MADE PLUS<sup>SM</sup> ENDORSEMENT

**POLICYHOLDER: Wagoner Medical Center, P.C.**                    **ENDORSEMENT**
                                                                  **EFFECTIVE DATE: 3/1/2004**

**POLICY NUMBER: MP49652**

I.   Item VI. REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED ORGANIZATIONS, of the General Conditions, form MAI-MP-030, is hereby amended as follows:

**VI.   REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED ORGANIZATIONS**

In the event of termination of the insurance afforded by the **policy**, either by nonrenewal or cancellation, any **insured organization** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of this policy), to have issued a **Reporting Endorsement** providing coverage for **medical incidents** occurring prior to the termination date and otherwise covered by the **policy**, but which are first **reported** after such termination date. Such right must be exercised by such **insured organization** by providing written notice to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, if the insurance provided by the **policy** to any **insured organization** which shares limits with one or more **insured physicians** terminates by reason of the dissolution or other termination of activity by such **insured organization**, such **insured organization** shall continue to be covered for **medical incidents** which occur while such **insured organization** is active, even though any such **medical incident** may not be **reported** until after the **insured organization** ceases activity, as long as such **medical incident** is first **reported** within the **policy period** applicable to the **insured physicians** with whom the **insured organization** shares limits.

The **Reporting Endorsement** issued to an **insured organization** pursuant to this Section VI shall provide coverage only for such **insured organization** and its **other covered employees**. Such **Reporting Endorsement** shall not provide coverage to any **insured physician** or **insured paramedical employee**. **Insured physicians** and **insured paramedical employees** must obtain individual **Reporting Endorsements** as provided in Sections VII and VIII below.

II.  Item VII. REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PHYSICIANS, of the General Conditions, form MAI-MP-030, is hereby amended as follows:

**VII.   REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PHYSICIANS**

If the insurance afforded by the **policy** to an **insured physician** terminates, either by nonrenewal or cancellation, such **insured physician** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of this policy), to have issued a policy and a **Reporting Endorsement**, in the form then used by **us**, providing coverage for **medical incidents** occurring prior to the termination date and for which such **insured physician** is otherwise covered by the **policy**, but which are first **reported** after such termination date. Such right must be exercised by an **insured physician** by providing written notice to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, a **Reporting Endorsement** shall be issued to an **insured physician** automatically and without payment of any additional premium in case the termination of his insurance results from:

A.   the death of such **insured physician**;

B.   the permanent and total retirement by such **insured physician** from the practice of medicine. The **insured physician** must submit an affidavit satisfactory to **us** in which the **insured physician** confirms his intention to permanently and totally retire from the practice of medicine and agrees to pay a premium for the **Reporting Endorsement** if such **insured physician** recommences the practice of medicine within five years after delivering such affidavit;

C.   the permanent and total disability of such **insured physician** resulting in the inability to continue the professional activity or endeavour in which he was theretofore engaged, but only if such permanent and total disability:

1.   shall have continued without significant interruption for a term of not less than six months prior to termination; and

---

      2. shall have required regular treatment by a legally qualified medical or surgical practitioner other than himself.

    D.    the total relocation of the insured's practice outside the State of Indiana. The **insured physician** must submit an affidavit satisfactory to **us** in which the **insured physician** confirms his intention to permanently and totally relocate his practice from the State of Indiana, including new place of employment, and agrees to pay a premium for the **Reporting Endorsement** if such **insured physician** should return to the practice of medicine in the State of Indiana within three years after delivering such affidavit;

III.    Item VIII. REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PARAMEDICAL EMPLOYEES, of the General Conditions, form MAI-MP-030, is hereby amended as follows:

    **VIII.**  **REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PARAMEDICAL EMPLOYEES**

If the insurance afforded by the **policy** to an **insured paramedical employee** terminates, either by nonrenewal or cancellation, such **insured paramedical employee** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of this policy), to have issued policy and a **Reporting Endorsement**, in the form then used by **us** for individual coverage, providing coverage for **medical incidents** occurring prior to the termination date and for which such **insured paramedical employee** is otherwise covered by the **policy**, but which are first **reported** after such termination date. Such right must be exercised by an **insured paramedical employee** by providing written notice to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, if the insurance provided by the **policy** to any **insured paramedical employee** who shares limits with one or more **insured physicians** terminates, such **insured paramedical employee** shall continue to be covered for **medical incidents** which occur while such **insured paramedical employee** is employed by the **insured physicians** with whom he or she shares limits of liability, even though any such **medical incident** may not be **reported** until after the **insured paramedical employee** is no longer so employed, as long as such **medical incident** is first **reported** within the **policy period** applicable to the **insured physicians** with whom the **insured paramedical employee** shares limits.

All Other Terms and Conditions Remain Unchanged.

# CERTIFICATE OF INSURANCE

TO:  INDIANA PATIENT'S COMPENSATION FUND
     MEDICAL MALPRACTICE DIVISION
     311 W. WASHINGTON ST. STE.300
     INDIANAPOLIS, IN 46204-2787

Cancellation:
Return/Additional Surcharge
Credit

Surcharge    Effective Date
$_____    _____
$_____    _____
_____%    _____

| Policy No.: MP49652 AO730669 | Occurrence | | |
|---|---|---|---|
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |

| Health Care Provider: Wagoner Medical Center, LLC<br><br>Medical License No.: | Including employees    X | Excluding employees |
|---|---|---|

| Address (Street, City, State, Zip):<br>601 St Road 22 East<br>P.O. Box 38<br>Burlington, IN 46915 | County: Carroll |
|---|---|

| Coverage Dates:<br><br>From: 3/1/2004 To: 3/1/2005 | Classification Number: 80999 |
|---|---|

| Limits of Liability<br><br>$250,000      $750,000<br>per occurrence    annual aggregate | Premium Amount: $ 100<br><br>Surcharge Amount: $ 100<br><br>Penalty Amount: |
|---|---|

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Percent (100%) of the premium for non-physician or non-hospital providers.  Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2004 at the insurance office of The Medical Assurance Company.

*Lois J. Wyrick*
Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

Pac-3/State Form 2713RS
Revised 7/18/03

# CERTIFICATE OF INSURANCE

TO: INDIANA PATIENT'S COMPENSATION FUND
    MEDICAL MALPRACTICE DIVISION
    311 W. WASHINGTON ST. STE.300
    INDIANAPOLIS, IN 46204-2787

| | | Surcharge | Effective Date |
|---|---|---|---|
| Cancellation: | | $_____ | _____ |
| Return/Additional Surcharge | | $_____ | _____ |
| Credit | | _____% | _____ |

| | | | |
|---|---|---|---|
| Policy No.: MP49652 QP625307 | Occurrence | | |
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |

| | | |
|---|---|---|
| Health Care Provider: Wagoner Medical Center, P.C.<br><br>Medical License No.: | Including employees   X | Excluding employees |

| | |
|---|---|
| Address (Street, City, State, Zip):<br>601 St Road 22 East<br>P.O. Box 38<br>Burlington, IN 46915 | County: Carroll |

| | |
|---|---|
| Coverage Dates:<br><br>From: 3/1/2004 To: 3/1/2005 | Classification Number: 80999 |

| | |
|---|---|
| Limits of Liability<br><br>$250,000        $750,000<br>per occurrence    annual aggregate | Premium Amount: $  100<br><br>Surcharge Amount: $  100<br><br>Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Percent (100%) of the premium for non-physician or non-hospital providers. Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change. Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2004 at the insurance office of The Medical Assurance Company.

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

# CERTIFICATE OF INSURANCE

TO: INDIANA PATIENT'S COMPENSATION FUND
    MEDICAL MALPRACTICE DIVISION
    311 W. WASHINGTON ST. STE.300
    INDIANAPOLIS, IN 46204-2787

| | Surcharge | Effective Date |
|---|---|---|
| Cancellation: | $_____ | _____ |
| Return/Additional Surcharge | $_____ | _____ |
| Credit | _____% | _____ |

| Policy No.: MP49652 HQ621367 | | | |
|---|---|---|---|
| Occurrence | | | |
| Claims Made | X | Retro Date: 3/1/2004 | |
| Reporting Endors. | | Retro Date: | |

| Health Care Provider: D.J. & M. L. Wagoner, Inc. | | |
|---|---|---|
| Medical License No.: 01019897 | | |
| Including employees | X | Excluding employees |

Address (Street, City, State, Zip):
601 St Road 22 East
P.O. Box 38
Burlington, IN 46915

County: Carroll

Coverage Dates:

From: 3/1/2004 To: 3/1/2005

Classification Number: 80999

| Limits of Liability | | |
|---|---|---|
| $250,000 per occurrence | $750,000 annual aggregate | Premium Amount: $ 100 |
| | | Surcharge Amount: $ 100 |
| | | Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Percent (100%) of the premium for non-physician or non-hospital providers.  Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2004 at the insurance office of The Medical Assurance Company.

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

*Pac-3/State Form 2713R5*
*Revised 7/18/03*

82

# CERTIFICATE OF INSURANCE

| | | | Surcharge | Effective Date |
|---|---|---|---|---|
| TO:  INDIANA PATIENT'S COMPENSATION FUND | | | | |
| MEDICAL MALPRACTICE DIVISION | Cancellation: | | $_____ | _____ |
| 311 W. WASHINGTON ST. STE.300 | Return/Additional Surcharge | | $_____ | _____ |
| INDIANAPOLIS, IN 46204-2787 | Credit | | _____% | _____ |

| | | | |
|---|---|---|---|
| Policy No.: MP49652 DR623327 | Occurrence | | |
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |
| Health Care Provider: Don J Wagoner, M.D. | | | |
| Medical License No.: 01019897 | Including employees       X | | Excluding employees |
| Address (Street, City, State, Zip): | County: Carroll | | |
| 601 St Road 22 East | | | |
| P.O. Box 38 | | | |
| Burlington, IN 46915 | | | |
| Coverage Dates: | Classification Number: 80421 | | |
| From: 3/1/2004 To: 3/1/2005 | | | |
| Limits of Liability | Premium Amount: $ 3,219 | | |
| $250,000             $750,000 | Surcharge Amount: $ 5,602 | | |
| per occurrence       annual aggregate | | | |
| | Penalty Amount: | | |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Percent (100%) of the premium for non-physician or non-hospital providers.  Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2004 at the insurance office of The Medical Assurance Company.

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

*Pac-3/State Form 2713R5*
*Revised 7/18/03*

83

# CERTIFICATE OF INSURANCE

TO:  INDIANA PATIENT'S COMPENSATION FUND
    MEDICAL MALPRACTICE DIVISION
    311 W. WASHINGTON ST. STE.300
    INDIANAPOLIS, IN 46204-2787

Cancellation:
Return/Additional Surcharge
Credit

| | Surcharge | Effective Date |
|---|---|---|
| | $_____ | _____ |
| | $_____ | _____ |
| | _____% | _____ |

| Policy No.: MP49652 GU623328 | Occurrence | | |
|---|---|---|---|
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |

| Health Care Provider: Marilyn L Wagoner, M.D. | | | |
|---|---|---|---|
| Medical License No.: 01019503 | Including employees | X | Excluding employees |

| Address (Street, City, State, Zip): | County: Carroll |
|---|---|
| 601 St Road 22 East | |
| P.O. Box 38 | |
| Burlington, IN 46915 | |

| Coverage Dates: | Classification Number: 80420 |
|---|---|
| From: 3/1/2004 To: 3/1/2005 | |

| Limits of Liability | Premium Amount: $ 2,368 |
|---|---|
| $250,000      $750,000 | Surcharge Amount: $ 3,112 |
| per occurrence      annual aggregate | |
| | Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute,  for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Percent (100%) of the premium for non-physician or non-hospital providers.  Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2004 at the insurance office of The Medical Assurance Company.

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

*Pac-3/State Form 2713RS*
*Revised 7/18/03*

84

# CERTIFICATE OF INSURANCE

TO:  INDIANA PATIENT'S COMPENSATION FUND
MEDICAL MALPRACTICE DIVISION
311 W. WASHINGTON ST. STE.300
INDIANAPOLIS, IN 46204-2787

Cancellation:
Return/Additional Surcharge
Credit

| | Surcharge | Effective Date |
|---|---|---|
| | $_____ | _____ |
| | $_____ | _____ |
| | _____% | _____ |

| Policy No.: MP49652 C15193-PNFL | Occurrence | | | |
|---|---|---|---|---|
| | Claims Made | X | Retro Date: 3/1/2004 | |
| | Reporting Endors. | | Retro Date: | |

| Health Care Provider: Silvio J. Sanchez, M.D. | Including employees | X | Excluding employees |
|---|---|---|---|
| Medical License No.: 01057014 | | | |

| Address (Street, City, State, Zip): | County: Howard |
|---|---|
| 601 St Road 22 East | |
| P.O. Box 38 | |
| Burlington, IN 46915 | |

| Coverage Dates: | Classification Number: 80257 |
|---|---|
| From: 3/1/2004 To: 3/1/2005 | |

| Limits of Liability | Premium Amount: $ 1,599 |
|---|---|
| $250,000           $750,000 | Surcharge Amount: $ 2,334 |
| per occurrence     annual aggregate | Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute,  for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Percent (100%) of the premium for non-physician or non-hospital providers.   Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2004 at the insurance office of The Medical Assurance Company.

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

ProAssurance Companies
965 Emerson Parkway, Suite H
Greenwood, IN 46143

800.282.6242
ProAssurance.com

*Send Non-Payment Mail to:*
ProAssurance Service Center
P.O. Box 150
Okemos, MI 48805-0150



PROASSURANCE.
Treated Fairly

April 6, 2015

This is to certify that the attached documents for policy MP49652 are true and exact
copies of the Healthcare Professional Liability policy documents issued to Wagoner
Medical Center, LLC, Wagoner Medical Center, P.C., D. J. & M. L. Wagoner, Inc., Don J.
Wagoner, M.D., Marilyn L. Wagoner, M.D. Silvio J. Sanchez, M.D., Gary M. Hartman, PA,
and John M. Thomas, PA for the policy period of March 1, 2005 to March 1, 2006.

Lois Wyrick
Regional Vice President, Underwriting
Authorized Representative

Personally appearing before me the above named Lois Wyrick personally known to me,
who, being duly sworn, deposes and says that the above statement is true and correct to
the best of her knowledge and belief.

Subscribed and sworn to before me this ___6th___ day of ___April___, 20_15_.

_____
Notary Public

My Commission Expires ___6/2/2017___

86

# MEDICAL PROFESSIONAL LIABILITY POLICY COVER PAGE



**THIS POLICY CONTAINS COVERAGES WRITTEN ON A "MODIFIED CLAIMS-MADE" BASIS.**

In consideration of the payment of the premium, and in reliance upon the statements and representations in the applications for insurance and the **Coverage Summary**, **we** agree to provide the insurance contained in the **policy**.

**THE COMPANY:**   The Medical Assurance Company

**AGENT'S NAME AND ADDRESS:**
Medical Assurance of Indiana Agency
5975 Castle Creek Parkway
Suite 300
Indianapolis, IN  46250-4346

**POLICYHOLDER:**   Wagoner Medical Center, P.C.
601 St Road 22 East
P.O. Box 38
Burlington, IN  46915

**POLICY NUMBER:**  MP49652

The **policy** consists of this **Cover Page** and the following forms (together with any endorsements issued from time to time).

| Title | Form Number |
|---|---|
| Coverage Summary | MAI-MP-020 09 99 |
| Medical Professional Liability Policy | MAI-MP-030 01 02 |
| Professional Legal Defense Coverage - Extended Form | MAI-MP-071 09 03 |
| Renewal Endorsement | MAI-MP-500 09 99 |
| Indiana State Law Endorsement | MAI-MP-606 09 99.IN |

If any provision of the **policy** changes, **we** will issue an endorsement stating the effective date of any changes. Terms appearing in the **policy** in **bold face print** are defined in the Definitions section.

IN WITNESS WHEREOF, **we** have caused the **Cover Page** to be signed by **our** President and Secretary. The **policy** is effective only if countersigned on the **Coverage Summary** by **our** duly authorized representative.

_Kathryn A. Neville_

Kathryn A. Neville, JD, CPCU
Secretary

_A. Derrill Crowe_

A. DERRILL CROWE, M.D.
President

# MEDICAL PROFESSIONAL LIABILITY POLICY
# COVERAGE SUMMARY

1. Policyholder's Name and Address:

   Wagoner Medical Center, P.C.
   601 St Road 22 East
   P.O. Box 38
   Burlington, IN 46915

2. Policy Number: MP49652

3. Policy Period: From 3/1/2005 to 3/1/2006 12:01 a.m. Standard Time at the address of the **policyholder** as stated above.

4. Total Premium: $20,418.00   (Does not include  PCF Surcharge in the amount of $20,756.00)

5. Schedule of Insureds (Primary Coverage)
   The following are **insureds** under the **policy**, with the following respective limits of liability:

Primary Limits of Liability

| Name | Retroactive Date | Each Medical Incident | Annual Aggregate | Deductible | Premium |
|---|---|---|---|---|---|
| INSURED ORGANIZATIONS | | | | | |
| D.J. & M. L. Wagoner, Inc. | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| Wagoner Medical Center, LLC | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| Wagoner Medical Center, P.C. | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| INSURED PHYSICIANS | | | | | |
| Elias Sharba, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $3,651 |
| Marilyn L Wagoner, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $3,475 |
| Don J Wagoner, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $5,638 |
| Marius-Julian Nefliu, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $3,677 |
| Silvio J. Sanchez, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $3,677 |
| INSURED PARAMEDICAL EMPLOYEES | | | | | |
| John M. Thomas, P.A. | 3/1/2004 | ** | ** | N/A | |
| Gary M. Hartman, P.A. | 3/1/2004 | ** | ** | N/A | |

6.  Professional Legal Defense Coverage Premium:     $2,500.00 included with Policyholder premium above.


Limits of Liability  NOTE:  These limits apply only to legal expenses incurred by covered insureds under the Professional Legal Defense Coverage Part, and not to defense costs incurred which are otherwise covered under the Professional Liability Coverage Part or other parts of the policy.

|  | Each Medical Incident |
| --- | --- |
| Each Covered Investigation | $25,000 |
| Each Covered Audit | $5,000 |
| Each Policy Period | $125,000 |


By: _____
                Authorized Representative

# MEDICAL PROFESSIONAL LIABILITY POLICY

# DEFINITIONS

As used in the **policy**, the following terms shall have the following meanings:

**Continuous coverage effective date** means the effective date of the earliest **policy** issued by **us** to the **insured**, which **policy** is followed by a continuous and unbroken period in which **we** provided coverage to the **insured**.

**Cover Page** means the Medical Professional Liability Policy Cover Page, or any renewal or modification thereof.

**Coverage Summary** means the Medical Professional Liability Policy Coverage Summary, or any renewal or modification thereof.

**Damages** means all amounts of money which are payable because of injury, including death.

**Insured** means any **insured organization**, any **insured physician**, any **insured paramedical employee**, and any **other covered employee**.

**Insured organization** means any partnership, professional corporation, professional association, limited liability company, or other entity designated as an **Insured Organization** in the **Coverage Summary**.

**Insured paramedical employee** means any person designated as such in the **Coverage Summary**.

**Insured physician** means any person designated as such in the **Coverage Summary**.

**Medical incident** means:

    A.    a single act or omission or a series of related acts or omissions arising out of the rendering of, or failure to render, **professional services** to any one person by an **insured** or any person for whose acts or omissions an **insured** is legally responsible, which results, or is likely to result, in **damages;** or

    B.    a single act or omission or a series of related acts or omissions by an **insured physician** during the performance of **peer review services** which results, or is likely to result, in **damages.**

For purposes of this definition, treatment of mother and fetus (or fetuses) from conception through postpartum care constitutes a single **medical incident**, and a continuing course of **professional services** relating to substantially the same medical condition constitutes a single **medical incident**.

**Other covered employee** means any person whose duties include the prevention, diagnosis and treatment of illness or injury, other than a person practicing as a physician, surgeon, dentist, psychologist, nurse midwife, nurse anesthetist, nurse practitioner, physician's assistant, surgeon's assistant, perfusionist, optometrist, cytotechnologist, emergency medical technician, or anesthesiologist assistant, or any person licensed, certified, or otherwise authorized to deliver advanced level health care in the absence of direct supervision by a licensed physician.

**Other insurance** means any valid and collectible insurance, self insurance, self-insured retention, self-insured trust, or risk transfer instrument of any kind, other than this **policy**, that provides defense or indemnity to any **insured** for any claim, loss, liability, or **damages** covered by this **policy**.

**Peer review services** means service by an **insured physician** while acting within the scope of his duties as a member of:

    A.    a utilization and quality control peer review organization acting under contract with the U.S. Department of Health and Human Services to review the professional activities of health care providers;

    B.    a duly constituted hospital, surgery center or long-term health care facility utilization review committee providing review of services furnished by the institution and members of its medical staff;

    C.    a duly constituted hospital or surgery center staff committee, consisting solely of members of the medical staff of such hospital or surgery center, for the evaluation and improvement of quality of care;

    D.    a duly constituted hospital peer review committee, consisting solely of members of the medical staff of such hospital, having responsibility for: (1) reviewing qualifications and credentials of persons seeking appointment or reappointment to a hospital medical staff, (2) evaluating the clinical or administrative competence of persons so appointed, (3) matters concerning limiting the scope of hospital privileges of persons on a hospital medical staff, or (4) matters concerning the dismissal or discharge of persons from a hospital medical staff; or

    E.    any peer review program conducted by **us**.

**Policy** means the **Cover Page**, the forms listed thereon, and any endorsements issued from time to time. The **policy** terms in effect at the time a **medical incident** is first **reported** shall apply to that **medical incident**.

**Policyholder** means the person or entity designated as such in the **Coverage Summary**.

**Policy period** means the period specified as such in the **Coverage Summary**.

**Professional services** means the provision of medical services, including medical treatment, making medical diagnoses and rendering medical opinions or medical advice.

**Report, reported, and reporting** mean, when used with respect to a **medical incident**, the giving by an **insured** or his representative of notice of such **medical incident** either in writing or by telephone to **our** Claims Department specifying (1) the date, time, and place of the **medical incident**, (2) a description of the **medical incident**, (3) the name, address, and age of the patient or claimant, (4) the names of witnesses, including other treating physicians, and (5) the circumstances resulting in the **medical incident**.

**Reporting Endorsement** means an endorsement issued with respect to an **insured** under Section VI, VII or VIII of the Professional Liability Coverage Part to provide coverage for **medical incidents** first **reported** after the insurance provided by the **policy** terminates as to such **insured**.

**Retroactive date** means the **retroactive date** applicable to each **insured** as specified in the **Coverage Summary**.

**We, our** and **us** refer to the company issuing the **policy**, which is designated as "THE COMPANY" on the **Cover Page**.

# GENERAL CONDITIONS

**I.    PREMIUM**

All premiums shall be computed in accordance with **our** rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

**II.   RIGHTS AND DUTIES OF POLICYHOLDER**

Unless named as an **insured** in the **Coverage Summary**, the **policyholder** is not an **insured** and shall have no coverage under the **policy**. However, the **policyholder** shall pay all premiums and receive all notices and invoices under the **policy**, and all provisions in the General Conditions which are applicable to the **insureds** shall also apply to the **policyholder**.

**III.  INSPECTION**

**We** shall be permitted but not obligated to inspect any **insured**'s property and operations at any time. Neither **our** right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of any **insured** or others, to determine or warrant that such property or operations are safe, healthful, or in compliance with any law, rule or regulation.

**IV.   INSUREDS' DUTIES IN THE EVENT OF INCIDENT, CLAIM OR SUIT**

A.    When an **insured** becomes aware of any claim or suit to which this insurance applies, or any incident which is likely to result in such a claim or suit, such **insured** or his representative must **report** such incident, claim or suit as soon as practicable.

B.    Each **insured** shall cooperate with **us** and, upon **our** request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to such **insured** because of injury with respect to which insurance is afforded under the **policy**, and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. No **insured** shall make any payment, assume any obligation, accept responsibility or provide information concerning the incident except to **us** or such **insured's** legal counsel.

C.    If claim is made or suit is brought against any **insured**, such **insured** shall immediately forward to **us** every demand, notice, summons or other process received by him or his representative.

D.    No **insured** shall alter patient records or otherwise misrepresent or conceal facts pertinent to any incident, claim or suit.

If any **insured** fails to comply with his obligations under the **policy**, **our** obligations to such **insured** under the **policy** shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## V.   CLAIMS AGAINST US

No claim shall lie against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of the **policy**, nor until the amount of any **insured**'s obligation to pay shall have been finally determined either by judgment against an **insured** after actual trial or by written agreement of such **insured**, the claimant, and **us**. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under the **policy** to the extent of the insurance afforded by the **policy**. No person or organization shall have any right under the **policy** to join **us** as a party to any action against an **insured** to determine the **insured**'s liability, nor shall **we** be impleaded by an **insured** or his legal representative.

Bankruptcy or insolvency of any **insured** or any **insured's** estate shall not relieve **us** of any of **our** obligations hereunder. Any claim against **us** shall be settled by arbitration as provided in Section XIII below.

## VI.   OTHER INSURANCE

A.    With respect to loss arising from **peer review services** (other than **peer review services** performed on **our** behalf), the insurance provided by the **policy** is excess over any **other insurance**.

B.    Insurance provided to any **insured** by "Additional Limits of Liability," as specified in the **Coverage Summary**, shall apply only after exhaustion of the "Primary Limits of Liability" specified in the **Coverage Summary** for such **insured**. Insurance provided by Additional Limits of Liability shall be in excess of, and shall not contribute with, any **other insurance**. If Additional Limits of Liability are provided, **we** shall, after the Primary Limits of Liability have been exhausted, have no duty to defend any suit that any other insurer has a duty to defend.

C.    Except as provided in A or B, and any endorsement forming a part of the **policy**, this insurance is primary.

D.    When both this insurance and **other insurance** apply to loss on the same basis, whether primary, excess or contingent, **we** shall not be liable under the **policy** for a greater proportion of the loss than that stated in the applicable contribution provision below:

    1.    If all of such **other insurance** provides for contribution by equal shares, **we** shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of loss is paid, and with respect to any amount of loss not so paid, the remaining insurers then continue to contribute in equal shares of the remaining amount of the loss until each insurer has paid its limit in full or the full amount of the loss is paid.

    2.    If any such **other insurance** does not provide for contribution by equal shares, **we** shall not be liable for a greater proportion of such loss than the applicable limit of liability under the **policy** for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

## VII.   SUBROGATION

In the event of any payment under the **policy**, **we** shall be subrogated to any **insured**'s rights of recovery therefor against any person or organization, and any such **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. No **insured** shall do anything to prejudice such rights.

## VIII.   ASSIGNMENT

No **insured** may assign his interest in the **policy**. If, however, any **insured** shall die, such insurance as afforded by the **policy** shall apply to such **insured**'s legal representative, as an **insured**, but only while acting within the scope of his duties as such.

## IX.   CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change in any part of the **policy** or estop **us** from asserting any right under the terms of the **policy**; nor shall the terms of the **policy** be waived or changed, except by endorsement issued to form a part of the **policy**.

## X.   CANCELLATION

The **policy**, or coverage of any **insured** thereunder, may be canceled by the **policyholder** by mailing to **us** written notice stating when thereafter the cancellation shall be effective. The **policy**, or coverage of any **insured** thereunder, may be canceled by **us** by mailing to the **policyholder**, at the address shown in the **Coverage Summary**, written notice stating when such cancellation shall be effective. If the **policy**, or coverage of any **insured** thereunder, is canceled by **us** for failure of the **policyholder** to pay premiums, or when the **policy**, or coverage of any **insured** thereunder, has been in effect for less than 60 days, such notice of cancellation shall be given at least ten days prior to the date of cancellation. Otherwise, such notice of cancellation shall be given at least 45 days prior to the date of cancellation. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the **policy period** for each **insured** to which

such cancellation applies. Delivery of such written notice either by the **policyholder** or by **us** shall be equivalent to mailing. If the **policyholder** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If **we** cancel, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

## XI. RENEWAL OF POLICY

Neither the **policyholder** nor **we** have any obligation to renew the **policy**. Any renewal will be on the policy forms and endorsements then in effect. If **we** elect not to renew the **policy**, or coverage of any **insured** thereunder, notice of nonrenewal shall be given at least 45 days prior to the end of the **policy period**.

## XII. FRAUD AND MISREPRESENTATIONS

By acceptance of the **policy**, all **insureds** agree that the statements in the **Coverage Summary** and in their respective applications or renewal applications for insurance are their agreements and representations, that the **policy** is issued in reliance upon the truth of such representations, and that the **policy** embodies all agreements existing between themselves and **us** or any of **our** agents relating to this insurance. In the event of any fraud, material misrepresentation or omission by any **insured** in his application or renewal application for insurance, the **policy** is void as to the party committing such fraud, material misrepresentation or omission, no coverage is afforded to such party hereby, and such party shall have no right to purchase a **Reporting Endorsement**.

## XIII. ARBITRATION

Both the **insureds** and **we** acknowledge that this agreement evidences a transaction involving interstate commerce. Any dispute, claim or controversy arising out of, relating to or in connection with the **policy**, its subject matter or its negotiation, as to the existence, validity, interpretation, performance, non-performance, enforcement, operation, breach of contract, breach of warranty, continuance or termination thereof or any claim alleging fraud, deceit, or suppression of any material fact or breach of fiduciary duty shall be submitted to binding arbitration in accordance with Title 9 U.S.C. § 1 et seq. (The United States Arbitration Act) and the Commercial Arbitration Rules of the American Arbitration Association. Such arbitration proceedings may be initiated by either party by notice in writing to the other and to the American Arbitration Association. Each party to arbitration shall bear its own arbitration costs and expenses. However, in the event any party is required to file a petition or commence any such other proceeding to compel arbitration, the arbitrator may award that party reasonable attorney's fees and costs incurred in having to bring such action. The arbitrator shall have the discretion to order a pre-hearing exchange of information by the parties, including, without limitation, production of requested documents, exchanging of summaries of testimony of proposed witnesses, and examination by deposition of parties. Notwithstanding contrary state law or regulation, the arbitrator shall have the authority to award any remedy or relief allowed under the provisions of the United States Arbitration Act, including, without limitation, specific performance of any obligation created under the **policy**, the awarding of punitive damages, the issuance of an injunction, or the imposition of sanctions for abuse or frustration of the arbitration process. Any arbitration award shall be in writing and shall specify the factual and legal bases of the award. Judgment on the award rendered by the arbitrator shall be final and may be entered in any court having jurisdiction thereof. The provisions hereof shall be a complete defense to any suit, action, or proceeding in any federal, state or local court or before any administrative tribunal with respect to any dispute, claim or controversy arising under the **policy**.

## XIV. GOVERNING LAW

The **policy** shall be construed, and the legal relations between **us** and the **insureds** (and anyone claiming under the **insureds**) shall be determined, in accordance with the laws of the state in which the address of the **policyholder**, as specified in the **Coverage Summary**, is located, except that the Federal Arbitration Act (Title 9 of the United States Code) shall apply to the rights and obligations of the parties to submit any dispute, claim or controversy arising under the **policy** to arbitration, as provided in Section XIII above.

# PROFESSIONAL LIABILITY COVERAGE PART

## I. INSURING AGREEMENT

**We** agree to pay on behalf of each **insured** all sums which such **insured** shall become legally obligated to pay as **damages** because of any **medical incident** which occurs after the **retroactive date** applicable to such **insured** and which is first **reported** during the **policy period**; provided, however, that **insured paramedical employees** and

**other covered employees** are covered only for **medical incidents** which occur while such persons are employed by an **insured organization** or **insured physician** and acting within the scope of such employment and while engaged in the performance of **professional services** which such persons hold any required license to perform. This insurance applies only to **medical incidents** arising out of **professional services** or **peer review services** rendered, or which should have been rendered, within the United States of America.

## II. INVESTIGATION, DEFENSE AND SETTLEMENT

**We** have the right to investigate any **medical incident** that **we** deem expedient.  **We** have the right and duty to defend any suit against an **insured** seeking **damages** which, if awarded, would be covered by the **policy**, even if any of the allegations of the suit are groundless, false or fraudulent, and **we** have the right, but not the duty, to defend any claim against an **insured** seeking such **damages**.  **We** have the right to select defense counsel in any such claim or suit defended by **us**.

**We** have the right to settle any claim or suit against an **insured** seeking **damages** which, if awarded, would be covered by the **policy**; provided that no such settlement will be made without the written consent of the **insured** against whom the claim or suit is brought unless:

A.    Such **insured** unreasonably withholds consent to the settlement; or

B.    The settlement is made after a verdict or judgment has been rendered against such **insured**.

**We** shall not be obligated to take an appeal from any judgment against an **insured**.

**We** shall not be obligated to pay damages or to defend any suit after the limit of liability applicable to an **insured** has been exhausted.

## III. EXCLUSIONS

**We** will not pay **damages** because of any of the following, and **we** will not provide a defense for any suit alleging any of the following:

A.    In the case of any **insured physician**, liability arising out of the rendering of, or failure to render, **professional services** by any person other than such **insured physician** for whose acts or omissions such **insured physician** is liable solely by reason of his status as a member, partner, officer, director or shareholder of any partnership, professional corporation, professional association, limited liability company, or other legal entity (other than an **insured organization**);

B.    Liability of an **insured** as an owner, superintendent, administrator, director, trustee, or officer of any hospital, sanitarium, clinic with bed and board facilities, nursing home, ambulatory surgery center, laboratory, health maintenance organization, preferred provider organization, exclusive provider organization or other similar health care entity, or other business enterprise;

C.    Liability assumed by an **insured** under any contract or agreement, whether oral, written or implied, except to the extent that coverage for such liability would be available to such **insured** in the absence of such contract or agreement;

D.    Liability arising out of any willful, wanton, fraudulent, criminal or malicious act or omission;

E.    Liability arising out of sexual activity, or acts in furtherance of sexual activity whether under the guise of **professional services** or not, on the part of an **insured**, or any person for whose acts or omissions such **insured** is legally responsible;

F.    Injury to any employee of an **insured** unless arising from the treatment of the employee as a patient of such **insured**;

G.    Any obligation for which an **insured** or any carrier as his insurer may be held liable under any worker's compensation, unemployment compensation, disability benefits, or any similar law;

H.    Liability arising out of any act or omission of an **insured** (1) for which such **insured** does not hold any required license to perform, (2) which occurs during any time such **insured's** license to practice his profession has been suspended, revoked or voluntarily surrendered, or (3) which constitutes a violation of any restriction imposed upon such license;

I.    Liability arising out of any antitrust violation (except for antitrust violations arising from **peer review services** for which coverage is otherwise afforded), unfair competition, discrimination, or any other act or omission which violates any statute, ordinance or regulation imposing any fine, penalty or other sanction;

J.    Any **medical incident** which has been **reported** to another insurance carrier prior to the **continuous coverage effective date**; any **medical incident** which occurred prior to the **continuous coverage effective date**, if on such date, the **insured** knew or believed, or had reason to know or believe, that such **medical incident** had occurred; or any **medical incident** that occurred during a period in which the **insured** was not covered under a policy of professional liability insurance;

K.    Liability arising out of any claim or investigation instituted by a patient of any **insured** alleging errors or omissions by the **insured** in billing statements for **professional services** rendered to such patient; or

L.    Liability for punitive or exemplary damages (including any multiple of compensatory damages, such as double or treble damages) awarded against an **insured.**

## IV.    LIMITS OF LIABILITY AND DEDUCTIBLES

The limits of liability specified in the **Coverage Summary** as applicable to each **insured physician** shall apply to all claims or suits made or brought against such **insured physician** (except that claims or suits arising out of the rendering of, or failure to render, **professional services** by any person other than such **insured physician** for whose acts or omissions such **insured physician** may be held liable as a member, partner, officer, director or shareholder of an **insured organization** shall be charged against the limit of liability of the **insured organization**).

The limits of liability specified in the **Coverage Summary** as applicable to each **insured paramedical employee** shall apply to all claims or suits made or brought against such **insured paramedical employee.**

The limits of liability specified in the **Coverage Summary** as applicable to an **insured organization** shall apply to all claims or suits made or brought against (1) the **insured organization**; (2) any **other covered employee**; and (3) any **insured physician**, provided such liability arises out of the rendering of, or failure to render, **professional services** by any person other than such **insured physician** for whose acts or omissions such **insured physician** is liable solely by reason of his status as a member, partner, officer, director or shareholder of the **insured organization.**

The limit of liability specified in the **Coverage Summary** for each **insured** as "each medical incident" is the total of **our** liability to such **insured** resulting from any one **medical incident.** The limit of liability stated in the **Coverage Summary** for each **insured** as "annual aggregate" is the total limit of **our** liability to such **insured** resulting from **medical incidents** which are first **reported** during the **policy period.**

The limit of liability shall apply regardless of:

A.    the number of persons or entities claiming **damages** covered by the **policy**;

B.    the number of claims or suits brought on account of a **medical incident**;

C.    the number of **insureds** under the **policy**; or

D.    the inclusion of an additional insured.

If Additional Limits of Liability are shown in the **Coverage Summary** for any **insured**, such Additional Limits of Liability shall apply only to (1) **medical incidents** which occur after the Additional Coverage Retroactive Date shown for such **insured** in the **Coverage Summary** and (2) after exhaustion of the Primary Limits of Liability applicable to such **insured.**

**We** shall have the right to allocate **damages** or supplementary payments among claimants, **insureds**, and policies as **we** deem appropriate.

If a **Reporting Endorsement** is issued, **our** liability for all **medical incidents** first **reported** after the effective date of the **Reporting Endorsement** shall be as stated therein.

If a "Deductible" is shown for any **insured** in the **Coverage Summary** as applicable to this Coverage Part, such **insured** shall be liable for each **medical incident reported** in an amount equal to the Deductible shown in the **Coverage Summary**, and **our** limit of liability will be reduced by such amount. In the event **we** pay on behalf of an **insured** all or part of the deductible as **damages**, such **insured** shall reimburse **us** for the amount of any such payment. If any **insured** fails to make such reimbursement within thirty (30) days after written demand, the **policyholder** will pay **us** the amount due. Each **insured** and the **policyholder** agree to pay all costs incurred by **us**, including attorneys' fees and court costs, incurred by **us** in collecting any reimbursement.

## V.    SUPPLEMENTARY PAYMENTS

**We** will pay, in addition to the applicable limit of liability:

A.    all expenses incurred by **us**, all costs taxed against an **insured** in any suit defended by **us**, and all interest on the entire amount of any judgment therein which accrues after entry of judgment and before **we** have paid or tendered or deposited in court that part of the judgment which does not exceed the limit of **our** liability thereon;

B.    premiums on appeal bonds required in any suit defended by **us** and premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of the **policy**, but **we** shall have no obligation to apply for or furnish any such bond; and

C.   upon request, reasonable travel and lodging expenses incurred by any **insured physician,** previously approved by **us,** and up to $500 per day for loss of time for each day such **insured physician** is required to attend the trial of a civil suit pertaining to a **medical incident.**

## VI.   REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED ORGANIZATIONS

In the event of termination of the insurance afforded by the **policy,** either by nonrenewal or cancellation, any **insured organization** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates; rating plan and premiums applicable on the effective date of the endorsement), to have issued a **Reporting Endorsement** providing coverage for **medical incidents** occurring prior to the termination date and otherwise covered by the **policy,** but which are first **reported** after such termination date. Such right must be exercised by such **insured organization** by providing written notice to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, if the insurance provided by the **policy** to any **insured organization** which shares limits with one or more **insured physicians** terminates by reason of the dissolution or other termination of activity by such **insured organization,** such **insured organization** shall continue to be covered for **medical incidents** which occur while such **insured organization** is active, even though any such **medical incident** may not be **reported** until after the **insured organization** ceases activity, as long as such **medical incident** is first **reported** within the **policy period** applicable to the **insured physicians** with whom the **insured organization** shares limits.

The **Reporting Endorsement** issued to an **insured organization** pursuant to this Section VI shall provide coverage only for such **insured organization** and its **other covered employees.** Such **Reporting Endorsement** shall not provide coverage to any **insured physician** or **insured paramedical employee. Insured physicians** and **insured paramedical employees** must obtain individual **Reporting Endorsements** as provided in Sections VII and VIII below.

## VII.   REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PHYSICIANS

If the insurance afforded by the **policy** to an **insured physician** terminates, either by nonrenewal or cancellation, such **insured physician** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the endorsement), to have issued a policy and a **Reporting Endorsement,** in the form then used by **us,** providing coverage for **medical incidents** occurring prior to the termination date and for which such **insured physician** is otherwise covered by the **policy,** but which are first **reported** after such termination date. Such right must be exercised by an **insured physician** by providing written notice to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, a **Reporting Endorsement** shall be issued to an **insured physician** automatically and without payment of any additional premium in case the termination of his insurance results from:

A.   the death of such **insured physician;**

B.   the permanent and total retirement by such **insured physician** from the practice of medicine, but only if such **insured physician** shall have been insured continuously by **us** for the preceding five years. The **insured physician** must submit an affidavit satisfactory to **us** in which the **insured physician** confirms his intention to permanently and totally retire from the practice of medicine and agrees to pay a premium for the **Reporting Endorsement** if such **insured physician** recommences the practice of medicine within five years after delivering such affidavit;

C.   the permanent and total disability of such **insured physician** resulting in the inability to continue the professional activity or endeavor in which he was theretofore engaged, but only if such permanent and total disability:

1.   shall have continued without significant interruption for a term of not less than six months prior to termination; and

2.   shall have required regular treatment by a legally qualified medical or surgical practitioner other than himself.

**VIII. REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PARAMEDICAL EMPLOYEES**

If the insurance afforded by the **policy** to an **insured paramedical employee** terminates, either by nonrenewal or cancellation, such **insured paramedical employee** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the endorsement), to have issued a policy and a **Reporting Endorsement**, in the form then used by **us** for individual coverage, providing coverage for **medical incidents** occurring prior to the termination date and for which such **insured paramedical employee** is otherwise covered by the **policy**, but which are first **reported** after such termination date. Such right must be exercised by an **insured paramedical employee** by providing written notice to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, if the insurance provided by the **policy** to any **insured paramedical employee** who shares limits with one or more **insured physicians** terminates, such **insured paramedical employee** shall continue to be covered for **medical incidents** which occur while such **insured paramedical employee** is employed by the **insured physicians** with whom he or she shares limits of liability, even though any such **medical incident** may not be **reported** until after the **insured paramedical employee** is no longer so employed, as long as such **medical incident** is first **reported** within the **policy period** applicable to the **insured physicians** with whom the **insured paramedical employee** shares limits.

# MEDICAL PROFESSIONAL LIABILITY POLICY
# PROFESSIONAL LEGAL DEFENSE COVERAGE PART
# EXTENDED FORM

**I.   DEFINITIONS**

Terms appearing in **bold face print** shall have the meanings given in the Definitions section of the **policy.** In addition:

**Appointed counsel** means the attorney or firm of attorneys that, in **our** sole discretion, is either (1) appointed by **us** in writing, or (2) appointed by a **covered insured** with **our** prior written approval, to defend a **covered insured** in any **covered investigation.**

**Audit expenses** means fees and expenses of an accountant or other consultant engaged by a **covered insured** in connection with any **covered audit.   Audit expenses** does not include any taxes, penalties or other expenses incurred by a **covered insured.**

**Covered audit** means any audit or review of billing or medical records undertaken by a **covered insured** in response to an investigation or proceeding commenced by any federal or state agency alleging violation by any **covered insured** of Medicare or Medicaid laws, rules or regulations relating to reimbursement for medical services.

**Covered insured** means any **insured physician** or **insured organization.**

**Covered investigation** means any one or more of the following:

A.   An investigation or proceeding commenced by the governmental or regulatory agency charged with determining whether the **covered insured** participated in the improper transfer of a patient ("dumping"), in violation of the Consolidated Omnibus Budget Reconciliation Act of 1986, as amended ("COBRA").

B.   An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance of laws regulating Medicare or Medicaid (or other federal or state health care program offered as an alternative to Medicare or Medicaid), to determine whether the **covered insured** provided **professional services** improperly to a patient covered by Medicare or Medicaid (or other federal or state health care program offered as an alternative to Medicare or Medicaid).

C.   An investigation or proceeding commenced by a **utilization and quality control peer review organization,** but only at the level of such investigation or proceeding in which sanctions may be imposed on the **covered insured.**

D.   investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with regulations pertaining to the Clinical Laboratory Improvement Amendments of 1988 ("CLIA"), whether or not the **covered insured** was in violation of such regulations.

E.   investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with regulations pertaining to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") or the Omnibus Budget Reconciliation Act of 1990 ("OBRA '90"), whether or not the **covered insured** was in violation of such regulations.

F.   investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with the Occupational Safety and Health Administration ("OSHA") regulations pertaining to bloodborne pathogens, whether or not the **covered insured** was in violation of such regulations.

G.   a subpoena or request received by the **covered insured,** requiring the **covered insured** to testify in a trial or deposition, or to provide other discovery, other than as an expert witness, in connection with a legal proceeding (1) arising out of a **medical incident,** but (2) in which the **covered insured** is not a party.

H.   A claim or investigation instituted by a patient of the **covered insured** alleging sexual misconduct or harassment by the **covered insured** in the course of providing **professional services** to such patient.

I.   A claim or investigation instituted by a patient of the **covered insured** alleging errors or omissions by the **covered insured** in billing statements for **professional services** rendered to such patient.

J.   A disciplinary proceeding initiated by a licensure commission, board of ethics or similar professional body, which accuses a **covered insured** of, or investigates an accusation that a **covered insured** engaged in, improper or unprofessional conduct in the course of such **covered insured's** medical practice.

K.   An investigation or proceeding commenced by any federal or state agency alleging violation by any **covered insured** of Medicare or Medicaid laws, rules or regulations relating to reimbursement for medical services.

---

**Criminal prosecution** means any governmental action seeking enforcement of criminal laws, including offenses for which conviction could result in imprisonment.

**Legal expenses** means the normal, reasonable and customary charges of the **appointed counsel** in defending a **covered insured** in any **covered investigation**, including reasonable out-of-pocket charges incurred by such **appointed counsel**. **Legal expenses** does not include damages, fines, judgments or penalties which may be assessed in any **covered investigation** or paid in any settlement thereof or expenses incurred in the defense of any **criminal prosecution**.

**Utilization and quality control peer review organization** means a utilization and quality control peer review organization under contract with the U. S. Department of Health and Human Services to review the professional activities of physicians and other health care practitioners and providers under the federal Social Security Act, as amended, while acting within the scope of its duties under such contract.

## II.  INSURING AGREEMENT

We will pay on behalf of any **covered insured** the **legal expenses** incurred by such **covered insured** in the course of a **covered investigation**, provided that:

A.  the **medical incident** giving rise to the **covered investigation** occurred after the **retroactive date** applicable to such **covered insured** and prior to the termination of the **policy;**

B.  the **covered insured** first receives written notice of the commencement of the **covered investigation** within the **policy period;** and

C.  the **covered investigation** is first **reported** during the **policy period**.

We will pay on behalf of any **covered insured** the **audit expenses** incurred by such **covered insured** in the course of a **covered audit**, provided that:

A.  the acts or omissions of the **covered insured** giving rise to the **covered audit** occurred after the **retroactive date** applicable to such **covered insured** and prior to the termination of the **policy;**

B.  formal written notice of the investigation or proceeding to which the **covered audit** relates is first received by the **covered insured** during the **policy period;** and

C.  such investigation or proceeding is first **reported** during the **policy period**.

We will pay **legal expenses** contemplated herein (1) directly to **appointed counsel** if **we** elect to appoint such counsel or (2) to the **covered insured** upon presentation of **appointed counsel's** invoices and evidence of payment by the **covered insured** if **we** elect to reimburse costs of **appointed counsel** selected by the **covered insured**.

## III.  PERSONS INSURED

Only **covered insureds** are insured under this Coverage Part.

## IV.  LIMIT OF LIABILITY

The limit of liability specified in the **Coverage Summary** as "Each Covered Investigation" is the total of **our** liability to each **covered insured** for **legal expenses** resulting from any one **covered investigation**. The total limit of liability specified in the **Coverage Summary** as "Each Covered Audit" is the total of **our** liability to each **covered insured** for **audit expenses** resulting from any one **covered audit**. The limit of liability specified in the **Coverage Summary** as "Each Policy Period" is the total limit of **our** liability to all **covered insureds** for **audit expenses** and **legal expenses** resulting from all **covered investigations** which are first **reported** during the **policy period**.

## V.  REPORTING ENDORSEMENT PROVISIONS

If a **Reporting Endorsement** is issued for a **covered insured**, the period for **reporting covered investigations** under this Coverage Part shall be automatically extended for the duration of the **Reporting Endorsement**, but only for the **reporting** of **covered investigations** which are otherwise covered hereunder. Termination or cancellation of the **Reporting Endorsement** shall automatically terminate the period for **reporting covered investigations** under this Coverage Part.

## VI.  DEDUCTIBLE

Coverage for the **covered investigations** described in Items H through K of the definition of **covered investigation** is subject to a deductible of $1,000. For each such **covered investigation**, each **covered insured** shall be required to pay **legal expenses** in an amount equal to such deductible before **our** obligation to pay **legal expenses** rises. In addition, for each **covered audit**, each **covered insured** shall be required to pay **audit expenses** in an amount equal to such deductible before **our** obligation to pay **audit expenses** arises.

# MEDICAL PROFESSIONAL LIABILITY POLICY
# RENEWAL ENDORSEMENT

**POLICYHOLDER:** Wagoner Medical Center, P.C.

**POLICY NUMBER:** MP49652

**RENEWAL DATE:** 3/1/2005

This renewal of the **policy** is offered under certain conditions and in reliance upon the initial application and any subsequent applications each **insured** and the **policyholder** provided to **us**.

Further, as a condition to renewal of the **policy**, the **policyholder** and each **insured** represent and warrant that, except as otherwise disclosed to **us** in writing:

    A.    no **insured** has had any state medical license, hospital privileges or license to prescribe or dispense medicine denied, suspended, restricted or revoked, nor has any such **insured** voluntarily surrendered any such license or privileges for any reason;

    B.    no **insured** has (1) undergone psychiatric treatment, (2) been treated for alcohol or narcotics addiction, (3) had any chronic illness or physical defect, (4) been convicted of any misdemeanor or felony other than minor traffic violations, (5) appeared before any Professional Standards/Quality Assurance Review Committee or (6) appeared before any Board of Medical Examiners or Medical Licensure Commission; and

    C.    no **insured** has changed the scope of his or her medical practice from that previously disclosed to **us** in his or her applications for insurance.

If, at any time while the **policy** is in effect, any of the events described in paragraph A, B, or C occur, the **policyholder** agrees to notify **us** within thirty (30) days of its occurrence, and to provide such additional information as **we** may require.

The **policyholder** acknowledges that information concerning any of the events described above is material to **our** agreement to provide insurance under the **policy** on the basis, and for the premium, stated in the **Coverage Summary**.

# MEDICAL PROFESSIONAL LIABILITY POLICY
# INDIANA STATE LAW ENDORSEMENT

**POLICYHOLDER:** Wagoner Medical Center, P.C.                    **ENDORSEMENT**
                                                        **EFFECTIVE DATE:** 3/1/2005

**POLICY NUMBER:** MP49652

This Endorsement amends the Professional Liability Coverage Part of the **policy**.

Section II. of the Professional Liability Coverage Part (Investigation, Defense and Settlement) is hereby deleted and replaced by the following:

**II.    Investigation, Defense and Settlement**

We have the right to investigate any **medical incident** that **we** deem expedient. **We** have the right and duty to defend any suit against an **insured** seeking **damages** which, if awarded, would be covered by the **policy**, even if any of the allegations of the suit are groundless, false or fraudulent, and **we** have the right, but not the duty, to defend any claim against an **insured** seeking such **damages**. **We** have the right to select defense counsel in any such claim or suit defended by **us**.

**We** have the right to settle any claim or suit against an **insured** seeking **damages** which, if awarded, would be covered by the **policy**; provided that no such settlement will be made without the written consent of the **insured** against whom the claim or suit is brought unless:

    A.   Such **insured** unreasonably withholds consent to the settlement; or

    B.   The settlement is made after a verdict or judgment has been rendered against such **insured**.

**We** may, however, settle without the consent of the **insured** any claim or suit filed in accordance with the provisions of Indiana Code 27-1-13-7 for which a medical review panel as established by Indiana Code 34-18-10-1 has issued a unanimous opinion that the **insured** failed to comply with the appropriate standard of care as charged in the claim or suit.

**We** shall not be obligated to take an appeal from any judgment against an **insured**.

**We** shall not be obligated to pay damages or to defend any suit after the limit of liability applicable to an **insured** has been exhausted.

---

# CERTIFICATE OF INSURANCE

TO:  INDIANA PATIENT'S COMPENSATION FUND
     MEDICAL MALPRACTICE DIVISION
     311 W. WASHINGTON ST. STE.300
     INDIANAPOLIS, IN 46204-2787

| | | | Surcharge | Effective Date |
|---|---|---|---|---|
| Cancellation: | | | $_____ | _____ |
| Return/Additional Surcharge | | | $_____ | _____ |
| Credit | | | _____% | _____ |

| Policy No.: MP49652 AO730669 | Occurrence | | | |
|---|---|---|---|---|
| | Claims Made | X | Retro Date: 3/1/2004 | |
| | Reporting Endors. | | Retro Date: | |

| Health Care Provider: Wagoner Medical Center, LLC | | | |
|---|---|---|---|
| Medical License No.: | Including employees | X | Excluding employees |

| Address (Street, City, State, Zip): | County: Carroll |
|---|---|
| 601 St Road 22 East<br>P.O. Box 38<br>Burlington, IN 46915 | |

| Coverage Dates: | Classification Number: 80999 |
|---|---|
| From: 3/1/2005 To: 3/1/2006 | |

| Limits of Liability | Premium Amount: $  100 |
|---|---|
| $250,000      $750,000<br>per occurrence    annual aggregate | Surcharge Amount: $  100 |
| | Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Percent (100%) of the premium for non-physician or non-hospital providers.  Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2005 at the insurance office of The Medical Assurance Company.

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

Pac-3/State Form 2713R5
Revised 7/18/03

102

# CERTIFICATE OF INSURANCE

TO:  INDIANA PATIENT'S COMPENSATION FUND
     MEDICAL MALPRACTICE DIVISION
     311 W. WASHINGTON ST. STE.300
     INDIANAPOLIS, IN 46204-2787

Cancellation:
Return/Additional Surcharge
Credit

| | Surcharge | Effective Date |
|---|---|---|
| | $ | |
| | $ | |
| | % | |

| | |
|---|---|
| Policy No.: MP49652 QP625307 | Occurrence |
| | Claims Made      X      Retro Date: 3/1/2004 |
| | Reporting Endors.        Retro Date: |
| Health Care Provider: Wagoner Medical Center, P.C.<br><br>Medical License No.: | Including employees      X      Excluding employees |
| Address (Street, City, State, Zip):<br>601 St Road 22 East<br>P.O. Box 38<br>Burlington, IN 46915 | County: Carroll |
| Coverage Dates:<br><br>From: 3/1/2005 To: 3/1/2006 | Classification Number: 80999 |
| Limits of Liability | Premium Amount: $  100 |
| $250,000              $750,000<br>per occurrence        annual aggregate | Surcharge Amount: $  100 |
| | Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Percent (100%) of the premium for non-physician or non-hospital providers.  Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2005 at the insurance office of The Medical Assurance Company.

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

*Pac-3/State Form 2713R5*
*Revised 7/18/03*

103

# CERTIFICATE OF INSURANCE

**Effective 01/01/2006 Name Corrected To:**
**Don J. Wagoner, MD and Marilyn L. Wagoner, MD, P.C**

TO:  INDIANA PATIENT'S COMPENSATION FUND
     MEDICAL MALPRACTICE DIVISION
     311 W. WASHINGTON ST. STE.300
     INDIANAPOLIS, IN 46204-2787

|  | Surcharge | Effective Date |
|---|---|---|
| Cancellation: | $_____ | _____ |
| Return/Additional Surcharge | $_____ | _____ |
| Credit | _____% | _____ |

| Policy No.: MP49652 HQ621367 | Occurrence | | |
|---|---|---|---|
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |

| Health Care Provider: D.J. & M. L. Wagoner, Inc.<br><br>Medical License No.: 01019897 | Including employees      X | Excluding employees |
|---|---|---|

| Address (Street, City, State, Zip):<br>601 St Road 22 East<br>P.O. Box 38<br>Burlington, IN 46915 | County: Carroll |
|---|---|

| Coverage Dates:<br><br>From: 3/1/2005 To: 3/1/2006 | Classification Number: 80999 |
|---|---|

| Limits of Liability<br><br>$250,000             $750,000<br>per occurrence       annual aggregate | Premium Amount: $  100 |
|---|---|
| | Surcharge Amount: $  100 |
| | Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Percent (100%) of the premium for non-physician or non-hospital providers.  Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2005 at the insurance office of The Medical Assurance Company.

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

*Pac-3/State Form 2713R5*
*Revised 7/18/03*

104

# CERTIFICATE OF INSURANCE

TO:  INDIANA PATIENT'S COMPENSATION FUND
.MEDICAL MALPRACTICE DIVISION
311 W. WASHINGTON ST. STE.300
INDIANAPOLIS, IN 46204-2787

|  | Surcharge | Effective Date |
|---|---|---|
| Cancellation: | $_____ | _____ |
| Return/Additional Surcharge | $_____ | _____ |
| Credit | _____% | _____ |

| Policy No.: MP49652 DR623327 | Occurrence | | |
|---|---|---|---|
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |

| Health Care Provider: Don J Wagoner, M.D. | Including employees | X | Excluding employees |
|---|---|---|---|
| Medical License No.: 01019897 | | | |

| Address (Street, City, State, Zip): | County: Carroll |
|---|---|
| 601 St Road 22 East | |
| P.O. Box 38 | |
| Burlington, IN 46915 | |

| Coverage Dates: | Classification Number: 80421 |
|---|---|
| From: 3/1/2005 To: 3/1/2006 | |

| Limits of Liability | Premium Amount: $ 5,638 |
|---|---|
| $250,000          $750,000 | Surcharge Amount: $ 6,348 |
| per occurrence    annual aggregate | Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute,  for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Percent (100%) of the premium for non-physician or non-hospital providers.  Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2005 at the insurance office of The Medical Assurance Company.

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

*Pac-3/State Form 2713R5*
*Revised 7/18/03*

105

# CERTIFICATE OF INSURANCE

TO: INDIANA PATIENT'S COMPENSATION FUND
MEDICAL MALPRACTICE DIVISION
311 W. WASHINGTON ST. STE.300
INDIANAPOLIS, IN 46204-2787

| | Surcharge | Effective Date |
|---|---|---|
| Cancellation: | $ | |
| Return/Additional Surcharge | $ | |
| Credit | % | |

| Policy No.: MP49652 GU623328 | | Occurrence | | |
|---|---|---|---|---|
| | | Claims Made | X | Retro Date: 3/1/2004 |
| | | Reporting Endors. | | Retro Date: |
| Health Care Provider: Marilyn L Wagoner, M.D.<br><br>Medical License No.: 01019503 | | Including employees   X | | Excluding employees |
| Address (Street, City, State, Zip):<br>601 St Road 22 East<br>P.O. Box 38<br>Burlington, IN 46915 | | County: Carroll | | |
| Coverage Dates:<br><br>From: 3/1/2005 To: 3/1/2006 | | Classification Number: 80420 | | |
| Limits of Liability | | Premium Amount: $ 3,475 | | |
| $250,000                 $750,000<br>per occurrence          annual aggregate | | Surcharge Amount: $ 3,527 | | |
| | | Penalty Amount: | | |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Percent (100%) of the premium for non-physician or non-hospital providers. Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change. Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2005 at the insurance office of The Medical Assurance Company.

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

*Pac-3/State Form 2713R5*
*Revised 7/18/03*

# CERTIFICATE OF INSURANCE

TO:  INDIANA PATIENT'S COMPENSATION FUND
     MEDICAL MALPRACTICE DIVISION
     311 W. WASHINGTON ST. STE.300
     INDIANAPOLIS, IN 46204-2787

| | Surcharge | Effective Date |
|---|---|---|
| Cancellation: | $_____ | _____ |
| Return/Additional Surcharge | $_____ | _____ |
| Credit | _____% | _____ |

| Policy No.: MP49652 C15193-PNFL | Occurrence | | |
|---|---|---|---|
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |

| Health Care Provider: Silvio J. Sanchez, M.D.<br><br>Medical License No.: 01057014 | Including employees    X | Excluding employees |
|---|---|---|

| Address (Street, City, State, Zip):<br>601 St Road 22 East<br>P.O. Box 38<br>Burlington, IN 46915 | County: Howard |
|---|---|

| Coverage Dates:<br><br>From: 3/1/2005 To: 3/1/2006 | Classification Number: 80257 |
|---|---|

| Limits of Liability | Premium Amount: $ 3,677 |
|---|---|
| $250,000      $750,000<br>per occurrence    annual aggregate | Surcharge Amount: $ 3,527 |
| | Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute,  for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Percent (100%) of the premium for non-physician or non-hospital providers.  Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2005 at the insurance office of The Medical Assurance Company.

*Lois J. Wyrick*
Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

# MEDICAL PROFESSIONAL LIABILITY POLICY
# CHANGE IN COVERAGE SUMMARY ENDORSEMENT

It is understood and agreed that the policy is amended to add endt. 611 03/01/2005.

**ENDORSEMENT EFFECTIVE DATE: 3/1/2005**                    **PREMIUM ADJUSTMENT: $.00**

**DATE ENDORSEMENT ISSUED: 1/24/2005**

The **Coverage Summary** for **policy MP49652** is hereby amended as follows:

1. Policyholder's Name and Address:

    Wagoner Medical Center, P.C.
    601 St Road 22 East
    P.O. Box 38
    Burlington, IN 46915

2. Policy Number:  MP49652

3. Policy Period:  From  3/1/2005  to  3/1/2006 12:01 a.m. Standard Time at the address of the **policyholder** as stated above.

4. Total Premium: $20,418.00  (Does not include  PCF Surcharge in the amount of $100.00)

5. Schedule of Insureds (Primary Coverage)
    The following are **insureds** under the **policy**, with the following respective limits of liability:

Primary Limits of Liability

| Name | Retroactive Date | Each Medical Incident | Annual Aggregate | Deductible | Premium |
|---|---|---|---|---|---|
| INSURED ORGANIZATIONS | | | | | |
| D.J. & M. L. Wagoner, Inc. | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| Wagoner Medical Center, LLC | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| Wagoner Medical Center, P.C. | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| | | | | | |
| INSURED PHYSICIANS | | | | | |
| Elias Sharba, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $3,651 |
| Marilyn L Wagoner, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $3,475 |
| Don J Wagoner, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $5,638 |
| Marius-Julian Nefliu, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $3,677 |
| Silvio J. Sanchez, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $3,677 |
| | | | | | |
| INSURED PARAMEDICAL EMPLOYEES | | | | | |
| John M. Thomas, P.A. | 3/1/2004 | ** | ** | N/A | |
| Gary M. Hartman, P.A. | 3/1/2004 | ** | ** | N/A | |

6. Professional Legal Defense Coverage

---

108

Limits of Liability:

|  | Each Medical Incident |
|---|---|
| Each Covered Investigation | $25,000 |
| Each Covered Audit | $5,000 |
| Each Policy Period | $125,000 |

By: _____
　　　　　　Authorized Representative

# MEDICAL PROFESSIONAL LIABILITY POLICY
# CLAIMS-MADE PLUS℠ ENDORSEMENT

**POLICYHOLDER: Wagoner Medical Center, P.C.**    **ENDORSEMENT**
**EFFECTIVE DATE: 3/1/2005**

**POLICY NUMBER: MP49652**

I.  Item VI. REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED ORGANIZATIONS, of the General Conditions, form MAI-MP-030, is hereby amended as follows:

**VI.  REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED ORGANIZATIONS**

In the event of termination of the insurance afforded by the **policy**, either by nonrenewal or cancellation, any **insured organization** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of this policy), to have issued a **Reporting Endorsement** providing coverage for **medical incidents** occurring prior to the termination date and otherwise covered by the **policy**, but which are first **reported** after such termination date. Such right must be exercised by such **insured organization** by providing written notice to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, if the insurance provided by the **policy** to any **insured organization** which shares limits with one or more **insured physicians** terminates by reason of the dissolution or other termination of activity by such **insured organization**, such **insured organization** shall continue to be covered for **medical incidents** which occur while such **insured organization** is active, even though any such **medical incident** may not be **reported** until after the **insured organization** ceases activity, as long as such **medical incident** is first **reported** within the **policy period** applicable to the **insured physicians** with whom the **insured organization** shares limits.

The **Reporting Endorsement** issued to an **insured organization** pursuant to this Section VI shall provide coverage only for such **insured organization** and its **other covered employees**. Such **Reporting Endorsement** shall not provide coverage to any **insured physician** or **insured paramedical employee**. **Insured physicians** and **insured paramedical employees** must obtain individual **Reporting Endorsements** as provided in Sections VII and VIII below.

II.  Item VII. REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PHYSICIANS, of the General Conditions, form MAI-MP-030, is hereby amended as follows:

**VII.  REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PHYSICIANS**

If the insurance afforded by the **policy** to an **insured physician** terminates, either by nonrenewal or cancellation, such **insured physician** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of this policy), to have issued a policy and a **Reporting Endorsement**, in the form then used by **us**, providing coverage for **medical incidents** occurring prior to the termination date and for which such **insured physician** is otherwise covered by the **policy**, but which are first **reported** after such termination date. Such right must be exercised by an **insured physician** by providing written notice to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, a **Reporting Endorsement** shall be issued to an **insured physician** automatically and without payment of any additional premium in case the termination of his insurance results from:

A.  the death of such **insured physician**;

B.  the permanent and total retirement by such **insured physician** from the practice of medicine. The **insured physician** must submit an affidavit satisfactory to **us** in which the **insured physician** confirms his intention to permanently and totally retire from the practice of medicine and agrees to pay a premium for the **Reporting Endorsement** if such **insured physician** recommences the practice of medicine within five years after delivering such affidavit;

C.  the permanent and total disability of such **insured physician** resulting in the inability to continue the professional activity or endeavour in which he was theretofore engaged, but only if such permanent and total disability:

1.  shall have continued without significant interruption for a term of not less than six months prior to termination; and

---

    2.  shall have required regular treatment by a legally qualified medical or surgical practitioner other than himself.

D.    the total relocation of the insured's practice outside the State of Indiana. The **insured physician** must submit an affidavit satisfactory to **us** in which the **insured physician** confirms his intention to permanently and totally relocate his practice from the State of Indiana, including new place of employment, and agrees to pay a premium for the **Reporting Endorsement** if such **insured physician** should return to the practice of medicine in the State of Indiana within three years after delivering such affidavit;

III.    Item VIII. REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PARAMEDICAL EMPLOYEES, of the General Conditions, form MAI-MP-030, is hereby amended as follows:

    **VIII.  REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PARAMEDICAL EMPLOYEES**

If the insurance afforded by the **policy** to an **insured paramedical employee** terminates, either by nonrenewal or cancellation, such **insured paramedical employee** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of this policy), to have issued policy and a **Reporting Endorsement**, in the form then used by **us** for individual coverage, providing coverage for **medical incidents** occurring prior to the termination date and for which such **insured paramedical employee** is otherwise covered by the **policy**, but which are first **reported** after such termination date. Such right must be exercised by an **insured paramedical employee** by providing written notice to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, if the insurance provided by the **policy** to any **insured paramedical employee** who shares limits with one or more **insured physicians** terminates, such **insured paramedical employee** shall continue to be covered for **medical incidents** which occur while such **insured paramedical employee** is employed by the **insured physicians** with whom he or she shares limits of liability, even though any such **medical incident** may not be **reported** until after the **insured paramedical employee** is no longer so employed, as long as such **medical incident** is first **reported** within the **policy period** applicable to the **insured physicians** with whom the **insured paramedical employee** shares limits.

All Other Terms and Conditions Remain Unchanged.

**ProAssurance Companies**
965 Emerson Parkway, Suite H
Greenwood, IN 46143

*Send Non-Payment Mail to:*
ProAssurance Service Center
P.O. Box 150
Okemos, MI 48805-0150

800.282.6242
ProAssurance.com



PROASSURANCE.
Treated Fairly

April 6, 2015

This is to certify that the attached documents for policy MP49652 are true and exact copies of the Healthcare Professional Liability policy documents issued to Wagoner Medical Center, LLC, Wagoner Medical Center, P.C., Don J. Wagoner, M.D. and Marilyn L. Wagoner, M.D. P.C., Don J. Wagoner, M.D., Marilyn L. Wagoner, M.D. Silvio J. Sanchez, M.D., Gary M. Hartman, PA, and John M. Thomas, PA for the policy period of March 1, 2006 to March 1, 2007.

*Lois Wyrick*

Lois Wyrick
Regional Vice President, Underwriting
Authorized Representative

Personally appearing before me the above named Lois Wyrick personally known to me, who, being duly sworn, deposes and says that the above statement is true and correct to the best of her knowledge and belief.

Subscribed and sworn to before me this ___6th___ day of ___April___, 20_15_.

*Holly J. Reins*
_____
Notary Public

My Commission Expires ___6/2/2017___

112

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
## COVER PAGE

| THIS POLICY CONTAINS COVERAGES WRITTEN ON A "MODIFIED CLAIMS-MADE" BASIS. |
| --- |

In consideration of the payment of the premium, and in reliance upon the statements and representations in the applications for insurance and the **Coverage Summary, we** agree to provide the insurance contained in the **policy.**

**THE COMPANY:** The Medical Assurance Company, Inc.

**AGENT:**
Medical Assurance of Indiana Agency
5975 Castle Creek Parkway
Suite 300
Indianapolis, IN 462504346

**POLICYHOLDER:** Wagoner Medical Center, P.C.
605 E. 7th Street
Burlington, IN 46915

**POLICY NUMBER: MP49652**

The **policy** consists of this **Cover Page** and the following forms (together with any endorsements issued from time to time).

| Title | Form Number |
| --- | --- |
| Coverage Summary | PRA-HCP-020-08 05 |
| Healthcare Professional Liability Policy | PRA-HCP-030-09 05 |
| Professional Legal Defense Coverage Part - Extended Form | PRA-HCP-071-09 05 |
| Shared Limit Endorsement | PRA-HCP-325-09 05 |
| Renewal Endorsement | PRA-HCP-500-08 05 |
| Indiana State Law Endorsement | PRA-HCP-606-12 05.IN |
| Claims-Made Plus Endorsement | PRA-HCP-611 IN 08 05 |

If any provision of the **policy** changes, **we** will issue an endorsement stating the effective date of any changes. Terms appearing in the **policy** in **bold face print** are defined in the Definitions section.

IN WITNESS WHEREOF, **we** have caused the **Cover Page** to be signed by **our** President and Secretary. The **policy** is effective only if countersigned on the **Coverage Summary** by **our** duly authorized representative.

Kathryn A. Neville, JD, CPCU
Secretary

HOWARD H. FRIEDMAN, ACAS, MAAA
President

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
# COVERAGE SUMMARY

1. Policyholder's Name and Address:

   Wagoner Medical Center, P.C.
   605 E. 7th Street
   Burlington, IN 46915

2. Policy Number: MP49652

3. Policy Period: From 3/1/2006 to 3/1/2007 12:01 a.m. at the address of the **policyholder** as stated above.

4. Total Premium: $36,276 (Does not include PCF Surcharge in the amount of $38,155.00)

5. Schedule of Insureds (Primary Coverage)
   The following are **insureds** under the **policy**, with the following respective limits of liability:

Primary Limits of Liability

| Name | Retroactive Date | Each Professional Incident | Annual Aggregate | Deductible | Premium |
|---|---|---|---|---|---|
| INSURED ORGANIZATIONS | | | | | |
| Wagoner Medical Center, P.C. | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| Don J. Wagoner, MD and Marilyn L. Wagoner, MD, PC | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| Wagoner Medical Center, LLC | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| INSURED PROFESSIONALS | | | | | |
| Marilyn L Wagoner, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $6,227 |
| Don J Wagoner, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $7,899 |
| Elias Sharba, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $5,945 |
| Silvio J. Sanchez, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $6,549 |
| Marius-Julian Nefliu, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $6,549 |
| Saira M. Dar, MD | 7/1/2005 | $250,000 | $750,000 | N/A | $2,807 |
| INSURED PARAMEDICAL EMPLOYEES | | | | | |
| John M. Thomas, P.A. | 3/1/2004 | ** | ** | N/A | |
| Gary M. Hartman, P.A. | 3/1/2004 | ** | ** | N/A | |

** This **insured** does not have individual or separate coverage. Refer to the Shared Limit Endorsement.

6. Professional Legal Defense Coverage Premium:     $3,000.00 included with Total Premium above.

Limits of Liability  NOTE:  These limits apply only to legal expenses incurred by covered insureds under the Professional Legal Defense Coverage Part, and not to defense costs incurred which are otherwise covered under the Professional Liability Coverage Part or other parts of the policy.

|  | Each Medical Incident |
|---|---|
| Each Covered Investigation | $25,000 |
| Each Covered Audit | $5,000 |
| Each Policy Period | $125,000 |

By: _____
Authorized Representative

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
# CLAIMS-MADE FORM

# DEFINITIONS

As used in this **policy**, the following terms shall have the following meanings:

**Assertion of liability** means an oral or written demand or notice from a patient or a patient's representative claiming that an **insured** is liable for a **professional incident** or requesting a patient's medical records.

**Continuous coverage effective date** means the effective date of the earliest **policy** issued by **us** to the **insured**, which **policy** is followed by a continuous and unbroken period in which **we** provided professional liability insurance coverage to the **insured**.

**Cover Page** means the Health Care Professional Liability Policy Cover Page, or any renewal or modification thereof.

**Coverage Summary** means the Health Care Professional Liability Policy Coverage Summary, or any renewal or modification thereof.

**Damages** means all amounts of money which are payable under this **policy** because of injury, including death.

**Insured** means any **insured organization**, any **insured professional**, any **insured paramedical employee**, and any **other covered employee**.

**Insured organization** means any partnership, professional corporation, professional association, limited liability company, or other entity designated as an **Insured Organization** in the **Coverage Summary**.

**Insured paramedical employee** means any person designated as such in the **Coverage Summary**.

**Insured professional** means any dentist or physician designated as an **insured professional** in the **Coverage Summary**.

**Other covered employee** means any person whose duties include the prevention, diagnosis and treatment of illness or injury, other than (1) a person practicing as a physician, surgeon, dentist, psychologist, nurse midwife, nurse anesthetist, nurse practitioner, physician's assistant, surgeon's assistant, perfusionist, optometrist, cytotechnologist, emergency medical technician, or anesthesiologist assistant, or (2) any person licensed, certified, or otherwise authorized to deliver advanced level health care in the absence of direct supervision by a licensed physician.

**Other insurance** means any valid and collectible insurance, self insurance, self-insured retention, self-insured trust, or risk transfer instrument of any kind, other than this **policy**, that provides defense or indemnity to any **insured** for any claim, loss, liability, or **damages** covered by this **policy**.

**Peer review services** means service by an **insured professional** while acting within the scope of his or her duties as a member of:

    A.    a utilization and quality control peer review organization acting under contract with a federal or state health care agency to review the professional activities of health care providers;

    B.    a duly constituted hospital, surgery center or long-term health care facility utilization review committee providing review of services furnished by the institution and members of its medical or dental staff;

    C.    a duly constituted hospital, surgery center, or dental center staff committee, consisting solely of members of the medical or dental staff of the hospital, surgery center, or dental center for the evaluation and improvement of quality of care;

    D.    a duly constituted hospital peer review committee, consisting solely of members of the medical or dental staff of the hospital, having responsibility for: (1) reviewing qualifications and credentials of persons seeking appointment or reappointment to a hospital medical staff, (2) evaluating the clinical or administrative competence of persons so appointed, (3) matters concerning limiting the scope of hospital privileges of persons on a hospital medical staff, or (4) matters concerning the dismissal or discharge of persons from a hospital medical staff; or

    E.    any peer review program conducted by **us**; and

    F.    with respect to dentists only, a duly constituted dental society peer review committee having responsibility for evaluating the performance of services of other dentists or dental auxiliary personnel at the request of government agencies, patients, dentists, providers of dental benefits, or third party insurers.

Health Care Professional Liability Policy
Claims-Made Form
©2005 ProAssurance Corporation

**Permanent and total retirement** means that an **insured professional** no longer performs any medical, dental, or professional activities or duties for which a medical or dental license is required and for which the **insured professional** receives monetary or other financial compensation.

**Policy** means the **Cover Page**, the forms listed thereon, and any endorsements issued from time to time. The **policy** terms in effect at the time a **professional incident** is first **reported** shall apply to that **professional incident.**

**Policyholder** means the person or entity designated as such in the **Coverage Summary.**

**Policy period** means the period specified as such in the **Coverage Summary.**

**Professional incident** means:

A.   a single act or omission, or a series of related acts or omissions during a continuing course of **professional services**, arising out of the rendering of, or failure to render, **professional services** to any one person by an **insured** or any person for whose acts or omissions an **insured** is legally responsible, which results, or is likely to result, in **damages;** or

B.   a single act or omission or a series of related acts or omissions by an **insured professional** during the performance of **peer review services** which results, or is likely to result, in **damages.**

For purposes of this definition, treatment of mother and fetus (or fetuses) from conception through postpartum care constitutes a single **professional incident**. In no event shall separate, discrete events or injuries that occur during a single medical procedure or course of treatment constitute more than one **professional incident.**

**Professional services** means the provision of medical or dental services to a patient of an **insured**, including treatment, making diagnoses and rendering opinions or advice.

**Report, reported,** and **reporting** mean, when used with respect to a **professional incident,** the giving by an **insured** or his or her representative of notice of the **professional incident** either in writing or by telephone to **our** Claims Department specifying (1) the date, time, and place of the **professional incident,** (2) a description of the **professional incident,** (3) the name, address, and age of the patient or claimant, (4) the names of witnesses, including other treating physicians, and (5) the circumstances resulting in the **professional incident.** A **professional incident** shall be deemed **reported** on the date the **report** is actually received by **our** Claims Department.

**Reporting Endorsement** (or "Tail Coverage") means an endorsement issued with respect to an **insured** under Section VI, VII or VIII of the Professional Liability Coverage Part to provide coverage for **professional incidents** first **reported** on or after the date of termination of the insurance provided by this **policy** to the **insured.**

**Retroactive date** means the **retroactive date** applicable to each **insured** as specified in the **Coverage Summary.**

**We, our** and **us** refer to the company that issued this **policy** and is designated as "THE COMPANY" on the **Cover Page.**

# PROFESSIONAL LIABILITY COVERAGE PART

I.   **INSURING AGREEMENT**

Subject to the applicable limit of liability, **we** agree to pay on behalf of each **insured** all sums (in excess of any applicable deductible) that the **insured** shall become legally obligated to pay as **damages** because of any **professional incident** that (1) occurs on or after the **retroactive date** applicable to the **insured** and (2) is first **reported** during the **policy period**; provided, however, that **insured paramedical employees** and **other covered employees** are covered only for **professional incidents** that occur while such persons are employed by an **insured organization** or **insured professional** and acting within the scope of their employment and while engaged in the performance of **professional services** that they hold any required license to perform. This insurance applies to **professional incidents** arising out of **professional services** or **peer review services** rendered anywhere in the world, provided that any resulting claim or suit is prosecuted within the United States of America, its possessions or territories. This insurance does not apply to any claim or suit asserted, filed, pursued, or prosecuted in or pursuant to the authority of any court, tribunal, or other governmental or legal authority outside the jurisdiction of the United States of America, its possessions and territories.

II.   **INVESTIGATION, DEFENSE AND SETTLEMENT**

**We** have the right to investigate any **professional incident** that **we** deem expedient. **We** have the right and duty to defend any suit against an **insured** seeking **damages** that, if awarded, would be covered by this **policy,** even if any of the allegations of the suit are groundless, false or fraudulent, and **we** have the right, but not the duty, to defend

any claim against an **insured** seeking such **damages**. **We** have the right to select defense counsel in any claim or suit defended by **us**. **We** will not pay fees and expenses of any legal counsel not retained by **us**. If a claim or suit is asserted against more than one **insured**, **we** may retain the same legal counsel to defend all **insureds**, consistent with counsel's ethical duties to avoid conflicts of interest.

**We** have the right to settle any claim or suit against an **insured** seeking **damages** that, if awarded, would be covered by this **policy**; provided that no settlement will be made without the written consent of the **policyholder** unless (a) the **policyholder** cannot be located and contacted after reasonable efforts are made by **us**; or (b) the settlement is made after a verdict or judgment has been rendered against an **insured**.

**We** shall not be obligated to take an appeal from any judgment against an **insured**.

**We** shall not be obligated to pay **damages** or to defend any suit after the applicable limit of liability has been exhausted.

III. **EXCLUSIONS**

**We** will not pay **damages** because of any of the following, and **we** have no obligation to provide a defense for any claim or suit alleging any of the following:

A. In the case of any **insured professional**, liability arising out of the rendering of, or failure to render, **professional services** by any person other than the **insured professional** for whose acts or omissions the **insured professional** is liable solely by reason of his or her status as a member, partner, officer, director or shareholder of any partnership, professional corporation, professional association, limited liability company, or other legal entity (other than an **insured organization**);

B. Liability of an **insured** as an owner, superintendent, administrator, director, trustee, officer, or medical director of any hospital, sanitarium, clinic with bed and board facilities, nursing home, ambulatory surgery center, laboratory, health maintenance organization, preferred provider organization, exclusive provider organization, other health care entity, or other business enterprise, unless the **insured** directly participates in the rendering of or failure to render **professional services** giving rise to the alleged liability;

C. Liability assumed by an **insured** under any contract or agreement, whether oral, written or implied, except that this exclusion does not apply to liability that would be imposed on the **insured** by law in the absence of the contract or agreement;

D. Liability arising out of any (1) willful, wanton, fraudulent (whether intentional or unintentional), dishonest, criminal, reckless, malicious or oppressive act or omission; or (2) conduct which is outrageous, demonstrates conscious indifference to consequences, or evidences intentional, reckless or careless disregard for the rights of others;

E. Liability arising in whole or in part out of sexual activity, or acts in furtherance of sexual activity whether under the guise of **professional services** or not;

F. Injury to any employee of an **insured** unless arising from the treatment of the employee as a patient of the **insured**;

G. Any obligation for which an **insured** or any carrier as insurer may be held liable under any workers' compensation, unemployment compensation, disability benefits, or any similar law;

H. Liability arising out of any act or omission of an **insured** (1) for which the **insured**, or any person for whom an **insured** is vicariously liable, does not hold any required license to perform, (2) which occurs during any time the **insured's** license to practice his or her profession has been suspended, revoked or voluntarily surrendered, or (3) which constitutes a violation of any restriction imposed upon the **insured's** license;

I. Liability arising out of any antitrust violation (except for antitrust violations arising from **peer review services** for which coverage is otherwise afforded), unfair competition, discrimination, violation or denial of civil rights, or any other act or omission which violates any statute, ordinance or regulation imposing any fine, penalty or other sanction, including but not limited to attorney fees;

J. Any **professional incident** that has been **reported** to another insurance carrier prior to the **continuous coverage effective date**; any **professional incident** that occurred prior to the **continuous coverage effective date**, if on that date, the **insured** knew or believed, or had reason to know or believe, that the **professional incident** might reasonably be expected to result in a claim for **damages**; or any **professional incident** that occurred during a period in which the **insured** was not covered by a policy of professional liability insurance;

K. Liability arising from any **professional incident** that is not the subject of an **assertion of liability**, unless the **professional incident** is **reported** within 30 days of the date on which the **professional incident** occurred.

L.  Liability for any alleged errors or omissions by the **insured** in billing statements for **professional services** rendered to a patient;

M.  Liability arising from or relating to any breach of electronic data security, including but not limited to any alleged violation of the Security Standards for the Protection of Electronic Protected Health Information promulgated under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA");

N.  Liability arising out of any **professional incident** that occurs while an **insured** is impaired by alcohol or drugs;

O.  Liability for punitive or exemplary damages (including any multiple of compensatory damages, such as double or treble damages) awarded against an **insured**; or

P.  Liability of any **insured** for any act or omission for which the United States government is responsible under the provisions of the Public Health Service Act, 42 U.S.C. 233, or the Federal Tort Claims Act, 28 U.S.C. 1346(b), 2671-2680, or both.

## IV.  LIMITS OF LIABILITY AND DEDUCTIBLES

The limits of liability specified in the **Coverage Summary** for each **insured professional** shall apply to all claims or suits made or brought against that **insured professional**, except for claims or suits against an **insured professional** based upon the rendering of or failure to render **professional services** by someone other than the **insured professional** and for whose acts or omissions the **insured professional** is liable solely by reason of his or her status as a member, partner, officer, director or shareholder of an **insured organization**, in which case the limits of liability specified in the **Coverage Summary** for the **insured organization** shall apply as described below.

The limits of liability specified in the **Coverage Summary** as applicable to each **insured paramedical employee** shall apply to all claims or suits made or brought against the **insured paramedical employee**.

The limits of liability specified in the **Coverage Summary** as applicable to an **insured organization** shall apply to all claims or suits made or brought against (1) the **insured organization**; (2) any **other covered employee**; and (3) any **insured professional** if the alleged liability arises out of the rendering of, or failure to render, **professional services** by someone other than the **insured professional** and for whose acts or omissions the **insured professional** is liable solely by reason of his or her status as a member, partner, officer, director or shareholder of the **insured organization**.

The limit of liability specified in the **Coverage Summary** for each **insured** as "each professional incident" is the total of **our** liability to the **insured** resulting from any one **professional incident**. The limit of liability specified in the **Coverage Summary** for each **insured** as "annual aggregate" is the total limit of **our** liability to that **insured** resulting from all **professional incidents** that are first **reported** during the **policy period**.

The limit of liability shall apply regardless of:

A.  the number of claimants seeking **damages** covered by this **policy**;

B.  the number of claims or suits brought on account of a **professional incident**;

C.  the number of **insureds** under this **policy**; or

D.  the inclusion of an additional insured.

If Additional Limits of Liability are shown in the **Coverage Summary** for any **insured**, the additional coverage so depicted shall apply only to (1) **professional incidents** that occur after the Additional Coverage Retroactive Date shown for that **insured** in the **Coverage Summary** and (2) after exhaustion of the Primary Limits of Liability applicable to that **insured**.

**We** shall have the right to allocate **damages** or supplementary payments among claimants, **insureds**, and policies as **we** deem appropriate.

If a **Reporting Endorsement** is issued, **our** liability for all **professional incidents** first **reported** after the effective date of the **Reporting Endorsement** shall be as stated therein.

If a "Deductible" is shown for any **insured** in the **Coverage Summary** as applicable to this Coverage Part, the **insured** shall be liable for each **professional incident reported** in an amount equal to the Deductible shown in the **Coverage Summary**, and **our** limit of liability will be reduced by that amount. The **insured** shall retain liability to third parties for the amount of any deductible, and **we** will only pay that portion of the **damages** that exceeds the amount of the deductible. In the event **we** pay on behalf of an **insured** all or part of the deductible, the **policyholder** shall reimburse **us** for the amount of the payment within thirty (30) days after written demand. The **policyholder** agrees to pay all costs, including attorneys' fees and court costs, incurred by **us** in collecting any reimbursement.

## V.  SUPPLEMENTARY PAYMENTS

We will pay, in addition to the applicable limit of liability:

A. all expenses incurred by **us**, all costs taxed against an **insured** in any suit defended by **us**, and interest accruing on a judgment or award against an **insured** before we have paid, tendered, or deposited in court that part of the judgment which does not exceed the limit of **our** liability thereon; provided that (1) **we** reserve the right to seek reimbursement from the **insured** for the costs and expenses **we** incur in defending any claim that is not covered by the **policy**; and (2) **we** will pay interest only on that portion of the judgment or award that does not exceed the applicable limit of liability; and

B. commercially reasonable premiums on (1) appeal bonds in any suit defended by **us** and (2) bonds to release attachments in any such suit; provided in either case that (a) there is no dispute with respect to the coverage available under the **policy** for the claims asserted in the suit; (b) the amount of the bond shall not exceed the applicable limit of liability of this **policy**; and (c) **we** shall have no obligation to apply for or furnish any bond.

## VI. REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PROFESSIONALS

If the insurance afforded by this **policy** to an **insured professional** terminates, either by nonrenewal or cancellation, the **insured professional** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the termination), to have issued a **Reporting Endorsement**, in the form then used by **us**, providing coverage for **professional incidents** occurring prior to the termination date and for which the **insured professional** is otherwise covered by this **policy**, but which are first **reported** on or after the termination date. This right must be exercised by an **insured professional** by making payment to **us** not later than thirty (30) days after the termination date.

Notwithstanding the foregoing, a **Reporting Endorsement** shall be issued in accordance with **our** rules on the effective date of the termination to an **insured professional** automatically and without payment of any additional premium in case the termination of insurance results from any of the following events during the **policy period**:

A. the death of the **insured professional**;

B. the **insured professional's** attainment of age 65, but only if the **insured professional** shall have been insured continuously by **us** for the preceding ten (10) years;

C. the **permanent and total retirement** of the **insured professional**, but only if the **insured professional** shall have been insured continuously by **us** for the preceding five (5) years. The **insured professional** must submit an affidavit satisfactory to **us** in which the **insured professional** confirms an intention to permanently and totally retire from the practice of medicine or dentistry and agrees to pay a premium for the **Reporting Endorsement** if the **insured professional** recommences the practice of medicine or dentistry within five (5) years after delivering the affidavit;

D. the permanent and total disability of the **insured professional** resulting in the inability to continue the professional activity or endeavor in which the **insured professional** was theretofore engaged, but only if the permanent and total disability:

   1. shall have continued without significant interruption for a term of not less than six months prior to termination; and

   2. shall have required regular treatment by a legally qualified medical or surgical practitioner other than the **insured professional**.

The foregoing provisions governing the issuance of a **Reporting Endorsement** at no premium charge in the event of items A through D above shall not alter, amend, modify, supersede, or in any way change the conditions and requirements for cancellation or non-renewal of the **policy** as provided by applicable law and otherwise described herein. Following the cancellation or non-renewal of the **policy** in conformity with applicable law, if none of the conditions described in items A through D above are then satisfied, no **insured professional** shall have any right or expectancy to receive either (1) a **Reporting Endorsement** at no additional premium charge or (2) a refund of any premium previously paid by the **insured professional**.

## VII. REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PARAMEDICAL EMPLOYEES

If the insurance afforded by this **policy** to an **insured paramedical employee** terminates, either by nonrenewal or cancellation, the **insured paramedical employee** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the termination), to have issued a **Reporting Endorsement**, in the form then used by **us**, providing coverage for **professional incidents** occurring prior to the termination date and for which the **insured paramedical employee** is otherwise covered by this **policy**, but which are first **reported** on or after the termination date. This right must be exercised by an **insured paramedical employee** by making payment to **us** not later than thirty (30) days after the termination date.

Notwithstanding the foregoing, if the insurance provided by this **policy** to any **insured paramedical employee** who shares coverage and limits with one or more **insured professionals** or **insured organizations** terminates, the **insured paramedical employee** shall continue to be covered for **professional incidents** that occured while the **insured paramedical employee** was employed by the **insured professional** or **insured organization** with whom he or she shares coverage and limits of liability, even though any such **professional incident** may not be **reported** until after the **insured paramedical employee** is no longer so employed, as long as the **professional incident** is first **reported** within the **policy period** applicable to the **insured professional** or **insured organization** with whom the insured paramedical employee shares coverage and limits.

**VIII.   REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED ORGANIZATIONS**

If the insurance afforded by this **policy** to an **insured organization** terminates, either by nonrenewal or cancellation, the **insured organization** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the termination), to have issued a **Reporting Endorsement**, in the form then used by **us**, providing coverage for **professional incidents** occurring prior to the termination date and otherwise covered by this **policy**, but which are first **reported** on or after the termination date. This right must be exercised by an **insured organization** by making payment to **us** not later than thirty (30) days after the termination date.

Notwithstanding the foregoing, if the insurance provided by this **policy** to any **insured organization** that shares coverage and limits with one or more **insured professionals** terminates by reason of the dissolution or other termination of activity by the **insured organization**, the **insured organization** shall continue to be covered for **professional incidents** that occurred while the **insured organization** was active, even though any such **professional incident** may not be **reported** until after the **insured organization** ceases activity, as long as the **professional incident** is first **reported** within the **policy period** applicable to the **insured professionals** with whom the **insured organization** shares coverage and limits.

The **Reporting Endorsement** issued to an **insured organization** pursuant to this Section VIII shall provide coverage only for the **insured organization** and its **other covered employees**. The **Reporting Endorsement** shall not provide coverage to any **insured professional** or **insured paramedical employee**. **Insured professionals** and **insured paramedical employees** must obtain individual **Reporting Endorsements** as provided in Sections VI and VII above.

# GENERAL CONDITIONS

**I.     PREMIUM**

All premiums shall be computed in accordance with **our** rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

**II.    RIGHTS AND DUTIES OF POLICYHOLDER**

Unless named as an **insured** in the **Coverage Summary**, the **policyholder** is not an **insured** and shall have no coverage under this **policy**. However, the **policyholder** shall pay all premiums, receive all return premiums, provide any consents, including consent to settle, as may be required, and receive all notices and invoices under this **policy**.   All provisions in the General Conditions that are applicable to the **insureds** shall also apply to the **policyholder**.

**III.   INSPECTION**

**We** shall be permitted but not obligated to inspect any **insured's** property and operations at any time. Neither **our** right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of any **insured** or others, to determine or warrant that the **insured's** property or operations are safe, healthful, or in compliance with any law, rule or regulation.

**IV.    INSUREDS' DUTIES**

A.    If an **insured** wishes to **report** a **professional incident** that is not the subject of an **assertion of liability**, the **insured** must **report** the **professional incident** to us within 30 days of the date on which the  **professional incident** occurs.  **We** will not provide coverage for any **professional incident reported** more than 30 days after the **professional incident** occurs unless the **insured** receives an **assertion of liability** with respect to the **professional incident** and provides a description of an oral **assertion of liability** or a copy of a written **assertion of liability** to **us** within the **policy period** or any applicable extended reporting period, in which

case the **professional incident** will be deemed **reported** as of the date on which **our** Claims Department receives the oral description or written copy of the **assertion of liability.**

B.  If any **insured** receives an **assertion of liability,** the **insured** shall immediately (1) **report** the **professional incident** that is the subject of the **assertion of liability** and (2) forward to **us** a copy of any written **assertion of liability,** including any demand, notice, summons or other process received by the **insured** or any representative of the **insured.**

C.  Each **insured** shall cooperate with **us** and with legal counsel retained by **us** to defend any insured claim and shall, upon **our** request, assist in the conduct of suits, in the settlement of suits and claims, in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **insured** because of injury with respect to which insurance is afforded under this **policy,** and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. No **insured** shall make any payment, assume any obligation, accept responsibility or provide information concerning the incident except to **us** or legal counsel retained by **us** for the **insured.**

D.  No **insured** shall alter, make any improper amendment to, destroy, or dispose of patient records or misrepresent or conceal facts pertinent to any incident, claim or suit.

E.  Each **insured** shall notify **us** in writing, within thirty (30) days after the occurrence of any one or more of the following:

1. The **insured** undergoes treatment, or is advised by a physician, peer review committee, hospital credentialing committee or licensing agency to undergo treatment for alcohol, drug or other substance abuse, or for psychiatric illness;

2. The **insured** suffers an illness or physical defect which impairs, or is likely to impair, the **insured's** ability to practice for a period of thirty (30) days or more;

3. The **insured** is convicted of, or pleads guilty or no contest to, any felony or misdemeanor other than minor traffic offenses;

4. The **insured's** license to practice medicine or dentistry, or to dispense medicine, or otherwise to deliver health care services of any type, is revoked, suspended, surrendered or limited in any respect, or the **insured** is called to appear before any licensing agency, peer review committee, professional standards review committee or credentialling committee in a proceeding seeking to terminate, revoke or limit the **insured's** employment or privilege to practice; or

5. The **insured's** privilege to practice is terminated, revoked or limited by the **policyholder,** any hospital or other employer, whether by reason of termination of employment or otherwise.

If any **insured** fails to comply with any duties or obligations described in this Section IV, or otherwise breaches any term or condition of the **policy, our** obligations to the **insured** under the **policy** shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## V.  CLAIMS AGAINST US

No claim shall lie against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this **policy,** nor until the amount of any **insured's** obligation to pay **damages** shall have been finally determined either by judgment against an **insured** after actual trial or by written agreement of the **insured,** the claimant, and **us.** Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this **policy** to the extent of the insurance afforded by this **policy.** No person or organization shall have any right under this **policy** to join **us** as a party to any action against an **insured** to determine the **insured's** liability, nor shall **we** be impleaded by an **insured** or any legal representative.

**Our** liability in any cause of action based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith shall not exceed the value of the **insured's** assets that are legally subject to attachment and levy by a judgment creditor after payment of all sums available through this **policy.** For purposes of this limitation, the "value of the **insured's** assets" shall be determined as of the date of the judgment rendered against the **insured** and shall not include the subject cause of action against **us.**

Bankruptcy or insolvency of any **insured** or any **insured's** estate shall not relieve **us** of any of **our** obligations hereunder.

Any claim against **us,** including without limitation any cause of action that relates to or arises in connection with this **policy,** or that is based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith, shall be brought in arbitration pursuant to Section XIII below.

Health Care Professional Liability Policy
Claims-Made Form
©2005 ProAssurance Corporation

## VI.  OTHER INSURANCE

A.  Except as provided in B or C below, or in any endorsement forming a part of this **policy**, this insurance is primary.

B.  With respect to loss arising from **peer review services** (other than **peer review services** performed on **our** behalf), the insurance provided by this **policy** is excess over any **other insurance**.

C.  Insurance provided to any **insured** by "Additional Limits of Liability," as specified in the **Coverage Summary**, shall apply only after exhaustion of the "Primary Limits of Liability" specified in the **Coverage Summary** for the **insured**. Insurance provided by Additional Limits of Liability shall be in excess of, and shall not contribute with, any **other insurance**. If Additional Limits of Liability are provided, **we** shall, after the Primary Limits of Liability have been exhausted, have no duty to defend any suit that any other insurer has a duty to defend.

D.  When both this insurance and **other insurance** apply to loss on the same basis, whether primary, excess or contingent, **we** shall not be liable under this **policy** for a greater proportion of the loss than that stated in the applicable contribution provision below:

1.  If all **other insurance** provides for contribution by equal shares, **we** shall not be liable for a greater proportion of the loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of loss is paid, and with respect to any amount of loss not so paid, the remaining insurers then continue to contribute in equal shares of the remaining amount of the loss until each insurer has paid its limit in full or the full amount of the loss is paid.

2.  If any **other insurance** does not provide for contribution by equal shares, **we** shall not be liable for a greater proportion of the loss than the applicable limit of liability under this **policy** for the loss bears to the total applicable limit of liability of all valid and collectible insurance against the loss.

## VII.  SUBROGATION

In the event of any payment under this **policy**, **we** shall be subrogated to any **insured**'s rights of recovery against any person or organization, and the **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure **our** subrogation rights. No **insured** shall do anything to prejudice **our** rights.

## VIII.  ASSIGNMENT

No **insured** may assign any interest in this **policy**. If, however, any **insured** shall die, the insurance provided by this **policy** shall apply to the **insured**'s legal representative, as an **insured**, but only while acting within the scope of the representative's duties.  No **insured** shall assign any cause of action against **us** that relates to or arises in connection with this **policy**, or that is based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith.

## IX.  CHANGES

The terms of this **policy** can only be changed by endorsement issued by **us** to form a part of this **policy**.

## X.  CANCELLATION

This **policy**, or coverage of any **insured** thereunder, may be canceled by the **policyholder** by mailing to **us** written notice stating when thereafter the cancellation shall be effective. This **policy**, or coverage of any **insured** thereunder, may be canceled by **us** by mailing to the **policyholder**, at the address shown in the **Coverage Summary**, written notice stating when the cancellation shall be effective, in accordance with applicable state law. The effective date and hour of cancellation stated in the notice shall become the end of the **policy period** for each **insured** to which the cancellation applies. Delivery of written notice either by the **policyholder** or by **us** shall be equivalent to mailing. If the **policyholder** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If **we** cancel, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

## XI.  RENEWAL OF POLICY

Neither the **policyholder** nor **we** have any obligation to renew this **policy**. Any renewal will be on the policy forms and endorsements then in effect. If **we** elect not to renew this **policy**, or coverage of any **insured** thereunder, **we** will provide notice of nonrenewal in accordance with applicable state law.

## XII.  FRAUD AND MISREPRESENTATIONS

By acceptance of this **policy**, the **policyholder** and all **insureds** agree that the statements in the **Coverage Summary**, in their respective applications or renewal applications for insurance, and in any other material submitted to **us** in order to secure insurance coverage, are their agreements and representations, that this **policy** is issued in

PRA-HCP-030 09 05

Health Care Professional Liability Policy
Claims-Made Form
©2005 ProAssurance Corporation

Page 8 of 9

123

reliance upon the truth of such representations, and that this **policy** embodies all agreements existing between themselves and **us** or any of **our** agents relating to this insurance. In the event of any fraud, material misrepresentation or omission by any **insured** in any application, renewal application, or other material submitted to **us** to obtain insurance, this **policy** is void as to that **insured**, no coverage is afforded to that **insured**, and that **insured** shall have no right to purchase a **Reporting Endorsement**.

## XIII.  ARBITRATION

Both the **insureds** and **we** acknowledge that this agreement evidences a transaction involving interstate commerce. Any dispute, claim or controversy arising out of, relating to or in connection with this **policy**, its subject matter or its negotiation, as to the existence, validity, interpretation, performance, non-performance, enforcement, operation, breach of contract, breach of warranty, continuance or termination thereof or any claim alleging fraud, deceit, or suppression of any material fact or breach of fiduciary duty shall be submitted to binding arbitration in accordance with Title 9 U.S.C. § 1 et seq. (the Federal Arbitration Act) and the Commercial Arbitration Rules of the American Arbitration Association. The arbitration proceedings may be initiated by either party by notice in writing to the other and to the American Arbitration Association. Each party to arbitration shall bear its own arbitration costs and expenses. However, in the event any party is required to file a petition or commence any other proceeding to compel arbitration, the arbitrator may award that party reasonable attorney's fees and costs incurred in having to bring such action. The arbitrator shall have the discretion to order a pre-hearing exchange of information by the parties, including, without limitation, production of requested documents, exchanging of summaries of testimony of proposed witnesses, and examination by deposition of parties. Notwithstanding contrary state law or regulation, the arbitrator shall have the authority to award any remedy or relief allowed under the provisions of the Federal Arbitration Act, including, without limitation, specific performance of any obligation created under this **policy**, the awarding of any damages available under applicable law, the issuance of an injunction, or the imposition of sanctions for abuse or frustration of the arbitration process. Any arbitration award shall be in writing and shall specify the factual and legal bases of the award. Judgment on the award rendered by the arbitrator shall be final and may be entered in any court having jurisdiction thereof. The provisions hereof shall be a complete defense to any suit, action, or proceeding in any federal, state or local court or before any administrative tribunal with respect to any dispute, claim or controversy arising under this **policy**.

If **we** maintain an office in the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located, the arbitration shall proceed in any county in which **we** maintain an office in that state. If **we** do not maintain an office in the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located, the arbitration shall proceed in the county that includes the capital of the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located.

## XIV.  GOVERNING LAW

This **policy** shall be construed, and the legal relations between **us** and the **insureds** (and anyone claiming any interest in or rights under the **policy**) shall be determined, in accordance with the laws of the state in which the address of the **policyholder**, as specified in the **Coverage Summary**, is located, except that the Federal Arbitration Act (Title 9 of the United States Code) shall apply to the rights and obligations of the parties to submit any dispute, claim or controversy arising under this **policy** to arbitration, as provided in Section XIII above.

## XV.  HEADINGS

The section headings contained herein are for convenience of reference only and are not intended to define, limit or describe the scope or intent of any provision in the **policy**.

PRA-HCP-030 09 05

Health Care Professional Liability Policy
Claims-Made Form
©2005 ProAssurance Corporation

Page 9 of 9

124

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
# PROFESSIONAL LEGAL DEFENSE COVERAGE PART
# EXTENDED FORM

## I.  DEFINITIONS

Terms appearing in **bold face print** shall have the meanings given in the Definitions section of the **policy**. In addition:

**Appointed counsel** means the attorney or firm of attorneys that, in **our** sole discretion, is either (1) appointed by **us** in writing, or (2) appointed by a **covered insured** with **our** prior written approval, to defend a **covered insured** in any **covered investigation.**

**Audit expenses** means fees and expenses of an accountant or other consultant engaged by a **covered insured** in connection with any **covered audit.  Audit expenses** does not include any taxes, penalties or other expenses incurred by a **covered insured.**

**Covered audit** means any audit or review of billing or medical records undertaken by a **covered insured** in response to an investigation or proceeding commenced by any federal or state agency alleging violation by any **covered insured** of Medicare or Medicaid laws, rules or regulations relating to reimbursement for medical services.

**Covered insured** means any **insured physician** or **insured organization.**

**Covered investigation** means any one or more of the following:

A.   An investigation or proceeding commenced by the governmental or regulatory agency charged with determining whether the **covered insured** participated in the improper transfer of a patient ("dumping"), in violation of the Consolidated Omnibus Budget Reconciliation Act of 1986, as amended ("COBRA").

B.   An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with laws regulating Medicare or Medicaid (or other federal or state health care program offered as an alternative to Medicare or Medicaid), to determine whether the **covered insured** provided **professional services** improperly to a patient covered by Medicare or Medicaid (or other federal or state health care program offered as an alternative to Medicare or Medicaid).

C.   An investigation or proceeding commenced by a **utilization and quality control peer review organization**, but only at the level of such investigation or proceeding in which sanctions may be imposed on the **covered insured.**

D.   An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with regulations pertaining to the Clinical Laboratory Improvement Amendments of 1988 ("CLIA"), whether or not the **covered insured** was in violation of such regulations.

E.   An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with regulations pertaining to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") or the Omnibus Budget Reconciliation Act of 1990 ("OBRA '90"), whether or not the **covered insured** was in violation of such regulations.

F.   An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with the Occupational Safety and Health Administration ("OSHA") regulations pertaining to bloodborne pathogens, whether or not the **covered insured** was in violation of such regulations.

G.   A subpoena or request received by the **covered insured**, requiring the **covered insured** to testify in a trial or deposition, or to provide other discovery, other than as an expert witness, in connection with a legal proceeding (1) arising out of a **professional incident**, but (2) in which the **covered insured** is not a party.

H.   A claim or investigation instituted by a patient of the **covered insured** alleging sexual misconduct or harassment by the **covered insured** in the course of providing **professional services** to such patient.

I.   A claim or investigation instituted by a patient of the **covered insured** alleging errors or omissions by the **covered insured** in billing statements for **professional services** rendered to such patient.

J.   A disciplinary proceeding initiated by a licensure commission, board of ethics or similar professional body, which accuses a **covered insured** of, or investigates an accusation that a **covered insured** engaged in, improper or unprofessional conduct in the course of such **covered insured's** medical practice.

K.   An investigation or proceeding commenced by any federal or state agency alleging violation by any **covered insured** of Medicare or Medicaid laws, rules or regulations relating to reimbursement for medical services.

**Criminal prosecution** means any governmental action seeking enforcement of criminal laws, including offenses for which conviction could result in imprisonment.

**Legal expenses** means the normal, reasonable and customary charges of the **appointed counsel** in defending a **covered insured** in any **covered investigation**, including reasonable out-of-pocket charges incurred by such **appointed counsel**. **Legal expenses** does not include damages, fines, judgments or penalties that may be assessed in any **covered investigation** or paid in any settlement thereof, or expenses incurred in the defense of any **criminal prosecution**.

**Utilization and quality control peer review organization** means a utilization and quality control peer review organization under contract with the U. S. Department of Health and Human Services to review the professional activities of physicians and other health care practitioners and providers under the federal Social Security Act, as amended, while acting within the scope of its duties under such contract.

## II.   INSURING AGREEMENT

We will pay on behalf of any **covered insured** the **legal expenses** incurred by such **covered insured** in the course of a **covered investigation**, provided that:

A.   the **professional incident** giving rise to the **covered investigation** occurs after the **retroactive date** applicable to such **covered insured** and prior to the termination of the **policy;**

B.   the **covered insured** first receives written notice of the commencement of the **covered investigation** within the **policy period;** and

C.   the **covered investigation** is first **reported** during the **policy period.**

We will pay on behalf of any **covered insured** the audit expenses incurred by such **covered insured** in the course of a **covered audit**, provided that:

A.   the acts or omissions of the **covered insured** giving rise to the **covered audit** occurred after the **retroactive date** applicable to such **covered insured** and prior to the termination of the **policy;**

B.   formal written notice of the investigation or proceeding to which the **covered audit** relates is first received by the **covered insured** during the **policy period;** and

C.   such investigation or proceeding is first **reported** during the **policy period.**

We will pay **legal expenses** contemplated herein (1) directly to **appointed counsel** if **we** elect to appoint such counsel or (2) to the **covered insured** upon presentation of **appointed counsel's** invoices and evidence of payment by the **covered insured** if **we** elect to reimburse costs of **appointed counsel** selected by the **covered insured.**

## III.   PERSONS INSURED

Only **covered insureds** are insured under this Coverage Part.

## IV.   LIMIT OF LIABILITY

The limit of liability specified in the **Coverage Summary** as "Each Covered Investigation" is the total of **our** liability to each **covered insured** resulting from any one **covered investigation**. The limit of liability specified in the **Coverage Summary** as "Each Policy Period" is the total limit of **our** liability to all **covered insureds** resulting from all **covered investigations** which are first **reported** during the **policy period.**

## V.   REPORTING ENDORSEMENT PROVISIONS

If a **Reporting Endorsement** is issued for a **covered insured**, the period for **reporting covered investigations** under this Coverage Part shall be automatically extended for the duration of the **Reporting Endorsement**, but only for the **reporting** of **covered investigations** which are otherwise covered hereunder. Termination or cancellation of

---

the **Reporting Endorsement** shall automatically terminate the period for **reporting covered investigations** under this Coverage Part.

## VI.   DEDUCTIBLE

Coverage for the **covered investigations** described in Items H through K of the definition of **covered investigation** is subject to a deductible of One Thousand Dollars ($1,000).  For each such **covered investigation**, each **covered insured** shall be required to pay **legal expenses** in an amount equal to the deductible before **our** obligation to pay **legal expenses** arises, and **our** limit of liability will be reduced by the amount of the deductible.  In addition, for each **covered audit**, each **covered insured** shall be required to pay **audit expenses** in an amount equal to the deductible before **our** obligation to pay **audit expenses** arises, and **our** limit of liability will be reduced by the amount of the deductible.  The **policyholder** shall pay the deductible within thirty (30) days after written demand. The **policyholder** agrees to pay all costs, including attorneys' fees and court costs, incurred by **us** in collecting any deductible.

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
## SHARED LIMIT ENDORSEMENT

This endorsement amends the Professional Liability Coverage Part of the **policy** to establish the coverage limits for any person or entity named as an **insured** in the **Coverage Summary** and for whom no numeric limit appears in the **Coverage Summary's** table depicting limits of liability. For purposes of this endorsement, those **insureds** for whom no numeric limit appears in the **Coverage Summary's** table depicting limits of liability will be referred to as "Sharing Insureds." For purposes of this endorsement, those **insureds** for whom numeric limits appear in the **Coverage Summary's** table depicting limits of liability will be referred to as "Separate Limit Insureds."

Each Sharing Insured shall not have its own separate insurance coverage, but shall share in the coverage of the Separate Limit Insureds, subject to the provisions of this endorsement and all terms and conditions of the **policy**. Any **damages** covered by the **policy** and paid on behalf of the Sharing Insureds shall be applied against and erode the coverage applicable and available to the Separate Limit Insureds, in the order and manner **we** deem appropriate; provided however:

A.   **We** will not pay **damages** and will not provide a defense for vicarious liability of any Sharing Insured arising out of any act or omission of any person who is either employed by, under contract with, or otherwise formally affiliated with any **insured** unless the person who committed the alleged act or omission is an **insured** under the **policy**; and

B.   **We** will not pay **damages** and will not provide a defense for vicarious liability of any Sharing Insured arising out of any act or omission of any person who was formerly employed by, under contract with, or in any way formally associated with an **insured** unless the person who committed the alleged act or omission (1) was an **insured** under the **policy** at the time of the alleged act or omission and (2) has applicable primary coverage in an amount at least equal to the average of the limits available to all **insureds** under this **policy**. In any event, and notwithstanding any other provision in the **policy**, coverage for the vicarious liability of any Sharing Insured shall be excess over any valid and collectible insurance available to the person whose acts or omissions are the source of liability to the Sharing Insured, and coverage under this **policy** will not contribute prior to exhaustion of the coverage limits available under any such other valid and collectible insurance to the person who committed the act or omission.

If **damages** covered by the **policy** are awarded, or a settlement is made with **our** consent, against one or more Sharing Insureds and one or more Separate Limit Insureds, the total insurance coverage available to the Sharing Insureds and the Separate Limit Insureds combined shall not exceed the limit of **our** liability under the **policy** for the Separate Limit Insureds who are parties to the award or settlement. In such a case, if a Deductible applies to one or more Separate Limit Insureds, the total Deductible amount to be paid by the Sharing Insureds and the Separate Limit Insureds combined shall equal the sum of the Deductibles applicable to the Separate Limit Insureds who are parties to the award or settlement.

If **damages** covered by the **policy** are awarded, or a settlement is made with **our** consent, against one or more Sharing Insureds, but not against any Separate Limit Insureds, the insurance coverage available to all Sharing Insureds combined shall equal the numeric average of the limits of liability designated on the **Coverage Summary** as "each professional incident" for the Separate Limit Insureds. In such a case, if a Deductible applies to one or more Separate Limit Insureds, the Deductible amount to be paid by all Sharing Insureds combined shall equal the average of the Deductibles applicable to the Separate Limit Insureds.

In no event will **we** pay any **damages** or provide a defense to any Sharing Insured once the "annual aggregate" limit of **our** liability has been paid on behalf of the Separate Limit Insureds.

No Sharing Insured shall have the right to purchase a **Reporting Endorsement** upon cancellation, non-renewal, or expiration of the coverage provided to the Sharing Insured.

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
# RENEWAL ENDORSEMENT

**POLICYHOLDER: Wagoner Medical Center, P.C.**

**POLICY NUMBER: MP49652**

**RENEWAL DATE: 3/1/2006**

This renewal of the **policy** is offered under certain conditions and in reliance upon the initial application and any subsequent applications each **insured** and the **policyholder** provided to **us.**

Further, as a condition to renewal of the **policy**, the **policyholder** and each **insured** represent and warrant that, except as otherwise disclosed to **us** in writing:

    A.    no **insured** has had any state medical license, hospital privileges or license to prescribe or dispense medicine denied, suspended, restricted or revoked, nor has any such **insured** voluntarily surrendered any such license or privileges for any reason;

    B.    no **insured** has (1) undergone psychiatric treatment, (2) been treated for alcohol or narcotics addiction, (3) had any chronic illness or physical defect, (4) been convicted of any misdemeanor or felony other than minor traffic violations, (5) appeared before any Professional Standards/Quality Assurance Review Committee or (6) appeared before any Board of Professional Examiners or Licensure Commission; and

    C.    no **insured** has changed the scope of his or her professional practice from that previously disclosed to **us** in his or her applications for insurance.

If, at any time while the **policy** is in effect, any of the events described in paragraph A, B, or C occur, the **policyholder** agrees to notify **us** within thirty (30) days of its occurrence, and to provide such additional information as **we** may require.

The **policyholder** acknowledges that information concerning any of the events described above is material to **our** agreement to provide insurance under the **policy** on the basis, and for the premium, stated in the **Coverage Summary.**

---

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
## CLAIMS-MADE FORM
## INDIANA STATE AMENDATORY ENDORSEMENT

I.    Item X. CANCELLATION of the General Conditions, form PRA-HCP-030 or PRA-HCP-040, is hereby deleted and replaced by the following:

This **policy**, or coverage of any **insured** thereunder, may be canceled by the **policyholder** by mailing to **us** written notice stating when thereafter the cancellation shall be effective. If the **policy** has been in effect for 90 days or less, **we** may cancel the **policy** by mailing to the **policyholder**, at the address shown in the **Coverage Summary**, written notice of cancellation at least:

a.    10 days before the effective date of cancellation if **we** cancel for nonpayment of premium;

b.    20 days before the effective date of cancellation if the **policyholder** has perpetrated a fraud or material misrepresentation on **us**; or

c.    30 days before the effective date of cancellation if **we** cancel for any other reason.

If the **policy** has been in effect for more than 90 days, or is a renewal of a policy **we** issued, **we** may cancel the **policy** only for one or more of the reasons listed below, by mailing to the **policyholder**, at the address shown in the **Coverage Summary**, written notice of cancellation at least:

a.    10 days before the effective date of cancellation if **we** cancel for nonpayment of premium;

b.    20 days before the effective date of cancellation if the **policyholder** has perpetrated a fraud or material misrepresentation on us; or

c.    45 days before the effective date of cancellation if:

(1)    There has been a substantial change in the scale of risk covered by the **policy**;

(2)    Reinsurance of the risk associated with the **policy** has been cancelled; or

(3)    Any **insured** does not comply with our safety recommendations.

Notice of cancellation will state the effective date of cancellation. The effective date and hour of cancellation stated in the notice shall become the end of the **policy period** for each **insured** to which the cancellation applies. Delivery of written notice either by the **policyholder** or by **us** shall be equivalent to mailing. Notice given by or on behalf of any **insured** to any of our authorized agents in Indiana, with particulars sufficient to identify such **insured** and the **policy**,shall be considered to be notice to **us**.

If the **policyholder** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If **we** cancel, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

II.   Item XI. RENEWAL OF POLICY of the General Conditions, form PRA-HCP-030 or PRA-HCP-040, is hereby deleted and replaced by the following:

Neither the **policyholder** nor **we** have any obligation to renew the **policy**. Any renewal will be on the policy forms and endorsements then in effect. If **we** elect not to renew the **policy**, or coverage of any **insured** thereunder, **we** will mail or deliver to the **policyholder**, at the address shown in the **Coverage Summary**, written notice of nonrenewal at least forty-five (45) days prior to the expiration of the **policy**. If notice is mailed, proof of mailing will be sufficient proof of notice.

III.  Item II. INVESTIGATION, DEFENSE AND SETTLEMENT of the Professional Liability Coverage Part, form PRA-HCP-030 or PRA-HCP-040, is hereby deleted and replaced by the following:

**We** have the right to investigate any **professional incident** that **we** deem expedient. **We** have the right and duty to defend any suit against an **insured** seeking **damages** that, if awarded, would be covered by this **policy**, even if any of the allegations of the suit are groundless, false or fraudulent, and **we** have the right, but not the duty, to defend any claim against an **insured** seeking such **damages**. **We** have the right to select defense counsel in any claim or suit defended by **us**. **We** will not pay fees and expenses of any legal counsel not retained by **us**. If a claim or suit is

---

asserted against more than one **insured**, **we** may retain the same legal counsel to defend all **insureds**, consistent with counsel's ethical duties to avoid conflicts of interest.

**We** have the right to settle any claim or suit against an **insured** seeking **damages** that, if awarded, would be covered by this **policy**; provided that no settlement will be made without the written consent of the **policyholder** unless (a) the **policyholder** cannot be located and contacted after reasonable efforts are made by **us**; or (b) the settlement is made after a verdict or judgment has been rendered against an **insured**.

**We** may, however, settle without the consent of the **insured** any claim or suit filed in accordance with the provisions of Indiana Code 27-1-13-7 for which a medical review panel as established by Indiana Code 34-18-10-1 has issued a unanimous opinion that the **insured** failed to comply with the appropriate standard of care as charged in the claim or suit.

**We** shall not be obligated to take an appeal from any judgment against an **insured**.

**We** shall not be obligated to pay **damages** or to defend any suit after the applicable limit of liability has been exhausted.

IV. Section VI. REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PARAMEDICALS of the Professional Liability Coverage Part, form PRA-HCP-040, is amended by adding the following:

Notwithstanding the foregoing, a **Reporting Endorsement** shall be issued in accordance with **our** rules on the effective date of the termination to an **insured paramedical** automatically and without payment of any additional premium in case the termination of insurance results from any of the following events during the **policy period**:

A. the death of the **insured paramedical**;

B. the permanent and total retirement of the **insured paramedical** from practice as a health care provider, but only if the **insured paramedical** shall have been insured continuously by **us** for the preceding five (5) years. The **insured paramedical** must submit an affidavit satisfactory to **us** in which the **insured paramedical** confirms an intention to permanently and totally retire from practice as a health care provider and agrees to pay a premium for the **Reporting Endorsement** if the **insured paramedical** recommences practice as a health care provider within five (5) years after delivering the affidavit;

C. the permanent and total disability of the **insured paramedical** resulting in the inability to continue the professional activity or endeavor in which the **insured paramedical** was theretofore engaged, but only if the permanent and total disability:

1. shall have continued without significant interruption for a term of not less than six months prior to termination; and

2. shall have required regular treatment by a legally qualified medical or surgical practitioner other than the **insured paramedical**.

The foregoing provisions governing the issuance of a **Reporting Endorsement** at no premium charge in the event of items A through C above shall not alter, amend, modify, supersede, or in any way change the conditions and requirements for cancellation or non-renewal of the **policy** as provided by applicable law and otherwise described herein. Following the cancellation or non-renewal of the **policy** in conformity with applicable law, if none of the conditions described in items A through C above are then satisfied, no **insured paramedical** shall have any right or expectancy to receive either (1) a **Reporting Endorsement** at no additional premium charge or (2) a refund of any premium previously paid by the **insured paramedical**.

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
# CLAIMS-MADE PLUS℠ ENDORSEMENT

**POLICYHOLDER: Wagoner Medical Center, P.C.**          **ENDORSEMENT**
**EFFECTIVE DATE: 3/1/2006**

**POLICY NUMBER: MP49652**

I.   Item VI. REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PROFESSIONALS, of the Professional Liability Coverage Part, form PRA-HCP-030, is hereby amended as follows:

**VII.   REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PROFESSIONALS**

If the insurance afforded by this **policy** to an **insured professional** terminates, either by nonrenewal or cancellation, the **insured professional** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the termination), to have issued a **Reporting Endorsement**, in the form then used by **us**, providing coverage for **professional incidents** occurring prior to the termination date and for which the **insured professional** is otherwise covered by this **policy**, but which are first **reported** on or after the termination date. This right must be exercised by an **insured professional** by making payment to **us** not later than thirty (30) days after the termination date.

Notwithstanding the foregoing, a **Reporting Endorsement** shall be issued in accordance with **our** rules on the effective date of the termination to an **insured professional** automatically and without payment of any additional premium in case the termination of insurance results from any of the following events during the **policy period**:

A.   the death of the **insured professional**;

B.   the **insured professional's** attainment of age 65, but only if the **insured professional** shall have been insured continuously by **us** for the preceding ten (10) years;

C.   the **permanent and total retirement** of the **insured professional**. The **insured professional** must submit an affidavit satisfactory to **us** in which the **insured professional** confirms an intention to permanently and totally retire from the practice of medicine or dentistry and agrees to pay a premium for the **Reporting Endorsement** if the **insured professional** recommences the practice of medicine or dentistry within five (5) years after delivering the affidavit;

D.   the **permanent and total disability** of the **insured professional** resulting in the inability to continue the professional activity or endeavor in which the **insured professional** was theretofore engaged, but only if the **permanent and total disability**:

1.   shall have continued without significant interruption for a term of not less than six months prior to termination; and

2.   shall have required regular treatment by a legally qualified medical or surgical practitioner other than the **insured professional**.

E.   the total relocation of the **insured professional's** practice outside the State of Indiana.  The **insured professional** must submit an affidavit satisfactory to **us** in which the **insured professional** confirms an intention to permanently and totally relocate his or her practice from the State of Indiana, including new place of employment, and agrees to pay a premium for the **Reporting Endorsement** if the **insured physician** should return to the practice of medicine in the State of Indiana within three years after delivering the affidavit.

The foregoing provisions governing the issuance of a **Reporting Endorsement** at no premium charge in the event of items A through E above shall not alter, amend, modify, supersede, or in any way change the conditions and requirements for cancellation or non-renewal of the **policy** as provided by applicable law and otherwise described herein.  Following the cancellation or non-renewal of the **policy** in conformity with applicable law, if none of the conditions described in items A through E above are then satisfied, no **insured professional** shall have any right or expectancy to receive either (1) a **Reporting Endorsement** at no additional premium charge or (2) a refund of any premium previously paid by the **insured professional**.

All Other Terms and Conditions Remain Unchanged.

# CERTIFICATE OF INSURANCE

| | | Surcharge | Effective Date |
|---|---|---|---|
| TO: INDIANA PATIENT'S COMPENSATION FUND | Cancellation: | $_____ | _____ |
| MEDICAL MALPRACTICE DIVISION | Return/Additional Surcharge | $_____ | _____ |
| 311 W. WASHINGTON ST. STE.300 | Credit | _____% | _____ |
| INDIANAPOLIS, IN 46204-2787 | | | |

| Policy No.: MP49652 AO730669 | Occurrence | | |
|---|---|---|---|
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |

| Health Care Provider: Wagoner Medical Center, LLC | | | |
|---|---|---|---|
| Medical License No.: | Including employees | X | Excluding employees |

| Address (Street, City, State, Zip): | County: Carroll |
|---|---|
| 605 E. 7th Street | |
| Burlington, IN 46915 | |

| Coverage Dates: | Classification Number: 80999 |
|---|---|
| From: 3/1/2006 To: 3/1/2007 | |

| Limits of Liability | Premium Amount: $ 100 |
|---|---|
| $250,000          $750,000 | Surcharge Amount: $ 110 |
| per occurrence    annual aggregate | Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Ten Percent (110%) of the premium for non-physician or non-hospital providers. Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change. Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2006 at the insurance office of The Medical Assurance Company, Inc..

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

# CERTIFICATE OF INSURANCE

TO:  INDIANA PATIENT'S COMPENSATION FUND
     MEDICAL MALPRACTICE DIVISION
     311 W. WASHINGTON ST. STE.300
     INDIANAPOLIS, IN 46204-2787

Cancellation:
Return/Additional Surcharge
Credit

| | Surcharge | Effective Date |
|---|---|---|
| | $_____ | _____ |
| | $_____ | _____ |
| | _____% | _____ |

| Policy No.: MP49652 QP625307 | Occurrence | | |
|---|---|---|---|
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |

| Health Care Provider: Wagoner Medical Center, P.C. | | | |
|---|---|---|---|
| Medical License No.: | Including employees | X | Excluding employees |

| Address (Street, City, State, Zip): | County: Carroll |
|---|---|
| 605 E. 7th Street | |
| Burlington, IN 46915 | |

| Coverage Dates: | Classification Number: 80999 |
|---|---|
| From: 3/1/2006 To: 3/1/2007 | |

| Limits of Liability | Premium Amount: $   100 |
|---|---|
| $250,000      $750,000 | Surcharge Amount: $   110 |
| per occurrence    annual aggregate | |
| | Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute,  for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Ten Percent (110%) of the premium for non-physician or non-hospital providers.  Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2006 at the insurance office of The Medical Assurance Company, Inc..

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

# CERTIFICATE OF INSURANCE

TO:  INDIANA PATIENT'S COMPENSATION FUND
     MEDICAL MALPRACTICE DIVISION
     311 W. WASHINGTON ST. STE.300
     INDIANAPOLIS, IN 46204-2787

Cancellation:
Return/Additional Surcharge
Credit

Surcharge     Effective Date
$_____      _____
$_____      _____
_____%      _____

| Policy No.: MP49652 HQ621367 | | | Occurrence | | |
|---|---|---|---|---|---|
| | | | Claims Made | X | Retro Date: 3/1/2004 |
| | | | Reporting Endors. | | Retro Date: |
| Health Care Provider: Don J. Wagoner, MD and Marilyn L. Wagoner, MD, PC<br><br>Medical License No.: 01019897 | | | Including employees      X | | Excluding employees |
| Address (Street, City, State, Zip):<br>605 E. 7th Street<br>Burlington, IN 46915 | | | County: Carroll | | |
| Coverage Dates:<br><br>From: 3/1/2006 To: 3/1/2007 | | | Classification Number: 80999 | | |
| Limits of Liability<br><br>$250,000                $750,000<br>per occurrence      annual aggregate | | | Premium Amount: $  100<br><br>Surcharge Amount: $  110<br><br>Penalty Amount: | | |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Ten Percent (110%) of the premium for non-physician or non-hospital providers.   Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2006 at the insurance office of The Medical Assurance Company, Inc..

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

*Pac-3/State Form 2713R5*
*Revised 4/17/05*

135

# CERTIFICATE OF INSURANCE

TO: INDIANA PATIENT'S COMPENSATION FUND
    MEDICAL MALPRACTICE DIVISION
    311 W. WASHINGTON ST. STE.300
    INDIANAPOLIS, IN 46204-2787

|  | Surcharge | Effective Date |
|---|---|---|
| Cancellation: | $ | |
| Return/Additional Surcharge | $ | |
| Credit | % | |

| Policy No.: MP49652 DR623327 | | Occurrence | | |
|---|---|---|---|---|
| | | Claims Made | X | Retro Date: 3/1/2004 |
| | | Reporting Endors. | | Retro Date: |
| Health Care Provider: Don J Wagoner, M.D. | | Including employees | X | Excluding employees |
| Medical License No.: 01019897 | | | | |
| Address (Street, City, State, Zip): 605 E. 7th Street Burlington, IN 46915 | | County: Carroll | | |
| Coverage Dates: From: 3/1/2006 To: 3/1/2007 | | Classification Number: 80421 | | |

| Limits of Liability | | Premium Amount: $ 7,899 |
|---|---|---|
| $250,000 per occurrence | $750,000 annual aggregate | Surcharge Amount: $ 6,983 |
| | | Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider ar a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Ten Percent (110%) of the premium for non-physician or non-hospital providers.  Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2006 at the insurance office of The Medical Assurance Company, Inc..

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

# CERTIFICATE OF INSURANCE

| | |
|---|---|
| TO: INDIANA PATIENT'S COMPENSATION FUND<br>MEDICAL MALPRACTICE DIVISION<br>311 W. WASHINGTON ST. STE.300<br>INDIANAPOLIS, IN 46204-2787 | Cancellation:<br>Return/Additional Surcharge<br>Credit |

| | Surcharge | Effective Date |
|---|---|---|
| Cancellation: | $ | |
| Return/Additional Surcharge | $ | |
| Credit | % | |

| Policy No.: MP49652 GU623328 | Occurrence | | |
|---|---|---|---|
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |

| Health Care Provider: Marilyn L Wagoner, M.D.<br><br>Medical License No.: 01019503 | Including employees    X | Excluding employees |
|---|---|---|

| Address (Street, City, State, Zip):<br>605 E. 7th Street<br>Burlington, IN 46915 | County: Carroll |
|---|---|

| Coverage Dates:<br><br>From: 3/1/2006 To: 3/1/2007 | Classification Number: 80421 |
|---|---|

| Limits of Liability | Premium Amount: $ 6,227 |
|---|---|
| $250,000                    $750,000<br>per occurrence          annual aggregate | Surcharge Amount: $ 6,983 |
| | Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Ten Percent (110%) of the premium for non-physician or non-hospital providers.   Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2006 at the insurance office of The Medical Assurance Company, Inc..

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

*Pac-3/State Form 2713R5*
*Revised 4/17/05*

137

# CERTIFICATE OF INSURANCE

TO:  INDIANA PATIENT'S COMPENSATION FUND
    MEDICAL MALPRACTICE DIVISION
    311 W. WASHINGTON ST. STE.300
    INDIANAPOLIS, IN 46204-2787

| | Surcharge | Effective Date |
|---|---|---|
| Cancellation: | $_____ | _____ |
| Return/Additional Surcharge | $_____ | _____ |
| Credit | _____% | _____ |

| | | |
|---|---|---|
| Policy No.: MP49652 C15193 | Occurrence | |
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |

| | | |
|---|---|---|
| Health Care Provider: Silvio J. Sanchez, M.D. | | |
| Medical License No.: 01057014 | Including employees    X | Excluding employees |

| | |
|---|---|
| Address (Street, City, State, Zip): 605 E. 7th Street Burlington, IN 46915 | County: Howard |

| | |
|---|---|
| Coverage Dates: From: 3/1/2006 To: 3/1/2007 | Classification Number: 80284 |

| | |
|---|---|
| Limits of Liability | Premium Amount: $ 6,549 |
| $250,000          $750,000 per occurrence     annual aggregate | Surcharge Amount: $ 6,983 |
| | Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Ten Percent (110%) of the premium for non-physician or non-hospital providers.  Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2006 at the insurance office of The Medical Assurance Company, Inc..

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

Pac-3/State Form 2713R5
Revised 4/17/05

138

**ProAssurance Companies**
965 Emerson Parkway, Suite 11
Greenwood, IN 46143

*Send Non-Payment Mail to:*
ProAssurance Service Center
P.O. Box 150
Okemos, MI 48805-0150

800.282.6242
ProAssurance.com



PROASSURANCE.
Treated Fairly

April 6, 2015

This is to certify that the attached documents for policy MP49652 are true and exact copies of the Healthcare Professional Liability policy documents issued to Wagoner Medical Center, LLC, Wagoner Medical Center, P.C., Don J. Wagoner, M.D. and Marilyn L. Wagoner, M.D. P.C., Don J. Wagoner, M.D., Marilyn L. Wagoner, M.D. Silvio J. Sanchez, M.D., Gary M. Hartman, PA, and John M. Thomas, PA for the policy period of March 1, 2007 to March 1, 2008. Also included is the Change in Coverage Summary Endorsement adding Thomas K. Hewitt, PA., effective September 17, 2007.

Lois Wyrick
Regional Vice President, Underwriting
Authorized Representative

Personally appearing before me the above named Lois Wyrick personally known to me, who, being duly sworn, deposes and says that the above statement is true and correct to the best of her knowledge and belief.

Subscribed and sworn to before me this ___6th___ day of ___April___, 20_15_.

_____
Notary Public

My Commission Expires ___6/2/2017___

139

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
## COVER PAGE

**THIS POLICY CONTAINS COVERAGES WRITTEN ON A "MODIFIED CLAIMS-MADE" BASIS.**

In consideration of the payment of the premium, and in reliance upon the statements and representations in the applications for insurance and the **Coverage Summary, we** agree to provide the insurance contained in the **policy.**

**THE COMPANY:** The Medical Assurance Company, Inc.

**AGENT:**
Arlington/Roe & Co., Inc.
P. O. Box 80803
Indianapolis, IN 46280

**POLICYHOLDER:** Wagoner Medical Center, P.C.
605 E. 7th Street
Burlington, IN  46915

**POLICY NUMBER: MP49652**

The **policy** consists of this **Cover Page** and the following forms (together with any endorsements issued from time to time).

| Title | Form Number |
|---|---|
| Coverage Summary | PRA-HCP-020-08 05 |
| Healthcare Professional Liability Policy | PRA-HCP-030-09 05 |
| Professional Legal Defense Coverage Part - Extended Form | PRA-HCP-071-09 05 |
| Part-Time Endorsement | PRA-HCP-200-08 05 |
| Shared Limit Endorsement | PRA-HCP-325-09 05 |
| Renewal Endorsement | PRA-HCP-500-08 05 |
| Indiana State Law Endorsement | PRA-HCP-606-12 05.IN |
| Claims-Made Plus Endorsement | PRA-HCP-611 IN 08 05 |

If any provision of the **policy** changes, **we** will issue an endorsement stating the effective date of any changes. Terms appearing in the **policy** in **bold face print** are defined in the Definitions section.

IN WITNESS WHEREOF, **we** have caused the **Cover Page** to be signed by **our** President and Secretary. The **policy** is effective only if countersigned on the **Coverage Summary** by **our** duly authorized representative.

Kathryn A. Neville, JD, CPCU
Secretary

HOWARD H. FRIEDMAN, ACAS, MAAA
President

# HEALTH CARE PROFESSIONAL LIABILITY POLICY COVERAGE SUMMARY

1. Policyholder's Name and Address:

    Wagoner Medical Center, P.C.
    605 E. 7th Street
    Burlington, IN 46915

2. Policy Number: MP49652

3. Policy Period: From 3/1/2007 to 3/1/2008 12:01 a.m. at the address of the **policyholder** as stated above.

4. Total Premium: $30,352 (Does not include PCF Surcharge in the amount of $25,308.00).

5. Schedule of Insureds (Primary Coverage)
    The following are **insureds** under the **policy**, with the following respective limits of liability:

Primary Limits of Liability

| Name | Retroactive Date | Each Professional Incident | Annual Aggregate | Deductible | Premium |
|------|------------------|----------------------------|------------------|------------|---------|
| INSURED ORGANIZATIONS | | | | | |
| Wagoner Medical Center, P.C. | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| Don J. Wagoner, MD and Marilyn L. Wagoner, MD, PC | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| Wagoner Medical Center, LLC | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| | | | | | |
| INSURED PROFESSIONALS | | | | | |
| Marius-Julian Nefliu, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $5,931 |
| Don J Wagoner, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $7,823 |
| Saira M. Dar, MD | 7/1/2005 | $250,000 | $750,000 | N/A | $4,669 |
| Silvio J. Sanchez, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $6,313 |
| Marilyn L Wagoner, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $5,316 |
| | | | | | |
| INSURED PARAMEDICAL EMPLOYEES | | | | | |
| Gary M. Hartman, P.A. | 3/1/2004 | ** | ** | N/A | |
| John M. Thomas, P.A. | 3/1/2004 | ** | ** | N/A | |

** This **insured** does not have individual or separate coverage. Refer to the Shared Limit Endorsement.

6. Professional Legal Defense Coverage Premium:    $500.00 included with Total Premium above.

Limits of Liability  NOTE:  These limits apply only to legal expenses incurred by covered insureds under the Professional Legal Defense Coverage Part, and not to defense costs incurred which are otherwise covered under the Professional Liability Coverage Part or other parts of the policy.

|  | Each Medical Incident |
|---|---|
| Each Covered Investigation | $25,000 |
| Each Covered Audit | $5,000 |
| Each Policy Period | $125,000 |

By: _____
Authorized Representative

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
## CLAIMS-MADE FORM

# DEFINITIONS

As used in this **policy**, the following terms shall have the following meanings:

**Assertion of liability** means an oral or written demand or notice from a patient or a patient's representative claiming that an **insured** is liable for a **professional incident** or requesting a patient's medical records.

**Continuous coverage effective date** means the effective date of the earliest **policy** issued by **us** to the **insured**, which **policy** is followed by a continuous and unbroken period in which **we** provided professional liability insurance coverage to the **insured**.

**Cover Page** means the Health Care Professional Liability Policy Cover Page, or any renewal or modification thereof.

**Coverage Summary** means the Health Care Professional Liability Policy Coverage Summary, or any renewal or modification thereof.

**Damages** means all amounts of money which are payable under this **policy** because of injury, including death.

**Insured** means any **insured organization**, any **insured professional**, any **insured paramedical employee**, and any **other covered employee**.

**Insured organization** means any partnership, professional corporation, professional association, limited liability company, or other entity designated as an **Insured Organization** in the **Coverage Summary**.

**Insured paramedical employee** means any person designated as such in the **Coverage Summary**.

**Insured professional** means any dentist or physician designated as an **insured professional** in the **Coverage Summary**.

**Other covered employee** means any person whose duties include the prevention, diagnosis and treatment of illness or injury, other than (1) a person practicing as a physician, surgeon, dentist, psychologist, nurse midwife, nurse anesthetist, nurse practitioner, physician's assistant, surgeon's assistant, perfusionist, optometrist, cytotechnologist, emergency medical technician, or anesthesiologist assistant, or (2) any person licensed, certified, or otherwise authorized to deliver advanced level health care in the absence of direct supervision by a licensed physician.

**Other insurance** means any valid and collectible insurance, self insurance, self-insured retention, self-insured trust, or risk transfer instrument of any kind, other than this **policy**, that provides defense or indemnity to any **insured** for any claim, loss, liability, or **damages** covered by this **policy**.

**Peer review services** means service by an **insured professional** while acting within the scope of his or her duties as a member of:

- A.  a utilization and quality control peer review organization acting under contract with a federal or state health care agency to review the professional activities of health care providers;

- B.  a duly constituted hospital, surgery center or long-term health care facility utilization review committee providing review of services furnished by the institution and members of its medical or dental staff;

- C.  a duly constituted hospital, surgery center, or dental center staff committee, consisting solely of members of the medical or dental staff of the hospital, surgery center, or dental center for the evaluation and improvement of quality of care;

- D.  a duly constituted hospital peer review committee, consisting solely of members of the medical or dental staff of the hospital, having responsibility for: (1) reviewing qualifications and credentials of persons seeking appointment or reappointment to a hospital medical staff, (2) evaluating the clinical or administrative competence of persons so appointed, (3) matters concerning limiting the scope of hospital privileges of persons on a hospital medical staff, or (4) matters concerning the dismissal or discharge of persons from a hospital medical staff; or

- E.  any peer review program conducted by **us**; and

- F.  with respect to dentists only, a duly constituted dental society peer review committee having responsibility for evaluating the performance of services of other dentists or dental auxiliary personnel at the request of government agencies, patients, dentists, providers of dental benefits, or third party insurers.

PRA-HCP-030 09 05

Health Care Professional Liability Policy
Claims-Made Form
©2005 ProAssurance Corporation

Page 1 of 9

143

**Permanent and total retirement** means that an **insured professional** no longer performs any medical, dental, or professional activities or duties for which a medical or dental license is required and for which the **insured professional** receives monetary or other financial compensation.

**Policy** means the **Cover Page**, the forms listed thereon, and any endorsements issued from time to time. The **policy** terms in effect at the time a **professional incident** is first **reported** shall apply to that **professional incident.**

**Policyholder** means the person or entity designated as such in the **Coverage Summary.**

**Policy period** means the period specified as such in the **Coverage Summary.**

**Professional incident** means:

A.   a single act or omission, or a series of related acts or omissions during a continuing course of **professional services**, arising out of the rendering of, or failure to render, **professional services** to any one person by an **insured** or any person for whose acts or omissions an **insured** is legally responsible, which results, or is likely to result, in **damages;** or

B.   a single act or omission or a series of related acts or omissions by an **insured professional** during the performance of **peer review services** which results, or is likely to result, in **damages.**

For purposes of this definition, treatment of mother and fetus (or fetuses) from conception through postpartum care constitutes a single **professional incident**.  In no event shall separate, discrete events or injuries that occur during a single medical procedure or course of treatment constitute more than one **professional incident.**

**Professional services** means the provision of medical or dental services to a patient of an **insured**, including treatment, making diagnoses and rendering opinions or advice.

**Report, reported**, and **reporting** mean, when used with respect to a **professional incident**, the giving by an **insured** or his or her representative of notice of the **professional incident** either in writing or by telephone to **our** Claims Department specifying (1) the date, time, and place of the **professional incident**, (2) a description of the **professional incident**, (3) the name, address, and age of the patient or claimant, (4) the names of witnesses, including other treating physicians, and (5) the circumstances resulting in the **professional incident**.  A **professional incident** shall be deemed **reported** on the date the **report** is actually received by **our** Claims Department.

**Reporting Endorsement** (or "Tail Coverage") means an endorsement issued with respect to an **insured** under Section VI, VII or VIII of the Professional Liability Coverage Part to provide coverage for **professional incidents** first **reported** on or after the date of termination of the insurance provided by this **policy** to the **insured.**

**Retroactive date** means the **retroactive date** applicable to each **insured** as specified in the **Coverage Summary.**

**We, our** and **us** refer to the company that issued this **policy** and is designated as "THE COMPANY" on the **Cover Page.**

# PROFESSIONAL LIABILITY COVERAGE PART

**I.    INSURING AGREEMENT**

Subject to the applicable limit of liability, **we** agree to pay on behalf of each **insured** all sums (in excess of any applicable deductible) that the **insured** shall become legally obligated to pay as **damages** because of any **professional incident** that (1) occurs on or after the **retroactive date** applicable to the **insured** and (2) is first **reported** during the **policy period**; provided, however, that **insured paramedical employees** and **other covered employees** are covered only for **professional incidents** that occur while such persons are employed by an **insured organization** or **insured professional** and acting within the scope of their employment and while engaged in the performance of **professional services** that they hold any required license to perform.  This insurance applies to **professional incidents** arising out of **professional services** or **peer review services** rendered anywhere in the world, provided that any resulting claim or suit is prosecuted within the United States of America, its possessions or territories.  This insurance does not apply to any claim or suit asserted, filed, pursued, or prosecuted in or pursuant to the authority of any court, tribunal, or other  governmental or legal authority outside the jurisdiction of the United States of America, its possessions and territories.

**II.   INVESTIGATION, DEFENSE AND SETTLEMENT**

**We** have the right to investigate any **professional incident** that **we** deem expedient.  **We** have the right and duty to defend any suit against an **insured** seeking **damages** that, if awarded, would be covered by this **policy,** even if any of the allegations of the suit are groundless, false or fraudulent, and **we** have the right, but not the duty, to defend

any claim against an **insured** seeking such **damages**. **We** have the right to select defense counsel in any claim or suit defended by **us**. **We** will not pay fees and expenses of any legal counsel not retained by **us**. If a claim or suit is asserted against more than one **insured**, **we** may retain the same legal counsel to defend all **insureds**, consistent with counsel's ethical duties to avoid conflicts of interest.

**We** have the right to settle any claim or suit against an **insured** seeking **damages** that, if awarded, would be covered by this **policy**; provided that no settlement will be made without the written consent of the **policyholder** unless (a) the **policyholder** cannot be located and contacted after reasonable efforts are made by **us**; or (b) the settlement is made after a verdict or judgment has been rendered against an **insured**.

**We** shall not be obligated to take an appeal from any judgment against an **insured**.

**We** shall not be obligated to pay **damages** or to defend any suit after the applicable limit of liability has been exhausted.

**III.   EXCLUSIONS**

**We** will not pay **damages** because of any of the following, and **we** have no obligation to provide a defense for any claim or suit alleging any of the following:

A.   In the case of any **insured professional**, liability arising out of the rendering of, or failure to render, **professional services** by any person other than the **insured professional** for whose acts or omissions the **insured professional** is liable solely by reason of his or her status as a member, partner, officer, director or shareholder of any partnership, professional corporation, professional association, limited liability company, or other legal entity (other than an **insured organization**);

B.   Liability of an **insured** as an owner, superintendent, administrator, director, trustee, officer, or medical director of any hospital, sanitarium, clinic with bed and board facilities, nursing home, ambulatory surgery center, laboratory, health maintenance organization, preferred provider organization, exclusive provider organization, other health care entity, or other business enterprise, unless the **insured** directly participates in the rendering of or failure to render **professional services** giving rise to the alleged liability;

C.   Liability assumed by an **insured** under any contract or agreement, whether oral, written or implied, except that this exclusion does not apply to liability that would be imposed on the **insured** by law in the absence of the contract or agreement;

D.   Liability arising out of any (1) willful, wanton, fraudulent (whether intentional or unintentional), dishonest, criminal, reckless, malicious or oppressive act or omission; or (2) conduct which is outrageous, demonstrates conscious indifference to consequences, or evidences intentional, reckless or careless disregard for the rights of others;

E.   Liability arising in whole or in part out of sexual activity, or acts in furtherance of sexual activity whether under the guise of **professional services** or not;

F.   Injury to any employee of an **insured** unless arising from the treatment of the employee as a patient of the **insured**;

G.   Any obligation for which an **insured** or any carrier as insurer may be held liable under any workers' compensation, unemployment compensation, disability benefits, or any similar law;

H.   Liability arising out of any act or omission of an **insured** (1) for which the **insured**, or any person for whom an **insured** is vicariously liable, does not hold any required license to perform, (2) which occurs during any time the **insured's** license to practice his or her profession has been suspended, revoked or voluntarily surrendered, or (3) which constitutes a violation of any restriction imposed upon the **insured's** license;

I.   Liability arising out of any antitrust violation (except for antitrust violations arising from **peer review services** for which coverage is otherwise afforded), unfair competition, discrimination, violation or denial of civil rights, or any other act or omission which violates any statute, ordinance or regulation imposing any fine, penalty or other sanction, including but not limited to attorney fees;

J.   Any **professional incident** that has been **reported** to another insurance carrier prior to the **continuous coverage effective date**; any **professional incident** that occurred prior to the **continuous coverage effective date**, if on that date, the **insured** knew or believed, or had reason to know or believe, that the **professional incident** might reasonably be expected to result in a claim for **damages**; or any **professional incident** that occurred during a period in which the **insured** was not covered by a policy of professional liability insurance;

K.   Liability arising from any **professional incident** that is not the subject of an **assertion of liability**, unless the **professional incident** is reported within 30 days of the date on which the **professional incident** occurred.

L.   Liability for any alleged errors or omissions by the **insured** in billing statements for **professional services** rendered to a patient;

M.   Liability arising from or relating to any breach of electronic data security, including but not limited to any alleged violation of the Security Standards for the Protection of Electronic Protected Health Information promulgated under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA");

N.   Liability arising out of any **professional incident** that occurs while an **insured** is impaired by alcohol or drugs;

O.   Liability for punitive or exemplary damages (including any multiple of compensatory damages, such as double or treble damages) awarded against an **insured**; or

P.   Liability of any **insured** for any act or omission for which the United States government is responsible under the provisions of the Public Health Service Act, 42 U.S.C. 233, or the Federal Tort Claims Act, 28 U.S.C. 1346(b), 2671-2680, or both.

## IV.   LIMITS OF LIABILITY AND DEDUCTIBLES

The limits of liability specified in the **Coverage Summary** for each **insured professional** shall apply to all claims or suits made or brought against that **insured professional**, except for claims or suits against an **insured professional** based upon the rendering of or failure to render **professional services** by someone other than the **insured professional** and for whose acts or omissions the **insured professional** is liable solely by reason of his or her status as a member, partner, officer, director or shareholder of an **insured organization**, in which case the limits of liability specified in the **Coverage Summary** for the **insured organization** shall apply as described below.

The limits of liability specified in the **Coverage Summary** as applicable to each **insured paramedical employee** shall apply to all claims or suits made or brought against the **insured paramedical employee**.

The limits of liability specified in the **Coverage Summary** as applicable to an **insured organization** shall apply to all claims or suits made or brought against (1) the **insured organization**; (2) any **other covered employee**; and (3) any **insured professional** if the alleged liability arises out of the rendering of, or failure to render, **professional services** by someone other than the **insured professional** and for whose acts or omissions the **insured professional** is liable solely by reason of his or her status as a member, partner, officer, director or shareholder of the **insured organization**.

The limit of liability specified in the **Coverage Summary** for each **insured** as "each professional incident" is the total of **our** liability to the **insured** resulting from any one **professional incident**. The limit of liability specified in the **Coverage Summary** for each **insured** as "annual aggregate" is the total limit of **our** liability to that **insured** resulting from all **professional incidents** that are first **reported** during the **policy period**.

The limit of liability shall apply regardless of:

A.   the number of claimants seeking **damages** covered by this **policy**;

B.   the number of claims or suits brought on account of a **professional incident**;

C.   the number of **insureds** under this **policy**; or

D.   the inclusion of an additional insured.

If Additional Limits of Liability are shown in the **Coverage Summary** for any **insured**, the additional coverage so depicted shall apply only to (1) **professional incidents** that occur after the Additional Coverage Retroactive Date shown for that **insured** in the **Coverage Summary** and (2) after exhaustion of the Primary Limits of Liability applicable to that **insured**.

**We** shall have the right to allocate **damages** or supplementary payments among claimants, **insureds**, and policies as **we** deem appropriate.

If a **Reporting Endorsement** is issued, **our** liability for all **professional incidents** first **reported** after the effective date of the **Reporting Endorsement** shall be as stated therein.

If a "Deductible" is shown for any **insured** in the **Coverage Summary** as applicable to this Coverage Part, the **insured** shall be liable for each **professional incident reported** in an amount equal to the Deductible shown in the **Coverage Summary**, and **our** limit of liability will be reduced by that amount. The **insured** shall retain liability to third parties for the amount of any deductible, and **we** will only pay that portion of the **damages** that exceeds the amount of the deductible. In the event **we** pay on behalf of an **insured** all or part of the deductible, the **policyholder** shall reimburse **us** for the amount of the payment within thirty (30) days after written demand. The **policyholder** agrees to pay all costs, including attorneys' fees and court costs, incurred by **us** in collecting any reimbursement.

## V.   SUPPLEMENTARY PAYMENTS

Health Care Professional Liability Policy
Claims-Made Form
©2005 ProAssurance Corporation

We will pay, in addition to the applicable limit of liability:

A.   all expenses incurred by **us**, all costs taxed against an **insured** in any suit defended by **us**, and interest accruing on a judgment or award against an **insured** before **we** have paid, tendered, or deposited in court that part of the judgment which does not exceed the limit of **our** liability thereon; provided that (1) **we** reserve the right to seek reimbursement from the **insured** for the costs and expenses **we** incur in defending any claim that is not covered by the **policy**; and (2) **we** will pay interest only on that portion of the judgment or award that does not exceed the applicable limit of liability; and

B.   commercially reasonable premiums on (1) appeal bonds in any suit defended by **us** and (2) bonds to release attachments in any such suit; provided in either case that (a) there is no dispute with respect to the coverage available under the **policy** for the claims asserted in the suit; (b) the amount of the bond shall not exceed the applicable limit of liability of this **policy**; and (c) **we** shall have no obligation to apply for or furnish any bond.

**VI.   REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PROFESSIONALS**

If the insurance afforded by this **policy** to an **insured professional** terminates, either by nonrenewal or cancellation, the **insured professional** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the termination), to have issued a **Reporting Endorsement**, in the form then used by **us**, providing coverage for **professional incidents** occurring prior to the termination date and for which the **insured professional** is otherwise covered by this **policy**, but which are first **reported** on or after the termination date. This right must be exercised by an **insured professional** by making payment to **us** not later than thirty (30) days after the termination date.

Notwithstanding the foregoing, a **Reporting Endorsement** shall be issued in accordance with **our** rules on the effective date of the termination to an **insured professional** automatically and without payment of any additional premium in case the termination of insurance results from any of the following events during the **policy period**:

A.   the death of the **insured professional**;

B.   the **insured professional's** attainment of age 65, but only if the **insured professional** shall have been insured continuously by **us** for the preceding ten (10) years;

C.   the **permanent and total retirement** of the **insured professional**, but only if the **insured professional** shall have been insured continuously by **us** for the preceding five (5) years. The **insured professional** must submit an affidavit satisfactory to **us** in which the **insured professional** confirms an intention to permanently and totally retire from the practice of medicine or dentistry and agrees to pay a premium for the **Reporting Endorsement** if the **insured professional** recommences the practice of medicine or dentistry within five (5) years after delivering the affidavit;

D.   the permanent and total disability of the **insured professional** resulting in the inability to continue the professional activity or endeavor in which the **insured professional** was theretofore engaged, but only if the permanent and total disability:

1.   shall have continued without significant interruption for a term of not less than six months prior to termination; and

2.   shall have required regular treatment by a legally qualified medical or surgical practitioner other than the **insured professional**.

The foregoing provisions governing the issuance of a **Reporting Endorsement** at no premium charge in the event of items A through D above shall not alter, amend, modify, supersede, or in any way change the conditions and requirements for cancellation or non-renewal of the **policy** as provided by applicable law and otherwise described herein.  Following the cancellation or non-renewal of the **policy** in conformity with applicable law, if none of the conditions described in items A through D above are then satisfied, no **insured professional** shall have any right or expectancy to receive either (1) a **Reporting Endorsement** at no additional premium charge or (2) a refund of any premium previously paid by the **insured professional**.

**VII.   REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PARAMEDICAL EMPLOYEES**

If the insurance afforded by this **policy** to an **insured paramedical employee** terminates, either by nonrenewal or cancellation, the **insured paramedical employee** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the termination), to have issued a **Reporting Endorsement**, in the form then used by **us**, providing coverage for **professional incidents** occurring prior to the termination date and for which the **insured paramedical employee** is otherwise covered by this **policy**, but which are first **reported** on or after the termination date.  This right must be exercised by an **insured paramedical employee** by making payment to **us** not later than thirty (30) days after the termination date.

Notwithstanding the foregoing, if the insurance provided by this **policy** to any **insured paramedical employee** who shares coverage and limits with one or more **insured professionals** or **insured organizations** terminates, the **insured paramedical employee** shall continue to be covered for **professional incidents** that occured while the **insured paramedical employee** was employed by the **insured professional** or **insured organization** with whom he or she shares coverage and limits of liability, even though any such **professional incident** may not be **reported** until after the **insured paramedical employee** is no longer so employed, as long as the **professional incident** is first **reported** within the **policy period** applicable to the **insured professional** or **insured organization** with whom the **insured paramedical employee** shares coverage and limits.

## VIII.  REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED ORGANIZATIONS

If the insurance afforded by this **policy** to an **insured organization** terminates, either by nonrenewal or cancellation, the **insured organization** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the termination), to have issued a **Reporting Endorsement**, in the form then used by **us**, providing coverage for **professional incidents** occurring prior to the termination date and otherwise covered by this **policy**, but which are first **reported** on or after the termination date. This right must be exercised by an **insured organization** by making payment to **us** not later than thirty (30) days after the termination date.

Notwithstanding the foregoing, if the insurance provided by this **policy** to any **insured organization** that shares coverage and limits with one or more **insured professionals** terminates by reason of the dissolution or other termination of activity by the **insured organization**, the **insured organization** shall continue to be covered for **professional incidents** that occurred while the **insured organization** was active, even though any such **professional incident** may not be **reported** until after the **insured organization** ceases activity, as long as the **professional incident** is first **reported** within the **policy period** applicable to the **insured professionals** with whom the **insured organization** shares coverage and limits.

The **Reporting Endorsement** issued to an **insured organization** pursuant to this Section VIII shall provide coverage only for the **insured organization** and its **other covered employees**. The **Reporting Endorsement** shall not provide coverage to any **insured professional** or **insured paramedical employee**. **Insured professionals** and **insured paramedical employees** must obtain individual **Reporting Endorsements** as provided in Sections VI and VII above.

# GENERAL CONDITIONS

## I.  PREMIUM

All premiums shall be computed in accordance with **our** rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

## II.  RIGHTS AND DUTIES OF POLICYHOLDER

Unless named as an **insured** in the **Coverage Summary**, the **policyholder** is not an **insured** and shall have no coverage under this **policy**. However, the **policyholder** shall pay all premiums, receive all return premiums, provide any consents, including consent to settle, as may be required, and receive all notices and invoices under this **policy**. All provisions in the General Conditions that are applicable to the **insureds** shall also apply to the **policyholder**.

## III.  INSPECTION

**We** shall be permitted but not obligated to inspect any **insured**'s property and operations at any time. Neither **our** right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of any **insured** or others, to determine or warrant that the **insured's** property or operations are safe, healthful, or in compliance with any law, rule or regulation.

## IV.  INSUREDS' DUTIES

A.  If an **insured** wishes to **report** a **professional incident** that is not the subject of an **assertion of liability**, the **insured** must **report** the **professional incident** to us within 30 days of the date on which the  **professional incident** occurs. **We** will not provide coverage for any **professional incident reported** more than 30 days after the **professional incident** occurs unless the **insured** receives an **assertion of liability** with respect to the **professional incident** and provides a description of an oral **assertion of liability** or a copy of a written **assertion of liability** to **us** within the **policy period** or any applicable extended reporting period, in which

case the **professional incident** will be deemed **reported** as of the date on which **our** Claims Department receives the oral description or written copy of the **assertion of liability**.

B.   If any **insured** receives an **assertion of liability**, the **insured** shall immediately (1) **report** the **professional incident** that is the subject of the **assertion of liability** and (2) forward to **us** a copy of any written **assertion of liability**, including any demand, notice, summons or other process received by the **insured** or any representative of the **insured**.

C.   Each **Insured** shall cooperate with **us** and with legal counsel retained by **us** to defend any insured claim and shall, upon **our** request, assist in the conduct of suits, in the settlement of suits and claims, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **insured** because of injury with respect to which insurance is afforded under this **policy**, and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. No **insured** shall make any payment, assume any obligation, accept responsibility or provide information concerning the incident except to **us** or legal counsel retained by **us** for the **insured**.

D.   No **insured** shall alter, make any improper amendment to, destroy, or dispose of patient records or misrepresent or conceal facts pertinent to any incident, claim or suit.

E.   Each **insured** shall notify **us** in writing, within thirty (30) days after the occurrence of any one or more of the following:

1.   The **insured** undergoes treatment, or is advised by a physician, peer review committee, hospital credentialing committee or licensing agency to undergo treatment for alcohol, drug or other substance abuse, or for psychiatric illness;

2.   The **insured** suffers an illness or physical defect which impairs, or is likely to impair, the **insured's** ability to practice for a period of thirty (30) days or more;

3.   The **insured** is convicted of, or pleads guilty or no contest to, any felony or misdemeanor other than minor traffic offenses;

4.   The **insured's** license to practice medicine or dentistry, or to dispense medicine, or otherwise to deliver health care services of any type, is revoked, suspended, surrendered or limited in any respect, or the **insured** is called to appear before any licensing agency, peer review committee, professional standards review committee or credentialing committee in a proceeding seeking to terminate, revoke or limit the **insured's** employment or privilege to practice; or

5.   The **insured's** privilege to practice is terminated, revoked or limited by the **policyholder**, any hospital or other employer, whether by reason of termination of employment or otherwise.

If any **insured** fails to comply with any duties or obligations described in this Section IV, or otherwise breaches any term or condition of the **policy**, **our** obligations to the **insured** under the **policy** shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## V.   CLAIMS AGAINST US

No claim shall lie against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this **policy**, nor until the amount of any **insured's** obligation to pay **damages** shall have been finally determined either by judgment against an **insured** after actual trial or by written agreement of the **insured**, the claimant, and **us**. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this **policy** to the extent of the insurance afforded by this **policy**. No person or organization shall have any right under this **policy** to join **us** as a party to any action against an **insured** to determine the **insured's** liability, nor shall **we** be impleaded by an **insured** or any legal representative.

**Our** liability in any cause of action based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith shall not exceed the value of the **insured's** assets that are legally subject to attachment and levy by a judgment creditor after payment of all sums available through this **policy**. For purposes of this limitation, the "value of the **insured's** assets" shall be determined as of the date of the judgment rendered against the **insured** and shall not include the subject cause of action against **us**.

Bankruptcy or insolvency of any **insured** or any **insured's** estate shall not relieve **us** of any of **our** obligations hereunder.

Any claim against **us**, including without limitation any cause of action that relates to or arises in connection with this **policy**, or that is based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith, shall be brought in arbitration pursuant to Section XIII below.

## VI.   OTHER INSURANCE

A.   Except as provided in B or C below, or in any endorsement forming a part of this **policy**, this insurance is primary.

B.   With respect to loss arising from **peer review services** (other than **peer review services** performed on **our** behalf), the insurance provided by this **policy** is excess over any **other insurance**.

C.   Insurance provided to any **insured** by "Additional Limits of Liability," as specified in the **Coverage Summary**, shall apply only after exhaustion of the "Primary Limits of Liability" specified in the **Coverage Summary** for the **insured**. Insurance provided by Additional Limits of Liability shall be in excess of, and shall not contribute with, any **other insurance**. If Additional Limits of Liability are provided, **we** shall, after the Primary Limits of Liability have been exhausted, have no duty to defend any suit that any other insurer has a duty to defend.

D.   When both this insurance and **other insurance** apply to loss on the same basis, whether primary, excess or contingent, **we** shall not be liable under this **policy** for a greater proportion of the loss than that stated in the applicable contribution provision below:

1.   If all **other insurance** provides for contribution by equal shares, **we** shall not be liable for a greater proportion of the loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of loss is paid, and with respect to any amount of loss not so paid, the remaining insurers then continue to contribute in equal shares of the remaining amount of the loss until each insurer has paid its limit in full or the full amount of the loss is paid.

2.   If any **other insurance** does not provide for contribution by equal shares, **we** shall not be liable for a greater proportion of the loss than the applicable limit of liability under this **policy** for the loss bears to the total applicable limit of liability of all valid and collectible insurance against the loss.

## VII.   SUBROGATION

In the event of any payment under this **policy**, **we** shall be subrogated to any **insured**'s rights of recovery against any person or organization, and the **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure **our** subrogation rights. No **insured** shall do anything to prejudice **our** rights.

## VIII.   ASSIGNMENT

No **insured** may assign any interest in this **policy**. If, however, any **insured** shall die, the insurance provided by this **policy** shall apply to the **insured**'s legal representative, as an **insured**, but only while acting within the scope of the representative's duties.   No **insured** shall assign any cause of action against **us** that relates to or arises in connection with this **policy**, or that is based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith.

## IX.   CHANGES

The terms of this **policy** can only be changed by endorsement issued by **us** to form a part of this **policy**.

## X.   CANCELLATION

This **policy**, or coverage of any **insured** thereunder, may be canceled by the **policyholder** by mailing to **us** written notice stating when thereafter the cancellation shall be effective. This **policy**, or coverage of any **insured** thereunder, may be canceled by **us** by mailing to the **policyholder**, at the address shown in the **Coverage Summary**, written notice stating when the cancellation shall be effective, in accordance with applicable state law. The effective date and hour of cancellation stated in the notice shall become the end of the **policy period** for each **insured** to which the cancellation applies. Delivery of written notice either by the **policyholder** or by **us** shall be equivalent to mailing. If the **policyholder** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If **we** cancel, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

## XI.   RENEWAL OF POLICY

Neither the **policyholder** nor **we** have any obligation to renew this **policy**. Any renewal will be on the policy forms and endorsements then in effect. If **we** elect not to renew this **policy**, or coverage of any **insured** thereunder, we will provide notice of nonrenewal in accordance with applicable state law.

## XII.   FRAUD AND MISREPRESENTATIONS

By acceptance of this **policy**, the **policyholder** and all **insureds** agree that the statements in the **Coverage Summary**, in their respective applications or renewal applications for insurance, and in any other material submitted to **us** in order to secure insurance coverage, are their agreements and representations, that this **policy** is issued in

Health Care Professional Liability Policy
Claims-Made Form
©2005 ProAssurance Corporation

reliance upon the truth of such representations, and that this **policy** embodies all agreements existing between themselves and **us** or any of **our** agents relating to this insurance. In the event of any fraud, material misrepresentation or omission by any **insured** in any application, renewal application, or other material submitted to **us** to obtain insurance, this **policy** is void as to that **insured**, no coverage is afforded to that **insured**, and that **insured** shall have no right to purchase a **Reporting Endorsement.**

## XIII. ARBITRATION

Both the **insureds** and **we** acknowledge that this agreement evidences a transaction involving interstate commerce. Any dispute, claim or controversy arising out of, relating to or in connection with this **policy**, its subject matter or its negotiation, as to the existence, validity, interpretation, performance, non-performance, enforcement, operation, breach of contract, breach of warranty, continuance or termination thereof or any claim alleging fraud, deceit, or suppression of any material fact or breach of fiduciary duty shall be submitted to binding arbitration in accordance with Title 9 U.S.C. § 1 et seq. (the Federal Arbitration Act) and the Commercial Arbitration Rules of the American Arbitration Association. The arbitration proceedings may be initiated by either party by notice in writing to the other and to the American Arbitration Association. Each party to arbitration shall bear its own arbitration costs and expenses. However, in the event any party is required to file a petition or commence any other proceeding to compel arbitration, the arbitrator may award that party reasonable attorney's fees and costs incurred in having to bring such action. The arbitrator shall have the discretion to order a pre-hearing exchange of information by the parties, including, without limitation, production of requested documents, exchanging of summaries of testimony of proposed witnesses, and examination by deposition of parties. Notwithstanding contrary state law or regulation, the arbitrator shall have the authority to award any remedy or relief allowed under the provisions of the Federal Arbitration Act, including, without limitation, specific performance of any obligation created under this **policy**, the awarding of any damages available under applicable law, the issuance of an injunction, or the imposition of sanctions for abuse or frustration of the arbitration process. Any arbitration award shall be in writing and shall specify the factual and legal bases of the award. Judgment on the award rendered by the arbitrator shall be final and may be entered in any court having jurisdiction thereof. The provisions hereof shall be a complete defense to any suit, action, or proceeding in any federal, state or local court or before any administrative tribunal with respect to any dispute, claim or controversy arising under this **policy**.

If **we** maintain an office in the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located, the arbitration shall proceed in any county in which **we** maintain an office in that state. If **we** do not maintain an office in the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located, the arbitration shall proceed in the county that includes the capital of the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located.

## XIV. GOVERNING LAW

This **policy** shall be construed, and the legal relations between **us** and the **insureds** (and anyone claiming any interest in or rights under the **policy**) shall be determined, in accordance with the laws of the state in which the address of the **policyholder**, as specified in the **Coverage Summary**, is located, except that the Federal Arbitration Act (Title 9 of the United States Code) shall apply to the rights and obligations of the parties to submit any dispute, claim or controversy arising under this **policy** to arbitration, as provided in Section XIII above.

## XV. HEADINGS

The section headings contained herein are for convenience of reference only and are not intended to define, limit or describe the scope or intent of any provision in the **policy**.

---

Health Care Professional Liability Policy
Claims-Made Form
©2005 ProAssurance Corporation

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
# PROFESSIONAL LEGAL DEFENSE COVERAGE PART
# EXTENDED FORM

I.   **DEFINITIONS**

Terms appearing in **bold face print** shall have the meanings given in the Definitions section of the **policy**. In addition:

**Appointed counsel** means the attorney or firm of attorneys that, in **our** sole discretion, is either (1) appointed by **us** in writing, or (2) appointed by a **covered insured** with **our** prior written approval, to defend a **covered insured** in any **covered investigation**.

**Audit expenses** means fees and expenses of an accountant or other consultant engaged by a **covered insured** in connection with any **covered audit**. **Audit expenses** does not include any taxes, penalties or other expenses incurred by a **covered insured**.

**Covered audit** means any audit or review of billing or medical records undertaken by a **covered insured** in response to an investigation or proceeding commenced by any federal or state agency alleging violation by any **covered insured** of Medicare or Medicaid laws, rules or regulations relating to reimbursement for medical services.

**Covered insured** means any **insured physician** or **insured organization**.

**Covered investigation** means any one or more of the following:

A.   An investigation or proceeding commenced by the governmental or regulatory agency charged with determining whether the **covered insured** participated in the improper transfer of a patient ("dumping"), in violation of the Consolidated Omnibus Budget Reconciliation Act of 1986, as amended ("COBRA").

B.   An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with laws regulating Medicare or Medicaid (or other federal or state health care program offered as an alternative to Medicare or Medicaid), to determine whether the **covered insured** provided **professional services** improperly to a patient covered by Medicare or Medicaid (or other federal or state health care program offered as an alternative to Medicare or Medicaid).

C.   An investigation or proceeding commenced by a **utilization and quality control peer review organization**, but only at the level of such investigation or proceeding in which sanctions may be imposed on the **covered insured**.

D.   An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with regulations pertaining to the Clinical Laboratory Improvement Amendments of 1988 ("CLIA"), whether or not the **covered insured** was in violation of such regulations.

E.   An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with regulations pertaining to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") or the Omnibus Budget Reconciliation Act of 1990 ("OBRA '90"), whether or not the **covered insured** was in violation of such regulations.

F.   An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with the Occupational Safety and Health Administration ("OSHA") regulations pertaining to bloodborne pathogens, whether or not the **covered insured** was in violation of such regulations.

G.   A subpoena or request received by the **covered insured**, requiring the **covered insured** to testify in a trial or deposition, or to provide other discovery, other than as an expert witness, in connection with a legal proceeding (1) arising out of a **professional incident**, but (2) in which the **covered insured** is not a party.

H.   A claim or investigation instituted by a patient of the **covered insured** alleging sexual misconduct or harassment by the **covered insured** in the course of providing **professional services** to such patient.

I.    A claim or investigation instituted by a patient of the **covered insured** alleging errors or omissions by the **covered insured** in billing statements for **professional services** rendered to such patient.

J.    A disciplinary proceeding initiated by a licensure commission, board of ethics or similar professional body, which accuses a **covered insured** of, or investigates an accusation that a **covered insured** engaged in, improper or unprofessional conduct in the course of such **covered insured's** medical practice.

K.    An investigation or proceeding commenced by any federal or state agency alleging violation by any **covered insured** of Medicare or Medicaid laws, rules or regulations relating to reimbursement for medical services.

**Criminal prosecution** means any governmental action seeking enforcement of criminal laws, including offenses for which conviction could result in imprisonment.

**Legal expenses** means the normal, reasonable and customary charges of the **appointed counsel** in defending a **covered insured** in any **covered investigation**, including reasonable out-of-pocket charges incurred by such **appointed counsel**. **Legal expenses** does not include damages, fines, judgments or penalties that may be assessed in any **covered investigation** or paid in any settlement thereof, or expenses incurred in the defense of any **criminal prosecution**.

**Utilization and quality control peer review organization** means a utilization and quality control peer review organization under contract with the U. S. Department of Health and Human Services to review the professional activities of physicians and other health care practitioners and providers under the federal Social Security Act, as amended, while acting within the scope of its duties under such contract.

## II.   INSURING AGREEMENT

We will pay on behalf of any **covered insured** the **legal expenses** incurred by such **covered insured** in the course of a **covered investigation**, provided that:

A.    the **professional incident** giving rise to the **covered investigation** occurs after the **retroactive date** applicable to such **covered insured** and prior to the termination of the **policy**;

B.    the **covered insured** first receives written notice of the commencement of the **covered investigation** within the **policy period**; and

C.    the **covered investigation** is first **reported** during the **policy period**.

We will pay on behalf of any **covered insured** the **audit expenses** incurred by such **covered insured** in the course of a **covered audit**, provided that:

A.    the acts or omissions of the **covered insured** giving rise to the **covered audit** occurred after the **retroactive date** applicable to such **covered insured** and prior to the termination of the **policy**;

B.    formal written notice of the investigation or proceeding to which the **covered audit** relates is first received by the **covered insured** during the **policy period**; and

C.    such investigation or proceeding is first **reported** during the **policy period**.

We will pay **legal expenses** contemplated herein (1) directly to **appointed counsel** if **we** elect to appoint such counsel or (2) to the **covered insured** upon presentation of **appointed counsel's** invoices and evidence of payment by the **covered insured** if **we** elect to reimburse costs of **appointed counsel** selected by the **covered insured**.

## III.   PERSONS INSURED

Only **covered insureds** are insured under this Coverage Part.

## IV.   LIMIT OF LIABILITY

The limit of liability specified in the **Coverage Summary** as "Each Covered Investigation" is the total of **our** liability to each **covered insured** resulting from any one **covered investigation**. The limit of liability specified in the **Coverage Summary** as "Each Policy Period" is the total limit of **our** liability to all **covered insureds** resulting from all **covered investigations** which are first **reported** during the **policy period**.

## V.   REPORTING ENDORSEMENT PROVISIONS

If a **Reporting Endorsement** is issued for a **covered insured**, the period for **reporting covered investigations** under this Coverage Part shall be automatically extended for the duration of the **Reporting Endorsement**, but only for the **reporting** of **covered investigations** which are otherwise covered hereunder. Termination or cancellation of

the **Reporting Endorsement** shall automatically terminate the period for **reporting covered investigations** under this Coverage Part.

VI.   **DEDUCTIBLE**

Coverage for the **covered investigations** described in Items H through K of the definition of **covered investigation** is subject to a deductible of One Thousand Dollars ($1,000). For each such **covered investigation**, each **covered insured** shall be required to pay **legal expenses** in an amount equal to the deductible before **our** obligation to pay **legal expenses** arises, and **our** limit of liability will be reduced by the amount of the deductible. In addition, for each **covered audit**, each **covered insured** shall be required to pay **audit expenses** in an amount equal to the deductible before **our** obligation to pay **audit expenses** arises, and **our** limit of liability will be reduced by the amount of the deductible. The **policyholder** shall pay the deductible within thirty (30) days after written demand. The **policyholder** agrees to pay all costs, including attorneys' fees and court costs, incurred by **us** in collecting any deductible.

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
## PART-TIME ENDORSEMENT

**POLICYHOLDER: Wagoner Medical Center, P.C.**

**ENDORSEMENT EFFECTIVE DATE: 3/1/2007**

**POLICY NUMBER: MP49652**

In consideration of a reduced premium, the **insured professional** listed below agrees to limit his or her practice to a range of average weekly hours pre-defined by the Company as commensurate with the premium reduction granted. The **insured professional** further agrees to provide **us** with evidence verifying the extent of the **insured professional's** current professional practice.

Don J Wagoner, M.D.                    restricted to 25 hours or less per week.

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
# PART-TIME ENDORSEMENT

**POLICYHOLDER: Wagoner Medical Center, P.C.**

**ENDORSEMENT EFFECTIVE DATE: 3/1/2007**

**POLICY NUMBER: MP49652**

In consideration of a reduced premium, the **insured professional** listed below agrees to limit his or her practice to a range of average weekly hours pre-defined by the Company as commensurate with the premium reduction granted. The **insured professional** further agrees to provide **us** with evidence verifying the extent of the **insured professional's** current professional practice.

Marilyn L Wagoner, M.D.          Restricted to 35 hours or less per week.

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
# SHARED LIMIT ENDORSEMENT

This endorsement amends the Professional Liability Coverage Part of the **policy** to establish the coverage limits for any person or entity named as an **insured** in the **Coverage Summary** and for whom no numeric limit appears in the **Coverage Summary's** table depicting limits of liability. For purposes of this endorsement, those **insureds** for whom no numeric limit appears in the **Coverage Summary's** table depicting limits of liability will be referred to as "Sharing Insureds." For purposes of this endorsement, those **insureds** for whom numeric limits appear in the **Coverage Summary's** table depicting limits of liability will be referred to as "Separate Limit Insureds."

Each Sharing Insured shall not have its own separate insurance coverage, but shall share in the coverage of the Separate Limit Insureds, subject to the provisions of this endorsement and all terms and conditions of the **policy**. Any **damages** covered by the **policy** and paid on behalf of the Sharing Insureds shall be applied against and erode the coverage applicable and available to the Separate Limit Insureds, in the order and manner **we** deem appropriate; provided however:

A.     **We** will not pay **damages** and will not provide a defense for vicarious liability of any Sharing Insured arising out of any act or omission of any person who is either employed by, under contract with, or otherwise formally affiliated with any **insured** unless the person who committed the alleged act or omission is an **insured** under the **policy**; and

B.     **We** will not pay **damages** and will not provide a defense for vicarious liability of any Sharing Insured arising out of any act or omission of any person who was formerly employed by, under contract with, or in any way formally associated with an **insured** unless the person who committed the alleged act or omission (1) was an **insured** under the **policy** at the time of the alleged act or omission and (2) has applicable primary coverage in an amount at least equal to the average of the limits available to all **insureds** under this **policy**. In any event, and notwithstanding any other provision in the **policy**, coverage for the vicarious liability of any Sharing Insured shall be excess over any valid and collectible insurance available to the person whose acts or omissions are the source of liability to the Sharing Insured, and coverage under this **policy** will not contribute prior to exhaustion of the coverage limits available under any such other valid and collectible insurance to the person who committed the act or omission.

If **damages** covered by the **policy** are awarded, or a settlement is made with **our** consent, against one or more Sharing Insureds and one or more Separate Limit Insureds, the total insurance coverage available to the Sharing Insureds and the Separate Limit Insureds combined shall not exceed the limit of **our** liability under the **policy** for the Separate Limit Insureds who are parties to the award or settlement. In such a case, if a Deductible applies to one or more Separate Limit Insureds, the total Deductible amount to be paid by the Sharing Insureds and the Separate Limit Insureds combined shall equal the sum of the Deductibles applicable to the Separate Limit Insureds who are parties to the award or settlement.

If **damages** covered by the **policy** are awarded, or a settlement is made with **our** consent, against one or more Sharing Insureds, but not against any Separate Limit Insureds, the insurance coverage available to all Sharing Insureds combined shall equal the numeric average of the limits of liability designated on the **Coverage Summary** as "each professional incident" for the Separate Limit Insureds. In such a case, if a Deductible applies to one or more Separate Limit Insureds, the Deductible amount to be paid by all Sharing Insureds combined shall equal the average of the Deductibles applicable to the Separate Limit Insureds.

In no event will **we** pay any **damages** or provide a defense to any Sharing Insured once the "annual aggregate" limit of **our** liability has been paid on behalf of the Separate Limit Insureds.

No Sharing Insured shall have the right to purchase a **Reporting Endorsement** upon cancellation, non-renewal, or expiration of the coverage provided to the Sharing Insured.

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
# RENEWAL ENDORSEMENT

**POLICYHOLDER: Wagoner Medical Center, P.C.**

**POLICY NUMBER: MP49652**

**RENEWAL DATE: 3/1/2007**

This renewal of the **policy** is offered under certain conditions and in reliance upon the initial application and any subsequent applications each **insured** and the **policyholder** provided to **us.**

Further, as a condition to renewal of the **policy**, the **policyholder** and each **insured** represent and warrant that, except as otherwise disclosed to **us** in writing:

A. no **insured** has had any state medical license, hospital privileges or license to prescribe or dispense medicine denied, suspended, restricted or revoked, nor has any such **insured** voluntarily surrendered any such license or privileges for any reason;

B. no **insured** has (1) undergone psychiatric treatment, (2) been treated for alcohol or narcotics addiction, (3) had any chronic illness or physical defect, (4) been convicted of any misdemeanor or felony other than minor traffic violations, (5) appeared before any Professional Standards/Quality Assurance Review Committee or (6) appeared before any Board of Professional Examiners or Licensure Commission; and

C. no **insured** has changed the scope of his or her professional practice from that previously disclosed to **us** in his or her applications for insurance.

If, at any time while the **policy** is in effect, any of the events described in paragraph A, B, or C occur, the **policyholder** agrees to notify **us** within thirty (30) days of its occurrence, and to provide such additional information as **we** may require.

The **policyholder** acknowledges that information concerning any of the events described above is material to **our** agreement to provide insurance under the **policy** on the basis, and for the premium, stated in the **Coverage Summary**.

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
## CLAIMS-MADE FORM
## INDIANA STATE AMENDATORY ENDORSEMENT

I.    Item X. CANCELLATION of the General Conditions, form PRA-HCP-030 or PRA-HCP-040, is hereby deleted and replaced by the following:

This **policy**, or coverage of any **insured** thereunder, may be canceled by the **policyholder** by mailing to **us** written notice stating when thereafter the cancellation shall be effective. If the **policy** has been in effect for 90 days or less, **we** may cancel the **policy** by mailing to the **policyholder**, at the address shown in the **Coverage Summary**, written notice of cancellation at least:

    a.    10 days before the effective date of cancellation if **we** cancel for nonpayment of premium;

    b.    20 days before the effective date of cancellation if the **policyholder** has perpetrated a fraud or material misrepresentation on **us**; or

    c.    30 days before the effective date of cancellation if **we** cancel for any other reason.

If the **policy** has been in effect for more than 90 days, or is a renewal of a policy **we** issued, **we** may cancel the **policy** only for one or more of the reasons listed below, by mailing to the **policyholder**, at the address shown in the **Coverage Summary**, written notice of cancellation at least:

    a.    10 days before the effective date of cancellation if **we** cancel for nonpayment of premium;

    b.     ' 20 days before the effective date of cancellation if the **policyholder** has perpetrated a fraud or material misrepresentation on us; or

    c.    45 days before the effective date of cancellation if:

        (1)    There has been a substantial change in the scale of risk covered by the **policy**;

        (2)    Reinsurance of the risk associated with the **policy** has been cancelled; or

        (3)    Any **insured** does not comply with our safety recommendations.

Notice of cancellation will state the effective date of cancellation. The effective date and hour of cancellation stated in the notice shall become the end of the **policy period** for each **insured** to which the cancellation applies. Delivery of written notice either by the **policyholder** or by **us** shall be equivalent to mailing. Notice given by or on behalf of any **insured** to any of our authorized agents in Indiana, with particulars sufficient to identify such **insured** and the **policy**,shall be considered to be notice to **us**.

If the **policyholder** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If **we** cancel, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

II.    Item XI. RENEWAL OF POLICY of the General Conditions, form PRA-HCP-030 or PRA-HCP-040, is hereby deleted and replaced by the following:

Neither the **policyholder** nor **we** have any obligation to renew the **policy**. Any renewal will be on the policy forms and endorsements then in effect. If **we** elect not to renew the **policy**, or coverage of any **insured** thereunder, **we** will mail or deliver to the **policyholder**, at the address shown in the **Coverage Summary**, written notice of nonrenewal at least forty-five (45) days prior to the expiration of the **policy**. If notice is mailed, proof of mailing will be sufficient proof of notice.

III.    Item II. INVESTIGATION, DEFENSE AND SETTLEMENT of the Professional Liability Coverage Part, form PRA-HCP-030 or PRA-HCP-040, is hereby deleted and replaced by the following:

**We** have the right to investigate any **professional incident** that **we** deem expedient. **We** have the right and duty to defend any suit against an **insured** seeking **damages** that, if awarded, would be covered by this **policy**, even if any of the allegations of the suit are groundless, false or fraudulent, and **we** have the right, but not the duty, to defend any claim against an **insured** seeking such **damages**. **We** have the right to select defense counsel in any claim or suit defended by **us**. **We** will not pay fees and expenses of any legal counsel not retained by **us**. If a claim or suit is

---

asserted against more than one **insured**, **we** may retain the same legal counsel to defend all **insureds**, consistent with counsel's ethical duties to avoid conflicts of interest.

**We** have the right to settle any claim or suit against an **insured** seeking **damages** that, if awarded, would be covered by this **policy**; provided that no settlement will be made without the written consent of the **policyholder** unless (a) the **policyholder** cannot be located and contacted after reasonable efforts are made by **us**; or (b) the settlement is made after a verdict or judgment has been rendered against an **insured**.

**We** may, however, settle without the consent of the **insured** any claim or suit filed in accordance with the provisions of Indiana Code 27-1-13-7 for which a medical review panel as established by Indiana Code 34-18-10-1 has issued a unanimous opinion that the **insured** failed to comply with the appropriate standard of care as charged in the claim or suit.

**We** shall not be obligated to take an appeal from any judgment against an **insured**.

**We** shall not be obligated to pay **damages** or to defend any suit after the applicable limit of liability has been exhausted.

IV. Section VI. REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PARAMEDICALS of the Professional Liability Coverage Part, form PRA-HCP-040, is amended by adding the following:

Notwithstanding the foregoing, a **Reporting Endorsement** shall be issued in accordance with **our** rules on the effective date of the termination to an **insured paramedical** automatically and without payment of any additional premium in case the termination of insurance results from any of the following events during the **policy period**:

A. the death of the **insured paramedical**;

B. the permanent and total retirement of the **insured paramedical** from practice as a health care provider, but only if the **insured paramedical** shall have been insured continuously by **us** for the preceding five (5) years. The **insured paramedical** must submit an affidavit satisfactory to **us** in which the **insured paramedical** confirms an intention to permanently and totally retire from practice as a health care provider and agrees to pay a premium for the **Reporting Endorsement** if the **insured paramedical** recommences practice as a health care provider within five (5) years after delivering the affidavit;

C. the permanent and total disability of the **insured paramedical** resulting in the inability to continue the professional activity or endeavor in which the **insured paramedical** was theretofore engaged, but only if the permanent and total disability:

1. shall have continued without significant interruption for a term of not less than six months prior to termination; and

2. shall have required regular treatment by a legally qualified medical or surgical practitioner other than the **insured paramedical**.

The foregoing provisions governing the issuance of a **Reporting Endorsement** at no premium charge in the event of items A through C above shall not alter, amend, modify, supersede, or in any way change the conditions and requirements for cancellation or non-renewal of the **policy** as provided by applicable law and otherwise described herein. Following the cancellation or non-renewal of the **policy** in conformity with applicable law, if none of the conditions described in items A through C above are then satisfied, no **insured paramedical** shall have any right or expectancy to receive either (1) a **Reporting Endorsement** at no additional premium charge or (2) a refund of any premium previously paid by the **insured paramedical**.

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
## CLAIMS-MADE PLUS<sup>SM</sup> ENDORSEMENT

**POLICYHOLDER: Wagoner Medical Center, P.C.**

**ENDORSEMENT EFFECTIVE DATE: 3/1/2007**

**POLICY NUMBER: MP49652**

I.    Item VI. REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PROFESSIONALS, of the Professional Liability Coverage Part, form PRA-HCP-030, is hereby amended as follows:

**VII.   REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PROFESSIONALS**

If the insurance afforded by this **policy** to an **insured professional** terminates, either by nonrenewal or cancellation, the **insured professional** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the termination), to have issued a **Reporting Endorsement**, in the form then used by **us**, providing coverage for **professional incidents** occurring prior to the termination date and for which the **insured professional** is otherwise covered by this **policy**, but which are first **reported** on or after the termination date. This right must be exercised by an **insured professional** by making payment to **us** not later than thirty (30) days after the termination date.

Notwithstanding the foregoing, a **Reporting Endorsement** shall be issued in accordance with **our** rules on the effective date of the termination to an **insured professional** automatically and without payment of any additional premium in case the termination of insurance results from any of the following events during the **policy period**:

A.    the death of the **insured professional**;

B.    the **insured professional's** attainment of age 65, but only if the **insured professional** shall have been insured continuously by **us** for the preceding ten (10) years;

C.    the **permanent and total retirement** of the **insured professional**. The **insured professional** must submit an affidavit satisfactory to **us** in which the **insured professional** confirms an intention to permanently and totally retire from the practice of medicine or dentistry and agrees to pay a premium for the **Reporting Endorsement** if the **insured professional** recommences the practice of medicine or dentistry within five (5) years after delivering the affidavit;

D.    the **permanent and total disability** of the **insured professional** resulting in the inability to continue the professional activity or endeavor in which the **insured professional** was theretofore engaged, but only if the permanent and total disability:

1.    shall have continued without significant interruption for a term of not less than six months prior to termination; and

2.    shall have required regular treatment by a legally qualified medical or surgical practitioner other than the **insured professional**.

E.    the total relocation of the **insured professional's** practice outside the State of Indiana.   The **insured professional** must submit an affidavit satisfactory to **us** in which the **insured professional** confirms an intention to permanently and totally relocate his or her practice from the State of Indiana, including new place of employment, and agrees to pay a premium for the **Reporting Endorsement** if the **insured physician** should return to the practice of medicine in the State of Indiana within three years after delivering the affidavit.

The foregoing provisions governing the issuance of a **Reporting Endorsement** at no premium charge in the event of items A through E above shall not alter, amend, modify, supersede, or in any way change the conditions and requirements for cancellation or non-renewal of the **policy** as provided by applicable law and otherwise described herein.  Following the cancellation or non-renewal of the **policy** in conformity with applicable law, if none of the conditions described in items A through E above are then satisfied, no **insured professional** shall have any right or expectancy to receive either (1) a **Reporting Endorsement** at no additional premium charge or (2) a refund of any premium previously paid by the **insured professional**.

All Other Terms and Conditions Remain Unchanged.

# CERTIFICATE OF INSURANCE

TO:  INDIANA PATIENT'S COMPENSATION FUND
     MEDICAL MALPRACTICE DIVISION
     311 W. WASHINGTON ST. STE.300
     INDIANAPOLIS, IN 46204-2787

Cancellation:
Return/Additional Surcharge
Credit

Surcharge    Effective Date
$_____    _____
$_____    _____
_____%    _____

| Policy No.: MP49652 AO730669 | Occurrence | | |
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |

| Health Care Provider: Wagoner Medical Center, LLC | | |
| Medical License No.: | Including employees  X | Excluding employees |

Address (Street, City, State, Zip):
605 E. 7th Street
Burlington, IN 46915

County: Carroll

Coverage Dates:

From: 3/1/2007 To: 3/1/2008

Classification Number: 80999

Limits of Liability

$250,000       $750,000
per occurrence   annual aggregate

Premium Amount: $   100

Surcharge Amount: $   110

Penalty Amount:

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute,  for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Ten Percent (110%) of the premium for non-physician or non-hospital providers.  Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change. Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2007 at the insurance office of The Medical Assurance Company, Inc..

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

# CERTIFICATE OF INSURANCE

TO: INDIANA PATIENT'S COMPENSATION FUND
MEDICAL MALPRACTICE DIVISION
311 W. WASHINGTON ST. STE.300
INDIANAPOLIS, IN 46204-2787

Cancellation:
Return/Additional Surcharge
Credit

Surcharge     Effective Date
$_____       _____
$_____       _____
_____ %      _____

| Policy No.: MP49652 QP625307 | Occurrence | | |
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |

| Health Care Provider: Wagoner Medical Center, P.C.<br><br>Medical License No.: | Including employees | X | Excluding employees |

| Address (Street, City, State, Zip):<br>605 E. 7th Street<br>Burlington, IN 46915 | County: Carroll |

| Coverage Dates:<br><br>From: 3/1/2007 To: 3/1/2008 | Classification Number: 80999 |

| Limits of Liability<br><br>$250,000          $750,000<br>per occurrence    annual aggregate | Premium Amount: $  100<br><br>Surcharge Amount: $  110<br><br>Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Ten Percent (110%) of the premium for non-physician or non-hospital providers.  Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2007 at the insurance office of The Medical Assurance Company, Inc..

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

*Pac-3/State Form 2713R5*
*Revised 4/17/05*

163

# CERTIFICATE OF INSURANCE

TO:  INDIANA PATIENT'S COMPENSATION FUND
     MEDICAL MALPRACTICE DIVISION
     311 W. WASHINGTON ST. STE.300
     INDIANAPOLIS, IN 46204-2787

Cancellation:
Return/Additional Surcharge
Credit

Surcharge    Effective Date
$
$
_____ %

| | | |
|---|---|---|
| Policy No.: MP49652 HQ621367 | Occurrence | |
| | Claims Made | X |
| | Reporting Endors. | Retro Date: 3/1/2004 |
| | | Retro Date: |

Health Care Provider: Don J. Wagoner, MD and Marilyn L. Wagoner, MD, PC

Medical License No.: 01019897

Including employees    X      Excluding employees

Address (Street, City, State, Zip):
605 E. 7th Street
Burlington, IN 46915

County: Carroll

Coverage Dates:

From: 3/1/2007 To: 3/1/2008

Classification Number: 80999

Limits of Liability

$250,000         $750,000
per occurrence     annual aggregate

Premium Amount: $   100

Surcharge Amount: $   110

Penalty Amount:

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Ten Percent (110%) of the premium for non-physician or non-hospital providers. Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change. Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2007 at the insurance office of The Medical Assurance Company, Inc..

*Lois J. Wyrick*
Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

# CERTIFICATE OF INSURANCE

TO: INDIANA PATIENT'S COMPENSATION FUND
MEDICAL MALPRACTICE DIVISION
311 W. WASHINGTON ST. STE.300
INDIANAPOLIS, IN 46204-2787

|  | Surcharge | Effective Date |
|---|---|---|
| Cancellation: | $ | |
| Return/Additional Surcharge | $ | |
| Credit  Part-Time  X | 50% | 03/01/2007 |

| Policy No.: MP49652 DR623327 | Occurrence | | |
|---|---|---|---|
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |

| Health Care Provider: Don J Wagoner, M.D. | | |
|---|---|---|
| Medical License No.: 01019897 | Including employees   X | Excluding employees |

| Address (Street, City, State, Zip): | County: Carroll |
|---|---|
| 605 E. 7th Street | |
| Burlington, IN 46915 | |

| Coverage Dates: | Classification Number: 80421 |
|---|---|
| From: 3/1/2007 To: 3/1/2008 | |

| Limits of Liability | Premium Amount: $ 7,823 |
|---|---|
| $250,000          $750,000 | Surcharge Amount: $ 3,597 |
| per occurrence     annual aggregate | Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute,  for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Ten Percent (110%) of the premium for non-physician or non-hospital providers.   Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change.  Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2007 at the insurance office of The Medical Assurance Company, Inc..

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

*Pac-3/State Form 2713R5*
*Revised 4/17/05*

165

# CERTIFICATE OF INSURANCE

TO: INDIANA PATIENT'S COMPENSATION FUND
    MEDICAL MALPRACTICE DIVISION
    311 W. WASHINGTON ST. STE.300
    INDIANAPOLIS, IN 46204-2787

| | Surcharge | Effective Date |
|---|---|---|
| Cancellation: | $ _____ | _____ |
| Return/Additional Surcharge | $ _____ | _____ |
| Credit Part-Time    X | 25% | 03/01/2007 |

| Policy No.: MP49652 GU623328 | Occurrence | | |
|---|---|---|---|
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |

| Health Care Provider: Marilyn L Wagoner, M.D. | | | |
|---|---|---|---|
| Medical License No.: 01019503 | Including employees    X | Excluding employees | |

| Address (Street, City, State, Zip): | County: Carroll |
|---|---|
| 605 E. 7th Street | |
| Burlington, IN 46915 | |

| Coverage Dates: | Classification Number: 80420 |
|---|---|
| From: 3/1/2007 To: 3/1/2008 | |

| Limits of Liability | Premium Amount: $ 5,316 |
|---|---|
| $250,000      $750,000 | Surcharge Amount: $ 2,997 |
| per occurrence      annual aggregate | Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Ten Percent (110%) of the premium for non-physician or non-hospital providers. Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change. Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2007 at the insurance office of The Medical Assurance Company, Inc..

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

# CERTIFICATE OF INSURANCE

TO:  INDIANA PATIENT'S COMPENSATION FUND
· MEDICAL MALPRACTICE DIVISION
   311 W. WASHINGTON ST. STE.300
   INDIANAPOLIS, IN 46204-2787

| | Surcharge | Effective Date |
|---|---|---|
| Cancellation: | $ | |
| Return/Additional Surcharge | $ | |
| Credit | % | |

| | | |
|---|---|---|
| Policy No.: MP49652 C15193 | Occurrence | |
| | Claims Made | X | Retro Date: 3/1/2004 |
| | Reporting Endors. | | Retro Date: |

| | | |
|---|---|---|
| Health Care Provider: Silvio J. Sanchez, M.D. | | |
| Medical License No.: 01057014 | Including employees      X | Excluding employees |

| | |
|---|---|
| Address (Street, City, State, Zip): 605 E. 7th Street Burlington, IN 46915 | County: Howard |

| | |
|---|---|
| Coverage Dates: From: 3/1/2007 To: 3/1/2008 | Classification Number: 80284 |

| | |
|---|---|
| Limits of Liability<br><br>$250,000                      $750,000<br>per occurrence        annual aggregate | Premium Amount: $ 6,313<br><br>Surcharge Amount: $ 7,194<br><br>Penalty Amount: |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and with an annual aggregate of Seven Hundred and Fifty Thousand ($750,000) Dollars as required, unless otherwise mandated by statute, for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act Indiana Code 34-18-1-1 et seq.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at the appropriate Class rate for the named specialty, is based upon the published calculation for a hospital, or is One Hundred Ten Percent (110%) of the premium for non-physician or non-hospital providers.  Said Company also agrees to collect and remit the rated surcharge or a minimum surcharge of one hundred ($100.00) dollars, whichever is larger, for each year of the period of coverage to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within thirty (30) days and not more than ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, not less than thirty (30) days prior to such change. Notice shall be considered to have been given upon placing same in the United States Mail by First Class Certified Mail, a copy of which shall have been mailed to the health care provider.

Dated this day of March 1, 2007 at the insurance office of The Medical Assurance Company, Inc..

*Lois J. Wyrick*

Authorized Signature

Lois J. Wyrick
Regional Vice President, Underwriting

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
# CHANGE IN COVERAGE SUMMARY ENDORSEMENT

**POLICYHOLDER:** Wagoner Medical Center, P.C.
605 E. 7th Street
Burlington, IN 46915

**ENDORSEMENT EFFECTIVE DATE: 9/17/2007**

**POLICY NUMBER: MP49652**

The total PCF charge (or credit) resulting from the changes herein is $.00

The **Coverage Summary** for the above-numbered **policy** is hereby amended as follows:

It is understood and agreed that the policy is amended to add Thomas K. Hewitt, P.A., effective 9/17/2007.

The following are **insureds** under the **policy**, with the following respective limits of liability:

Primary Limits of Liability

| Name | Retroactive Date | Each Professional Incident | Annual Aggregate | Deductible | Premium |
|------|------|------|------|------|------|
| INSURED ORGANIZATIONS | | | | | |
| Don J. Wagoner, MD and Marilyn L. Wagoner, MD, PC | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| Wagoner Medical Center, P.C. | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| Wagoner Medical Center, LLC | 3/1/2004 | $250,000 | $750,000 | N/A | $100 |
| | | | | | |
| INSURED PROFESSIONALS | | | | | |
| Don J Wagoner, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $7,660 |
| Marius-Julian Nefliu, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $5,794 |
| Marilyn L Wagoner, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $5,269 |
| Silvio J. Sanchez, M.D. | 3/1/2004 | $250,000 | $750,000 | N/A | $6,168 |
| Saira M. Dar, MD | 7/1/2005 | $250,000 | $750,000 | N/A | $4,572 |
| | | | | | |
| INSURED PARAMEDICAL EMPLOYEES | | | | | |
| Thomas K. Hewitt, P.A. | 9/17/2007 | ** | ** | N/A | |
| Gary M. Hartman, P.A. | 3/1/2004 | ** | ** | N/A | |
| John M. Thomas, P.A. | 3/1/2004 | ** | ** | N/A | |

** This **insured** does not have individual or separate coverage.  Refer to the Shared Limit Endorsement.

By: _____

Change in Coverage Summary Endorsement
©2005 ProAssurance Corporation

Authorized Representative

169