UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


PROASSURANCE INDEMNITY )
COMPANY, INC., )
 )
             Plaintiff, )
 )          No. 1:15-cv-01389-JMS-MPB
        vs. )
 )
DONALD J. WAGONER, )
MARILYN L. WAGONER, )
WAGONER MEDICAL CENTER, LLC, )
WAGONER MEDICAL CENTER, P.C., )
D.J. & M.L. WAGONER, INC., )
ROBERT A. BREWER, )
GARY M. HARTMAN, )
THOMAS K. HEWITT, )
JOHN M. THOMAS, )
STEPHEN  ROBERTSON as the )
Administrator of the Indiana Patient's )
Compensation Fund, )
LINDA S. RICHARDS LPN, )
 )
             Defendants. )
_____ )
 )
STEPHEN  ROBERTSON as the )
Administrator of the Indiana Patient's )
Compensation Fund, )
 )
             Cross-Claimant, )
 )
        vs. )
 )
D.J. & M.L. WAGONER, INC., )
GARY M. HARTMAN, )
JOHN M. THOMAS, )
DONALD J. WAGONER, )
MARILYN L. WAGONER, )
WAGONER MEDICAL CENTER, LLC, )
WAGONER MEDICAL CENTER, P.C., )
 )
             Cross-Defendants. )

**ORDER**

In the matter before the Court, Plaintiff ProAssurance Indemnity Company, Inc. ("ProAssurance") seeks to rescind and have the Court declare various professional medical liability insurance policies void *ab initio* under Indiana law. The policies span from 2001 to 2013, during which time ProAssurance alleges that several Defendants made material misrepresentations and omissions related to the illegal prescription of scheduled controlled substances. The Defendants consist of physicians, physician assistants, a registered nurse, various medical centers, and the Administrator of the Indiana Patient's Compensation Fund.

ProAssurance filed a Motion for Summary Judgment on its rescission claim, seeking a declaration that the policies are void and that ProAssurance has no obligation to defend against pending and future claims or to pay judgments or damages that may be assessed against the named defendants. [Filing No. 174.]

Two Cross-Motions for Summary Judgment were filed: the first by Defendants Donald Wagoner, Marilyn Wagoner, Wagoner Medical Center, LLC, Wagoner Medical Center, P.C., D.J. & M.L. Wagoner, Inc., and Linda Richards, (collectively, the "Wagoner Defendants"), [Filing No. 185]; and the second by Defendant John Thomas, [Filing No. 187].

ProAssurance also filed a Motion to Strike certain portions of the Wagoner Defendants' and Mr. Thomas' reply briefing, [Filing No. 200], and a Motion for Leave to Supplement its Summary Judgment Exhibits, [Filing No. 204].

Each of the Motions is ripe for the Court's review.

# I.

## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d

892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

"The existence of cross-motions for summary judgment does not . . . imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). Specifically, "[p]arties have different burdens of proof with respect to particular facts, different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." *Id.* at 648.

# II.
## BACKGROUND

The basic facts of this case are not in dispute and for the purposes of efficiency and clarity, the Court will only discuss facts relevant to its decision.[1]

Between 2001 and 2013, ProAssurance issued numerous medical professional liability policies (the "Policies") to various Defendants. [Filing No. 1-2; Filing No. 1-3; Filing No. 1-4; Filing No. 1-5.] Each of the Policies contained a provision providing the following statement, with minor modifications:

**XII. FRAUD AND MISREPRESENTATIONS**

By acceptance of the **policy**, all **insureds** agree that the statements in the **Coverage Summary** and in their respective applications or renewal applications for insurance are their agreements and representations, that the **policy** is issued in reliance upon the truth of such representations, and that the **policy** embodies all agreements existing between themselves and **us** or any of **our** agents relating to this insurance. In the event of any fraud, material misrepresentation or omission by any **insured** in his application or renewal application for insurance, the **policy** is void as to the party committing such fraud, material misrepresentation or omission, and no coverage is afforded to such party hereby.

[Filing No. 1-2 at 8; Filing No. 1-2 at 24; Filing No. 1-2 at 43-44; Filing No. 1-3 at 9; Filing No. 1-3 at 33; Filing No. 1-3 at 63-64; Filing No. 1-3 at 90-91; Filing No. 1-4 at 13-14; Filing No. 1-4

---

[1] Over forty pages of ProAssurance's Motion for Summary Judgment and response briefs are devoted to reciting the facts and refuting Defendants' characterization of the facts. Although the Court acknowledges ProAssurance's extensive effort to cite to supporting facts, there is no need to cite to each and every place in the record tangentially pertaining to a specific point. Per Local Rule 56-1(e), the purpose of citing to supporting facts is to allow the Court to find relevant information in the supporting evidence. In this case, the Court's review of the briefing was made unnecessarily cumbersome by reviewing citations to hundreds of pages of supporting evidence for each factual assertion made. *See, e.g.*, Filing No. 175 at 9 (containing 10 lines of citations citing to nearly 150 different pages in the record for the proposition that "As part of his guilty plea, Donald Wagoner also admitted the facts in the Affidavit For Probable Cause, which indicated that his and WMC's criminal distribution of scheduled controlled substances for non-medical purposes, outside the bounds of legitimate medicine, had been taking place since as early as 2002.").

The Wagoner Defendants, on the other hand, dispensed altogether with the proper citation format set forth in the Court's Practices and Procedures. [Filing No. 6 at 4.] This, too, caused unnecessary delay in the Court's review of the briefs  Mr. Thomas adhered to the citation format set forth in the Court's Practices and Procedures at times, albeit inconsistently. Because the Court was able to locate the relevant evidence after considerable effort, the Court will excuse the parties' noncompliance in this instance.

at 41-42; Filing No. 1-4 at 67-68; Filing No. 1-4 at 105-106; Filing No. 1-5 at 13; Filing No. 1-5 at 60.]

In addition, each of the Policies contained the following provision, with minor variations:

Further, **as** a condition to renewal of the **policy, the policyholder** and each **insured** represent and warrant that, except as otherwise disclosed to **us** in writing:

    A.    no **insured** has had any state medical license, hospital privileges or license to prescribe or dispense medicine denied, suspended, restricted or revoked, nor has any such **insured** voluntarily surrendered any such license or privileges for any reason;

    B.    no **insured** has (1) undergone psychiatric treatment, (2) been treated for alcohol or narcotics addiction, (3) had any chronic illness or physical defect, (4) been convicted of any misdemeanor or felony other than minor traffic violations, (5) appeared before any Professional Standards/Quality Assurance Review Committee or (6) appeared before any Board of Medical Examiners or Medical Licensure Commission; and

    C.    no **insured** has changed the scope of his or her medical practice from that previously disclosed to **us** in his or her applications for insurance.

If, at any time while the **policy** is in effect, any of the events described in paragraph A, B, or C occur, the **policyholder** agrees to notify **us** within thirty (30) days of its occurrence, and to provide such additional information as **we** may require.

The **policyholder** acknowledges that information concerning any of the events described above is material to our agreement to provide insurance under the **policy** on the basis, and for the premium, stated in the **Coverage Summary**.

[Filing No. 1-2 at 13; Filing No. 1-2 at 30; Filing No. 1-2 at 51; Filing No. 1-3 at 16; Filing No. 1-3 at 40; Filing No. 1-3 at 69; Filing No. 1-3 at 98; Filing No. 1-4 at 20; Filing No. 1-4 at 46; Filing No. 1-4 at 73; Filing No. 1-4 at 114; Filing No. 1-5 at 22; Filing No. 1-5 at 71.]

On May 28, 2014, Defendant Donald Wagoner pled guilty to a number of Class A Felonies and admitted to knowingly prescribing controlled substances outside the usual course of professional practice, resulting in opiate overdoses, respiratory depression, and poly-pharmacy overdoses. [Filing No. 1-9 at 2-6]. Mr. Wagoner admitted that he illegally prescribed controlled substances to various individuals on the following dates:

- January 10, 2010, [Filing No. 1-7 at 42];

- October 1, 2010, [Filing No. 1-7 at 43];

- February 2, 2010, [Filing No. 1-7 at 44];

- March 12, 2010, [Filing No. 1-7 at 45];

- August 18, 2010, [Filing No. 1-7 at 50];

- January 26, 2011, [Filing No. 1-7 at 52]; and

- January 11, 2013, [Filing No. 1-7 at 56].

In addition, Mr. Wagoner admitted to committing a Class B felony by conspiring with numerous individuals – including Defendants Marilyn Wagoner, Gary Hartman, and Linda Richards – to deal in narcotic drugs between April 2008 and February 7, 2013.  [Filing No. 1-7 at 57].  As part of the Judgment of Conviction, Mr. Wagoner stipulated to the factual allegations contained in the Affidavit for Probable Cause.  [Filing No. 1-9 at 12.]

Between January and July 2015, several other defendants pled guilty to related crimes, including:  Linda Richards, who pled guilty to conspiring with numerous individuals to deal in narcotic drugs between April 2008 and February 7, 2013, [Filing No. 1-7 at 140; Filing No. 1-9 at 17]; Gary Hartman, who pled guilty to aiding, inducing or causing Mr. Wagoner to deal in a narcotic drug on January 11, 2013, [Filing No. 1-7 at 97; Filing No. 1-9 at 33]; and Thomas Hewitt, who pled guilty to conspiracy to deal in narcotic drugs between March 2010 and February 7, 2013, [Filing No. 1-8 at 44;  Filing No. 1-9 at 23].  Although several felony counts were brought against Marilyn Wagoner, the case against her was dismissed with prejudice on November 8, 2016, due to her medical inability to stand trial.  [Filing No. 1-8 at 116-137; Filing No. 171-10 at 2-5.]

On or about April 26, 2013, prior to the entry of the guilty pleas, and simultaneous with indicating it was cancelling the policies, ProAssurance offered a "tail" policy, which would provide coverage for future claims involving the Wagoner Parties and Mr. Thomas involving services rendered prior to the termination date and subsequent to the retroactive date on the Policies.  [Filing No. 186-1 at 49-62.]  In addition, between April 2013 and June 2015, ProAssurance sent several Reservation of Rights letters to various Defendants, acknowledging that there were criminal allegations against some of the Defendants and that certain policy provisions

prohibited coverage in the event that liability to the claimant arose from criminal conduct. [Filing No. 186-1 at 8-45.]

On September 2, 2015, ProAssurance filed a Complaint for Declaratory Judgment, arguing that the Policies are void *ab initio* "as a result of the Wagoner Defendants' material omissions, failures to disclose and false statements." [Filing No. 1 at 19.] Specifically, ProAssurance requested that the Court declare that: (1) all or some of the Wagoner Defendants made "material misrepresentations and/or omissions" in conjunction with applying for and renewing the Policies; (2) the Policies are void *ab initio*; (3) ProAssurance is under no obligation to defend the Wagoner Defendants "with regard to any pending or future claims, Proposed Complaints filed with the Indiana Department of Insurance, civil law suits or any other matters" arising under the Policies; and (4) ProAssurance is under no obligation to pay "any judgments, damages, costs, or expenses" associated with or arising out of pending or future claims. [Filing No. 1 at 20.] ProAssurance further stated that it "stands ready to refund the premiums for its rescinded . . . Policies by paying said premiums into Court upon the entry of an order of rescission." [Filing No. 1 at 19.]

After ProAssurance filed a Motion for Summary Judgment, [Filing No. 174], the Wagoner Defendants and John Thomas each filed a Cross-Motion for Summary Judgment, [Filing No. 185; Filing No. 187].

### III.
#### OBJECTIONS TO ADMISSIBILITY OF EVIDENCE AND STATEMENTS AND MOTION TO SUPPLEMENT

Throughout the filings, the parties objected to the admissibility of several pieces of evidence, each of which the Court will discuss in turn.

**A. Report from Dr. Timothy King [Filing No. 186 at 6]**

The Wagoner Defendants object to "the submission of and the Court's consideration of the report from Dr. Timothy King submitted by ProAssurance" on the grounds of relevance, arguing that the opinions cited therein are "simply irrelevant to the issues that need to be addressed by the Court in determining whether ProAssurance is entitled to a rescission." [Filing No. 186 at 6, n. 2.] Mr. Thomas also objects to Dr. King's report, similarly alleging that it is irrelevant and immaterial. [Filing No. 188 at 3, n.2.]

In response, ProAssurance argues that the report "provides extensive independent evidence of the scope of the Wagoner Defendants' criminal sale of drugs outside the bounds of legitimate medicine beyond: 1) their binding judicial and evidentiary admissions in the criminal cases; and 2) the Wagoner's binding admissions in their State of Indiana Medical Licensing Board actions." [Filing No. 195 at 20.]

Under the Federal Rules of Evidence, all relevant evidence is admissible. Fed. R. Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it is without the evidence." Fed. R. Evid. 401. "A party faces a significant obstacle in arguing that evidence should be barred because it is not relevant, given that the Supreme Court has stated that there is a 'low threshold' for establishing that evidence is relevant." *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012) (quoting *Tennard v. Dretke*, 542 U.S. 274, 285 (2004)).

The Court was able to review and render judgment on the parties' Cross-Motions for Summary Judgement without reviewing Dr. King's report. However, ProAssurance seeks to rescind insurance Policies dating back to 2001 on the basis of guilty pleas for crimes dating back to 2008. Given the expansive amount of time at issue in this case, and the low threshold for

establishing that evidence is relevant, the Court is not prepared to make a finding that Dr. King's report is not relevant.

The Wagoner Defendants and Mr. Thomas' objection to the Court's consideration of this evidence is **OVERRULED**.

## B. Recommendation of Plea Agreement concerning Mr. Thomas [Filing No. 188 at 3]

Mr. Thomas also objects to ProAssurance's submission of a Recommendation of Plea Agreement, which he argues "has no probative value, it is hearsay, it is not the statement of Defendant Thomas, and should not be considered in any way by the Court in these proceedings." [Filing No. 188 at 3, n.1.]

In response, ProAssurance asserts that the plea agreement constitutes "uncontested and material evidence" which was "offered to explain the basis for ProAssurance's inability to provide substantive testimony from Thomas regarding his conduct and the charges against him, as well as to prevent him from implying that the lack of a criminal conviction against him is evidence that he committed no criminal conduct." [Filing No. 195 at 21.]

To the extent that Mr. Thomas' objection is based on hearsay, the Seventh Circuit has ruled that admissions in a plea agreement may be admissible under Rule 803(22). *See Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995). However, the Recommendation of Plea Agreement contains no admissions and is not itself a plea agreement. Even considering the low threshold for establishing that evidence is relevant," *Boros*, 668 F.3d at 907, the Recommendation of Plea Agreement does not pass muster under Fed. R. Evid. 401.

Mr. Thomas' objection to the Court's consideration of this evidence is SUSTAINED.

### C. Various Factual Representations in the Cross-Motions for Summary Judgment [Filing No. 195 at 3-21]

ProAssurance's response to the Cross-Motions for Summary Judgment, [Filing No. 195], contains numerous objections to factual allegations set forth by the Wagoner Defendants' and Mr. Thomas. ProAssurance requests that this Court strike, reject, or otherwise disregard twenty-five different statements contained in the Wagoner Defendants' and Mr. Thomas' respective motions. [Filing No. 195 at 3-21.] As set forth in Part V of this Court's Order, there is no basis for the Court to grant the Wagoner Defendants or Mr. Thomas' Cross-Motions for Summary Judgment. Accordingly, there is no need for the Court to strike specific factual allegations contained therein. As such, the objections contained in ProAssurance's response to the Cross-Motions for Summary Judgment, [Filing No. 195 at 3-21], are **DENIED** as moot.

### D. Motion to Strike Replies in Support of the Cross-Motions for Summary Judgment [Filing No. 200]

After the Motion for Summary Judgment, [Filing No. 174], and Cross-Motions for Summary Judgment, [Filing No. 185; Filing No. 187], were fully briefed, ProAssurance filed a Motion to Strike certain portions of the Replies to the Cross-Motions for Summary Judgment, [Filing No. 197; Filing No. 199]. In their Motion to Strike, ProAssurance alleges that the Wagoner Defendants' and Mr. Thomas' reply briefs assert the presence of genuine issues of material fact. [Filing No. 200 at 2.] ProAssurance argues that this warrants the summary denial of the Cross-Motions For Summary Judgment, or, "at the very least, the Court should strike any content" therein. [Filing No. 200 at 2.]

Here again, the Wagoner Defendants' and Mr. Thomas' Cross-Motions for Summary Judgment fail on the merits. Therefore, ProAssurance's Motion to Strike, [Filing No. 200], is **DENIED** as moot.

### E. Motion to Supplement Summary Judgment Exhibits and Evidence Designations [Filing No. 204]

Finally, ProAssurance filed a Motion to Supplement Summary Judgment Exhibits, in which it seeks to amend its Motion for Summary Judgment to incorporate the recent guilty plea and criminal conviction of Mr. Thomas. [Filing No. 204 at 3.]

Mr. Thomas objects to ProAssurance's Motion to Supplement, arguing that allowing ProAssurance to supplement at this time would not allow Defendants the opportunity to respond. [Filing No. 205.]

ProAssurance's Motion for Summary Judgment fails on the merits. Therefore, ProAssurance's Motion to Supplement, [Filing No. 204], is **DENIED** as moot.

## IV.
## GENERALLY APPLICABLE INSURANCE LAW

When the Court exercises diversity jurisdiction over an action, it is "obliged to apply state law to the substantive issues in the case." *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (citing *Erie RR. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The parties do not dispute that Indiana law governs this action. Accordingly, this Court must "apply the law that would be applied by the Indiana Supreme Court." *Lodholtz*, 778 F.3d at 639. "If the Indiana Supreme Court has not spoken on the issue, [the Court] generally treat[s] decisions by the state's intermediate appellate courts as authoritative, unless there is a compelling reason to think that the state supreme court would decide the issue differently." *Id.*

## V.
## DISCUSSION

Turning to the merits, in its Motion for Summary Judgment, ProAssurance asks this Court to declare the following:

a.) That all or some of the Wagoner Defendants have made material misrepresentations and/or omissions in conjunction with the application for and renewals of the Wagoner Policies;

b.) That the Wagoner Policies are void *ab initio*;

c.) That ProAssurance is under no obligation to defend the Wagoner Defendants with regard to any pending or future claims, Proposed Complaints filed with the Indiana Department of Insurance, civil law suits or any other matters arising or purporting to arise under any of the Wagoner Policies, ("Wagoner Claim(s)");

d.) That ProAssurance is under no obligation to pay any judgments, damages, costs and/or expenses which are associated with or arise out of any Wagoner Claim, or to indemnify any of the Wagoner Defendants for any such amounts;

e.) That ProAssurance is entitled to an award of costs of this action; and

f.) That ProAssurance is entitled to a judgment which grants all other appropriate relief in its favor.

[Filing No. 174 at 6.]

The Wagoner Defendants and Mr. Thomas, on the other hand, request that this Court grant summary judgment in their favor, arguing that there are no genuine issues of material fact with respect to any of ProAssurance's claims, and that they are entitled to judgment as a matter of law. [Filing No. 185; Filing No. 187.]

The issue of contract rescission is central to the parties' respective Motions. Therefore, in order to determine whether summary judgment in favor of any party is appropriate, the Court will, in turn, consider the procedural and substantive arguments underlying rescission of the Policies.

## A. Is Rescission Procedurally Available to ProAssurance?

Under Indiana law, "[r]escission can arise under two circumstances: (1) it may be effected by mutual agreement and (2) it may be granted unilaterally because of fraud, illegality, mutual mistake or a contract provision providing for rescission." *Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 561 (7th Cir. 2002) (citing *Econ. Leasing Co. v. Wood*, 427 N.E.2d 483, 486 (Ind. Ct. App.

1981)).  In the insurance context, "[t]he right to void coverage due to fraud in the making of the policy is well established in the common law," *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 672 (Ind. 1997), because fraud "prevents a 'meeting of the minds' as to the risk to be insured." *Foster v. Auto-Owners Ins., Co.*, 703 N.E.2d 657, 659 (Ind. 1998).  Accordingly, "an insurance company may void coverage based on a material misrepresentation in the application."  *Foster*, 703 N.E.2d at 658; *see also Colonial Penn*, 690 N.E.2d at 672; *Brunnemer v. Metro. Life Ins. Co.*, 14 N.E.2d 97, 100 (Ind. 1938) (setting forth a scenario in which "the insurer in the application asks the prospective applicant about a fact that is within his knowledge, and he answers falsely").  A representation is "material" if "the fact omitted or misstated, if truly stated, might reasonably have influenced the insurer in deciding whether to reject or accept the risk or charge a higher premium." *French v. State Farm Fire & Cas. Co.*, 950 N.E.2d 303, 312 (Ind. Ct. App. 2011) (citations omitted).

However, Indiana courts have set forth time-honored procedural requirements for rescission.  Where an insurer desires to rescind a contract on the ground of fraud, it must return, or offer to return, the premiums received as consideration "within a reasonable time after acquiring knowledge of the fraud."  *Prudential Ins. Co. of Am. v. Smith*, 108 N.E.2d 61, 65 (Ind. 1952) (quoting *National Council, etc., v. Walton*, 136 N.E. 25, 26 (Ind. App. 1922)).  The Indiana Supreme Court reaffirmed this rule most recently in 2013 in *Dodd v. Am. Family Mut. Ins. Co.*, 983 N.E.2d 568 (Ind. 2013), where the Court stated that "[f]ailure to offer such return of premiums, or if refused, to pay it into court, constitutes a waiver of the alleged fraud."  *Dodd*, 983 N.E.2d at 570–71 (citing *Prudential*, 108 N.E. 2d at 65; *Grand Lodge of Bhd. of R.R. Trainmen v. Clark*, 127 N.E. 280, 282 (Ind. 1920)).  However, the *Dodd* Court also set forth an exception to the requirement that an insurer tender a return of the premiums in order to rescind a contract.  "Under

this exception, 'such a tender is not necessary where . . . the insurer has paid a claim thereon which is greater in amount than the premiums paid.'" *Dodd*, 983 N.E.2d at 570 (quoting *Am. Standard Ins. Co. v. Durham*, 403 N.E.2d 879, 881 (Ind. Ct. App. 1980)).

Based on the foregoing, two questions bear on whether ProAssurance has complied with the procedural requirements for rescission under Indiana law: (1) was ProAssurance required to tender premiums it received in consideration for the Policies back to the insured?; and (2) if so, did ProAssurance wait too long to do so?

In their Cross-Motion for Summary Judgment, the Wagoner Defendants argue that ProAssurance waited too long to seek rescission of the policies and was required to "immediately tender back the premiums the Wagoner Parties paid for the policies." [Filing No. 186 at 8.] Similarly, Mr. Thomas argues that ProAssurance affirmed the policies "by failing to act promptly to claim rescission or return the premiums paid." [Filing No. 188 at 7-8.]

In response, ProAssurance appears to admit that it has not tendered premiums back to the insured for the Policies that it now seeks to rescind, and instead alleges that it "sensibly offered to tender into the Court whatever currently unknown amount is eventually determined by the Court to be the proper amount." [Filing No. 195 at 38.] In addition, ProAssurance alleges it was not obligated to return the premiums received "because it is undisputed that ProAssurance has already performed under the Wagoner Policies by paying for the defense of the Wagoner Defendants in a variety of actions, some of which are on-going." [Filing No. 195 at 2.] ProAssurance cites *Hitt v. Githens*, 509 N.E.2d 210 (Ind. Ct. App. 1987), for the proposition that it does not "have to show a dollar for dollar set-off . . . where its incurred defense costs did not exceed the amount of the premiums paid, because the Court will not weigh the cost of the premiums for the worth received by the insured." [Filing No. 195 at 37.]

As a preliminary matter, the Court notes that ProAssurance's reliance on *Hitt* is misplaced. In *Hitt*, the Indiana Court of Appeals addressed an argument that an insurance company's refusal to tender back premiums estopped the company from denying liability under the policy. *Hitt*, 509 N.E.2d at 211. During the policy period at issue, the insured sold two vehicles and purchased new ones without notifying the insurance company, per the terms of their policy. *Id*. at 211. The insured then collided with a motorcyclist in one of the newly purchased vehicles, and the insurance company denied liability under the policy. *Id*. The Court held that the insurance company was not estopped from denying liability because the automobile insurance policy at issue extended liability protection if the insured were to cause an accident while driving a non-owned automobile. *Id*. at 213. The Court of Appeals reasoned that the non-owned vehicle protection was consideration sufficient to support the contract and to justify retention of the premiums by the insurance company. *Id*. *Hitt* does not, as ProAssurance alleges, stand for the broad proposition that "an insurer ha[s] no obligation to tender back premiums in order to return the insured to the status quo if the insurer had already performed any of its obligations, and regardless of the monetary value of the insurer's performance to the insured." [Filing No. 195 at 37.] Moreover, *Hitt* involved a question of coverage, not a question of rescission. It is, therefore, inapplicable to the case at hand.

Instead, the key case that is relevant to the question of whether ProAssurance was required to tender premiums for the Policies in order to rescind is *Dodd v. Am. Family Mut. Ins. Co.*, 983 N.E.2d 568 (Ind. 2013). As previously discussed, in *Dodd* the Indiana Supreme Court reaffirmed an exception to the procedural rules surrounding rescission, wherein tender of premiums is not required when "the insurer has paid a claim thereon which is *greater in amount* than the premiums paid." *Dodd*, 983 N.E.2d at 570 (quotations omitted, emphasis added). Accordingly, in order to ascertain whether ProAssurace was required to tender premiums back to the insured before seeking

rescission of the Policies, the Court must determine whether ProAssurance paid claims under the Policies that were greater in amount than the premiums it received.

It is impossible for this Court to make such a determination based on the evidence before it. With regard to the amount of the premiums paid, ProAssurance points out in its reply brief that the Wagoner Defendants allege that between March 2000 and May 2013, ProAssurance was paid $474,189.00 for coverage under the Policies. [Filing No. 195 at 16.] ProAssurance, however, contends that "[t]he actual amount of premiums paid . . . is $304,463.00." [Filing No. 195 at 16.] In addition, with regard to claims that ProAssurance paid under the Policies, ProAssurance alleges that "even if it were to stop defending the Wagoner Defendants tomorrow," it has paid costs to-date of indemnity and defense under a reservation of rights in the amount of $187,478.83 spread out over various policies. [Filing No. 195 at 37.] The parties do not cite to any authority that allows the Court to guess when ProAssurance paid said claims, or under which of the Policies the claims were paid. In short, applying the facts before this Court to the rule set forth in *Dodd*, the Court cannot ascertain the amount of the claims paid or premiums received and, therefore, the Court cannot determine whether ProAssurance was required to tender back premiums to the insured as a procedural step in rescinding the Policies. Accordingly the Court finds that genuine issues of material fact exist regarding the amount of claims that ProAssurance paid under the Policies and the amount of premiums they received.

Similarly, there is a genuine issue of material fact regarding when ProAssurance knew about the alleged breach – information that is critical to determining whether ProAssurance has waived its claim for rescission. It is well established in Indiana that "[o]ne who asks a court's aid in compelling the rescission of a contract must show that he or she exercised reasonable diligence in ascertaining the facts and thereafter promptly sought rescission within a reasonable time after

discovering the fraud." *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 968 (Ind. Ct. App. 2000) (citation omitted); s*ee also Cain v. Guthrie*, 8 Blackf. 409, 410 (Ind. 1847) ("If a party desires to rescind a contract on the ground of mistake or misrepresentation, he is bound to be prompt in communicating the facts upon which he relies to the opposite party, and also his intention to rescind."). A delay in seeking rescission may result in waiver. *A.J.'s Auto. Sales*, 725 N.E.2d at 968 (citing *INB Nat. Bank v. Moran Elec. Service, Inc.*, 608 N.E.2d 702 (Ind. Ct. App. 1993)).

In this case, the parties do not agree on when ProAssurance became aware of its right to rescind the Policies. The Wagoner Defendants and Mr. Thomas contend that ProAssurance knew or should have known of its right to seek rescission of the Policies in April 2013, but did not file suit to rescind until September 2015 – over two years later. [Filing No. 186 at 5; Filing No. 186 at 9; Filing No. 188 at 8.] The Wagoner Defendants argue that this was an unreasonable delay and point to Indiana precedent providing that waiting more than seventeen months to rescind does not comply with the rule surrounding rescission. [Filing No. 186 at 9 (citing *Griffin v. Axsom*, 525 N.E.2d 346, 348 (Ind. Ct. App. 1988)).] ProAssurance, on the other hand, contends that it "did not learn of the first guilty plea until roughly twelve months" before bringing this suit and argues that "[t]here is no case that has held that twelve (12) months is too long a period of time to file a rescission claim, least of all under circumstances involving the scope of people, time, policies, other cases and materials here." [Filing No. 195 at 34.] The question of whether the party seeking rescission acted within a reasonable time is ordinarily a question of fact, *A.J.'s Auto. Sales*, 725 N.E.2d at 968, and, under Indiana case law, determining whether ProAssurance waited twelve months or twenty nine months is of paramount importance to determining whether it acted with reasonable promptness. Accordingly, the Court finds that there is a genuine issue of material fact regarding whether ProAssurance acted within a reasonable time to rescind the Policies.

**B. Is Rescission Substantively Available to ProAssurance?**

Having determined that genuine issues of material fact exist as to whether rescission is available as a procedural matter, the Court need not delve into the substance of each of the six declarations that ProAssurance seeks. However, the Court will briefly address one substantive argument that took up a significant portion of the parties' briefing.

The basis of ProAssurance's rescission claim is that "there is no dispute that the Wagoner Defendants' failure over time to disclose their criminal, illegal or otherwise improper non-medical and non-professional conduct in dispensing scheduled narcotics outside the legitimate practice of medicine and for non-medical purposes, was a material misrepresentation and/or omission which voids the Wagoner Policies *ab initio*." [Filing No. 175 at 35.] In support thereof, ProAssurance points to the Wagoner Defendants' guilty pleas and convictions, which it argues were the subject of a valid state court determination and, therefore, "cannot be relitigated in federal court." [Filing No. 175 at 23.]

The Wagoner Defendants, however, contend that ProAssurance should not be allowed to rescind because the Reservation of Rights letters that ProAssurance sent caused each of the individual Wagoner Defendants to have "an expectation of coverage" that caused them to take "a strategic position in the underlying criminal proceedings, even to the extent of entering guilty pleas, with the understanding that ProAssurance would provide coverage unless an exclusion was triggered under the applicable policy." [Filing No. 186 at 6.]

The Wagoner Defendants' argument is without merit. Indiana law does not recognize nolo contendere pleas, in which a defendant does not admit or deny the charges. *Corbin v. State*, 713 N.E.2d 906, 907 (Ind. Ct. App. 1999) (citing *Mahoney v. State*, 149 N.E. 444, 447 (Ind. 1925)). In Indiana, "the only pleas which are permitted are a) not guilty, b) guilty, or c) guilty but mentally

ill." *Id.* at 907 (citing Ind. Code § 35-35-2-1(a)(3)). The Indiana Supreme Court has held that "[t]he factors which motivated the appellant to plead guilty are not material, so long as we can ascertain from the record that his guilty plea was entered freely, voluntarily and knowingly." *Boles v. State*, 303 N.E.2d 645, 653 (Ind. 1973).

In this case, it is undisputed that several of the Wagoner Defendants entered guilty pleas for crimes related to the illegal prescription of scheduled controlled substances. The factors which motivated the Wagoner Defendants to plead guilty are not material to the dispute at hand.

None of ProAssurance's requested declarations speak specifically to the evidentiary effect of the Wagoner Defendants' guilty pleas. However, ProAssurance included a catch-all provision in its prayer for relief, requesting a declaration that it is "entitled to a judgment which grants all other appropriate relief in its favor." [Filing No. 174 at 6.] Accordingly, the Court grants Summary Judgment on the limited issue of the effect of Defendants' guilty pleas. To the extent that any of the Defendants have pled guilty to and been convicted of any crimes, they are barred from now claiming that they pled guilty because of actions or omissions on the part of ProAssurance. Moreover, any fact necessarily established by a guilty plea will be deemed admitted in this case. *Rediehs Exp., Inc. v. Maple*, 491 N.E.2d 1006, 1008 (Ind. Ct. App. 1986) (citing *Brattain v. Herron*, 309 N.E.2d 150 (Ind. Ct. App. 1974) ("Indiana has long permitted pleas of guilty in all criminal cases to be used in civil cases, if appropriate and relevant, as an admission of a party against interest"); *see also Karpov v. Net Trucking, Inc.*, 2011 WL 6056618, at *2–3 (N.D. Ind. Dec. 5, 2011) (permitting the use of offensive collateral estoppel of facts underlying a conviction predicated on a guilty plea).

## VI.
### CONCLUSION

"The purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Biddle v. Martin*, 992 F.2d 673, 675 (7th Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In this case, the existence of several genuine issues of material fact demonstrates the genuine need for a trial.  Accordingly, the Wagoner Defendants' Cross-Motion for Summary Judgment, [Filing No. 185], and Mr. Thomas' Cross-Motion for Summary Judgment, [Filing No. 187], are **DENIED**.

ProAssurance's Motion for Summary Judgment, [Filing No. 174], is **GRANTED** in part and **DENIED** in part, with Summary Judgment being granted only on the limited issue of the effect of Defendants' guilty pleas.

In addition, for the reasons set forth herein, the Court rules as follows on the parties' evidentiary objections and motions:

- the Wagoner Defendants' and Mr. Thomas' objection to the admission of the Report from Dr. Timothy King, [Filing No. 186 at 6, n. 2], is **OVERRULED**;

- Mr. Thomas' objection to the admission of the Recommendation of Plea Agreement concerning Mr. Thomas, [Filing No. 188 at 3, n.1], is **SUSTAINED**;

- ProAssurance's objections to various factual representations in the Cross-Motions for Summary Judgment, [Filing No. 195 at 3-21], are **DENIED** as moot;

- ProAssurance's Motion to Strike, [Filing No. 200], is **DENIED** as moot;

- ProAssurance's Motion to Supplement Summary Judgment Exhibits and Evidence Designations, [Filing No. 204], is **DENIED** as moot.

As a final matter, the Court requests that the Magistrate Judge set a settlement conference with the parties at his earliest convenience.

Date: 8/9/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**